**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JEFFREY M. MULLER; DANIEL J. PISZCZATOSKI;      :
JOHN M. DRAKE; GREGORY C. GALLAHER;            :
LENNY S. SALERNO; FINLEY FENTON;               :
SECOND AMENDMENT FOUNDATION, INC.; and         : **Civil Action No.**
ASSOCIATION OF NEW JERSEY RIFLE & PISTOL       :
CLUBS, INC.,                                   :
                                               :
          Plaintiffs,                          :
                                               :
                                               : **COMPLAINT FOR DEPRIVATION OF**
v.                                             : **CIVIL RIGHTS UNDER COLOR OF LAW**
                                               :
THE HON. PHILIP J. MAENZA, *in his Official Capacity* :
*as Judge of the Superior Court of Morris County*; THE :
HON. RUDOLPH A. FILKO, *in his Official Capacity as* :
*Judge of the Superior Court of Passaic County*; THE HON. :
EDWARD A. JEREJIAN, *in his Official Capacity as Judge* :
*of the Superior Court of Bergen County*; THE HON. :
THOMAS A. MANAHAN, *in his Official Capacity as* :
*Judge of the Superior Court of Morris County*; COL. RICK :
FUENTES, *in his Official Capacity as Superintendent of the* :
*New Jersey State Police*; CHIEF FRANK INGEMI, *in his* :
*Official Capacity as Chief of the Hammonton, New Jersey* :
*Police Department*; CHIEF RICHARD COOK, *in his* :
*Official Capacity as Chief of the Montville, New Jersey* :
*Police Department*; and PAULA T. DOW, *in her Official* :
*Capacity as Attorney General of New Jersey*,          :
                                               :
          Defendants.                          :

        COME NOW Plaintiffs Jeffrey M. Muller, Daniel J. Piszczatoski, John M. Drake,

Gregory C. Gallaher, Lenny S. Salerno, Finley Fenton, Second Amendment Foundation , Inc.,

and Association of New Jersey Rifle & Pistol Clubs, Inc., by and through their undersigned

attorneys Duane Morris LLP, and complain as follows:

        1.      This action for deprivation of civil rights concerns the State of New Jersey's

issuance of "Permit to Carry" handgun licenses pursuant to N.J. Stat. § 2C:58-4 and N.J. Admin.

Code §§ 13:54-2.3, 13:54-2.4, 13:54-2.5, and 13:54-2.7 (the "Handgun Permit Laws").  Plaintiffs

seek declaratory and injunctive relief and attorney's fees and costs.

### INTRODUCTION

2.      It is a felony to possess a handgun without a Permit to Carry issued pursuant to

the Handgun Permit Laws.  N.J. Stat. § 2C:39-5(b).  A private citizen who does not hold a Permit

to Carry may possess a handgun only within the confines of the "exemptions" that are set forth at

N.J. Stat. § 2C:39-6(e)-(g).  These exemptions do not permit a person to carry an operable

handgun, except within his or her home, real property, or place of business.  *See id*.

3.      In order to obtain a Permit to Carry, a private citizen must:

    a.  Complete an approved training course, N.J. Stat. § 2C:58-4(c)-(d) and N.J. Admin. Code § 13:54-2.4(b)(1);

    b.  Demonstrate familiarity with use-of-force laws, N.J. Admin. Code § 13:54-2.4(b)(3);

    c.  Submit qualification scores that show proficiency with the handgun that the person intends to carry, N.J. Admin. Code § 13:54-2.4(b)(2);

    d.  Provide fingerprints for a background check, N.J. Stat. § 2C:58-4(c);

    e.  Not be disqualified from gun ownership by reason of (for example) criminal history, age, or mental health condition, N.J. Stat. §§ 2C:58-3(c), 4(c)-(d); and

    f.  Show "a justifiable need to carry a handgun," N.J. Stat. § 2C:58-4(c)-(d), which is defined more particularly as "urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun," N.J. Admin. Code § 13:54-2.4(d).

4.      To obtain a Permit to Carry, a private citizen must apply to either their chief

police officer or to the state police superintendent, depending upon the circumstances, as

mandated by N.J. Stat. § 2C:58-4(c).  This police official has the discretion determine whether

the requirements, including "justifiable need," have been met, and to approve or disapprove the

application accordingly.  *See* N.J. Stat. § 2C:58-4(c).

5.      After the police official has approved or disapproved the application, a private

citizen must then obtain the approval of an appropriate Superior Court judge.  *See In re Preis*,

118 N.J. 564, 569, 573 A.2d 148, 151 (1990) (the Handgun Permit Laws "allow[ ] only a Superior Court judge to issue a permit, after applicants first obtain approval from their local chief of police").  Regardless of whether the police official approves or disapproves of the application, only a Superior Court judge can actually issue a Permit to Carry.  *See* N.J. Stat. § 2C:58-4(e). However, if the police official has disapproved the application, then it will proceed no further unless the applicant requests consideration from an appropriate Superior Court judge.  *See id.*

6.     The Superior Court judge conducts his or her own review to determine whether the various statutory requirements, including "justifiable need," have been met.  *See* N.J. Stat. § 2C:58-4(d).  The Superior Court judge has discretion to deny a license application, or to limit or restrict a license.  *See* N.J. Stat. § 2C:58-4(d); *see also* N.J. Admin. Code § 13:54-2.7(b).

7.     A Superior Court judge deciding an application for a Permit to Carry acts as an "issuing authority" performing "functions which [a]re clearly nonjudicial in nature."  *Siccardi v. State*, 59 N.J. 545, 553, 284 A.2d 533, 538 (1971); *see also In re Preis*, 118 N.J. 564, 569, 573 A.2d 148, 151 (1990) ("the Legislature has reposed what is essentially an executive function in the judicial branch").

8.     A person who has been denied a license by the Superior Court judge upon the judge's consideration of a Permit to Carry application may appeal in accordance with the law and rules governing appeals in the state courts of New Jersey.  N.J. Stat. § 2C:58-4(e).

9.     The Handgun Permit Laws are facially invalid under the Second and Fourteenth Amendments to the Constitution of the United States in that, and to the extent that, they:  (a) vest state officials with uncontrolled discretion to deny Permits to Carry; and (b) require citizens to show "justifiable need" and "urgent necessity" to obtain Permits to Carry.

## PARTIES

10.     Plaintiff Jeffrey M. Muller is a natural person residing in Frankford Township, New Jersey.

11.     Plaintiff Daniel J. Piszczatoski is a natural person residing in Wayne, New Jersey.

12.     Plaintiff John M. Drake is a natural person residing in Newton, New Jersey.

13.     Plaintiff Gregory C. Gallaher is a natural person residing in Hammonton, New Jersey.

14.     Plaintiff Lenny S. Salerno is a natural person residing in Montville, New Jersey.

15.     Plaintiff Finley Fenton is a natural person residing in Nanuet, New York.

16.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit member organization incorporated under the laws of the State of Washington with its principal place of business in Bellevue, Washington.

17.     Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") is a non-profit membership corporation incorporated under the laws of the State of New Jersey with its principal place of business in Pompton Plains, New Jersey.

18.     Defendant the Hon. Philip J. Maenza ("Judge Maenza") is sued in his official capacity as Judge of the Superior Court of Morris County, New Jersey, responsible for approving and issuing Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

19.     Defendant the Hon. Edward A. Jerejian ("Judge Jerejian") is sued in his official capacity as Judge of the Superior Court of Bergen County, New Jersey, responsible for approving and issuing Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

20.     Defendant the Hon. Rudolph A. Filko ("Judge Filko") is sued in his official capacity as Judge of the Superior Court of Passaic County, New Jersey, responsible for approving and issuing Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

21.     Defendant the Hon. Thomas A. Manahan ("Judge Manahan") is sued in his official capacity as Judge of the Superior Court of Morris County, New Jersey, responsible for approving and issuing Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

22.     As this Complaint relates to the conduct of Judge Maenza, Judge Jerejian, Judge Filko, and Judge Manahan, each acted and acts as a licensing officer in a non-judicial capacity. This action concerns the constitutionality of the Handgun Permit Laws, rather than the correctness of these Defendants' respective state-law determinations.

23.     Defendant Col. Rick Fuentes ("Col. Fuentes") is sued in his official capacity as Superintendent of the New Jersey State Police, responsible for approving applications for Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.  Col. Fuentes is responsible for executing and administering the laws and policies at issue in this lawsuit.

24.     Defendant Chief Frank Ingemi ("Chief Ingemi") is sued in his official capacity as Chief Police Officer of Hammonton, New Jersey, responsible for approving applications for Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

25.     Defendant Chief Richard Cook ("Chief Cook") is sued in his official capacity as Chief Police Officer of Montville, New Jersey, responsible for approving applications for Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

26.     Defendant Attorney General Paula T. Dow is sued in her official capacity as the Attorney General of the State of New Jersey, responsible for executing and administering the laws and policies at issue in this lawsuit.

**JURISDICTION AND VENUE**

27.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

28.     This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under color of New Jersey state law and/or within the geographic confines of the State of New Jersey.

29.     Venue is proper pursuant to 28 U.S.C. § 1391.

**STANDING**

**PLAINTIFF JEFF MULLER**

30.     On January 8, 2010, Plaintiff Jeffrey M. Muller arrived at his family-owned business, J&G Discount Pet Foods, in Newton, New Jersey at approximately 8:00 a.m.  Before Mr. Muller could enter his store, three men attacked him.  Mr. Muller broke free and began to escape, but the assailants chased Mr. Muller and used a Taser to disable him.  Mr. Muller was forced into the men's vehicle, beaten, restrained with zip-ties, and driven from New Jersey with a gun held to his head.

31.     The alleged assailants claimed to be members of a motorcycle gang associated with the Hell's Angels and were operating under the false apprehension that Mr. Muller was a different "Jeff Muller" who was believed to owe another associate money.  Although Mr. Muller protested that he was not the "Jeff Muller" whom they sought, the assailants refused to release Mr. Muller.  The alleged assailants told Mr. Muller that other associates were holding his family hostage, and they provided detailed information about Mr. Muller's home and family.

- 6 -

32.     Before arriving at their intended destination, the assailants' car broke down.  Mr. Muller was ultimately able to escape from the car, and the alleged assailants were arrested.

33.     Shortly after Mr. Muller's rescue, the State of New Jersey requested extradition of four Missouri residents, including alleged mastermind William Barger, to face assault and kidnapping charges in New Jersey.  These charges remain pending trial at the time of this Complaint.  Although Barger is in custody, he has not yet been extradited to New Jersey and remains in Missouri.

34.     Mr. Muller desires to carry a handgun to protect himself and his family in the event that associates of the alleged assailants attempt to assault, kidnap, or kill him to prevent him from testifying or to retaliate against him.

35.     Separate and apart from any threat posed by the men who kidnapped Mr. Muller, Mr. Muller would carry an operable handgun in public for self defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment for lack of a Permit to Carry.

36.     With the encouragement and support of investigating police officers, Mr. Muller applied to Col. Fuentes for a Permit to Carry on February 1, 2010.

37.     Col. Fuentes approved Mr. Muller's application for a Permit to Carry on April 4, 2010.

38.     Pursuant to N.J. Stat. § 2C:58-4(d), the approved application was sent to the Sussex County, New Jersey Superior Court.  The Hon. Peter N. Conforti is the judge designated to determine Permit to Carry applications in Sussex County, but he recused himself because the underlying criminal charges against Mr. Muller's alleged attackers remained (and remain) pending before him.  The application was transferred to the Morris County, New Jersey Superior Court and assigned to defendant Judge Maenza.

- 7 -

39.     Judge Maenza denied a Permit to Carry to Mr. Muller on August 31, 2010 on the ground that Mr. Muller did not have a "justifiable need" as required by N.J. Stat. § 2C:58-4.  Mr. Muller was not notified of the decision and did not have the opportunity to appear before Judge Maenza.  Judge Maenza found no "justifiable need" because "[t]he threat of serious harm has been dissipated by the fact that the captors were apprehended and are awaiting trial."

40.     Less than a month later, on September 24, 2010, the State of New Jersey identified and requested extradition of a fifth alleged accomplice to face charges in New Jersey for the crimes against Mr. Muller.

41.     Mr. Muller met all other requirements to obtain a Permit to Carry, except that state officials concluded that he did not have a "justifiable need to carry a handgun," as required by N.J. Stat. § 2C:58-4(c)-(d).

### PLAINTIFF DANIEL PISZCZATOSKI

42.     Mr. Piszczatoski is a civilian employee of the Federal Bureau of Investigation residing in Wayne, New Jersey.  Mr. Piszczatoski serves as the program coordinator for the New York imaging services unit.  Mr. Piszczatoski is also a warrant officer with the United States Coast Guard.  In his capacity as a warrant officer, Mr. Piszczatoski has the statutory power of arrest.

43.     At times in the past, Mr. Piszczatoski has carried a handgun in the course of performing his Coast Guard duties.  At the present time, Mr. Piszczatoski is not qualified to carry a firearm while performing Coast Guard duties.

44.     On October 30, 2009, the FBI advised Mr. Piszczatoski and other employees that it had received information that a specified Islamic fundamentalist group planned criminal

attacks against FBI employees and their family members in retaliation for the treatment of Muslims by the U.S. government.  The FBI warned that the group might follow employees home from work and attempt to kidnap or kill the employees or their family members.  Shortly thereafter, Mr. Piszczatoski was dismayed to learn that an internet search for his name revealed both his home address and the fact that he was employed by the FBI.

45.     Mr. Piszczatoski desires to carry a handgun to protect himself and his family from the risk that terrorists or other criminals may target him because of his current or past activities with the FBI and the Coast Guard.

46.     Separate and apart from any threat posed on account of his employment, Mr. Piszczatoski would carry a functional handgun in public for self defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment for lack of a Permit to Carry.

47.     Mr. Piszczatoski applied for a Permit to Carry from Chief Donald Stouthamer of the Police Department for Wayne Township, New Jersey on February 20, 2010.

48.     Chief Stouthamer approved Mr. Piszczatoski's application on May 27, 2010.

49.     Pursuant to New Jersey law, the approved license application was sent to the Passaic County, New Jersey Superior Court.  Defendant Judge Filko considered Mr. Piszczatoski's application.

50.     Judge Filko denied Mr. Piszczatoski's application for a Permit to Carry on November 3, 2010 on the ground that Mr. Piszczatoski did not have a "justifiable need" as required by N.J. Stat. § 2C:58-4.

51.     Mr. Piszczatoski met all other requirements to obtain a Permit to Carry, except that state officials concluded that he did not have a "justifiable need to carry a handgun," as required by N.J. Stat. § 2C:58-4(c)-(d).

**PLAINTIFF JOHN DRAKE**

52.     Mr. Drake is an entrepreneur living in Newton, New Jersey.  Mr. Drake sits on the

board of the Sussex County Economic Development Partnership.  Mr. Drake owns a business,

Overcoat LLC, that owns and services automated teller machines (ATMs).

53.     In the course of performing the business of Overcoat LLC, Mr. Drake routinely

carries large sums of cash for the purpose of restocking ATMs, and he routinely works on ATMs

in public areas.

54.     Mr. Drake desires to carry a handgun because he is concerned that violent

criminals may seriously injure or kill him in order to steal money that he is using to restock

ATMs, or in order to gain access to an ATM he is servicing.  Mr. Drake is also concerned that

violent criminals may kidnap him and force him to provide access to ATMs and/or bank

accounts.

55.     Separate and apart from any threat posed on account of his employment, Mr.

Drake would carry a functional handgun in public for self defense, but refrains from doing so

because he fears arrest, prosecution, fine, and imprisonment for lack of a Permit to Carry.

56.     Mr. Drake applied to the New Jersey State Police for a Permit to Carry pursuant

to N.J. Stat. § 2C:58-4 on March 17, 2010.

57.     Col. Fuentes denied Mr. Drake's application on July 1, 2010 on the ground that

Mr. Drake did not have "justifiable need" as required by N.J. Stat. § 2C:58-4 and related

regulations.

58.     Mr. Drake met all other requirements to obtain a Permit to Carry, except that state

officials concluded that he did not have a "justifiable need to carry a handgun," as required by

N.J. Stat. § 2C:58-4(c)-(d).

**PLAINTIFF GREG GALLAHER**

59.     Mr. Gallaher is a building contractor living in Hammonton, New Jersey.

60.     Two years ago Mr. Gallaher arrived at a job site just after thieves had stolen thousands of dollars in construction equipment.  Investigating police officers told Mr. Gallaher that they believed that the crime was tied to organized crime, and that he was fortunate to have missed the theft because the criminals might well have killed Mr. Gallaher to eliminate him as a witness.

61.     Separate and apart from the particulars recounted herein, Mr. Gallaher would carry a functional handgun in public for self defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment for lack of a Permit to Carry.

62.     Mr. Gallaher applied to the Hammonton, New Jersey Police Department for a Permit to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations on September 28, 2010.

63.     Chief Ingemi denied Mr. Gallaher's application on October 5, 2010 on the ground that Mr. Gallaher did not have "justifiable need" pursuant to N.J. Stat. § 2C:58-4 and related regulations.

64.     Mr. Gallaher met all other requirements to obtain a Permit to Carry, except that state officials concluded that he did not have a "justifiable need to carry a handgun," as required by N.J. Stat. § 2C:58-4(c)-(d).


**PLAINTIFF LENNY SALERNO**

65.     Mr. Salerno is an electrical contractor living in Montville, New Jersey.

66.     Mr. Salerno's occupation requires him to travel to job locations throughout Northern New Jersey at all times of the day and night, including dangerous areas and areas

- 11 -

fraught with crime.  Mr. Salerno is concerned that he may be attacked or killed while he is in a

dangerous area because of his work.

68.     Separate and apart from the particulars recounted herein, Mr. Salerno would carry

a functional handgun in public for self defense, but refrains from doing so because he fears

arrest, prosecution, fine, and imprisonment for lack of a Permit to Carry.

68.     Mr. Salerno applied to the Montville, New Jersey Police Department for a Permit

to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations on May 30, 2009.

69.     Chief Cook denied Mr. Salerno's application on August 31, 2009 on the ground

that Mr. Salerno did not have "justifiable need" pursuant to N.J. Stat. § 2C:58-4.

70.     Pursuant to N.J. Stat. § 2C:58-4(e), Mr. Salerno submitted his denied application

to the Morris County Superior Court.  Judge Manahan considered Mr. Salerno's application.

71.     Judge Manahan denied Mr. Salerno's application on July 8, 2010.

72.     Mr. Salerno met all other requirements to obtain a Permit to Carry, except that

state officials concluded that he did not have a "justifiable need to carry a handgun," as required

by N.J. Stat. § 2C:58-4(c)-(d).


**P**LAINTIFF **F**INLEY **F**ENTON

73.     Mr. Fenton is a part-time deputy sheriff with the Essex County, New Jersey

Sheriff's Department.  Mr. Fenton has statutory powers of arrest throughout the State of New

Jersey.  Mr. Fenton carries a handgun while performing his duties as a deputy sheriff.

74.     Mr. Fenton desires to carry a handgun because he is concerned that criminals he

has apprehended may attempt to injure or kill him and because he is otherwise concerned about

protecting himself and his family in the event of a violent criminal attack.

75.    Mr. Fenton is a "qualified law enforcement officer" within the meaning of the Law Enforcement Officers Safety Act of 2008 ("LEOSA"), and as such, federal law authorizes him to "carry a concealed firearm that has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 926B(a).

76.    However, the State of New Jersey, in a policy directive issued by Defendant Paula T. Dow on June 7, 2005, maintains that LEOSA protects only "full time" police officers.  [*See* http://www.nj.gov/lps/dcj/agguide/pdfs/hr-218.pdf.]  Mr. Fenton is afraid that he will be arrested and charged if he carries a handgun to protect himself while off-duty.

77.    Separate and apart from any needs arising from his law enforcement activities, Mr. Fenton would carry a functional handgun in public for self-defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment for lack of a Permit to Carry.

78.    Mr. Fenton applied to the New Jersey State Police for a Permit to Carry pursuant to N.J. Stat. § 2C:58-4 on March 31, 2010.

79.    Col. Fuentes denied Mr. Fenton's application on August 30, 2010 on the ground that Mr. Fenton did not have "justifiable need" as required by N.J. Stat. § 2C:58-4 and related regulations.

80.    Pursuant to N.J. Stat. § 2C:58-4(e), Mr. Fenton submitted his denied application to the Bergen County Superior Court on September 30, 2010.  Judge Jerejian considered Mr. Fenton's application.

81.    Judge Jerejian denied Mr. Fenton's application on November 12, 2010.

82.    Mr. Fenton met all other requirements to obtain a Permit to Carry, except that state officials concluded that he did not have a "justifiable need to carry a handgun," as required by N.J. Stat. § 2C:58-4(c)-(d).

**PLAINTIFF SECOND AMENDMENT FOUNDATION**

83.     Plaintiff SAF is a non-profit member organization with over 650,000 members and supporters nationwide, including New Jersey.  The purposes of SAF include promoting both the exercise of the right to keep and bear arms and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms.  SAF also promotes research and education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens.

84.     Members of SAF have been denied Permits to Carry on the ground that they did not have "justifiable need" and members of SAF would apply for Permits to Carry but for their understanding that state officials would refuse the license for lack of "justifiable need."

85.     SAF brings this action on behalf of itself and its members.


**PLAINTIFF ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS**

86.     Plaintiff ANJRPC is a non-profit membership corporation organized in 1936 and with its principal place of business in Pompton Plains, New Jersey.

87.     ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people, and other law-abiding firearms owners.  Among ANJRPC's purposes are aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

88.     Members of ANJRPC have been denied Permits to Carry on the ground that they did not have "justifiable need" and members of ANJRPC would apply for Permits to Carry but for their understanding that state officials would refuse the license for lack of "justifiable need."

89.     ANJRPC brings this action on behalf of its members.


## CONSTITUTIONAL PROVISIONS

90.     The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. Amndt. II.

91.     The Second Amendment guarantees individuals a fundamental right to carry operable handguns in non-sensitive public places for the purpose of self defense.

92.     The Fourteenth Amendment incorporates the requirements of the Second Amendment against the States and their units of local government. *McDonald v. Chicago*, 561 U.S. ___, 130 S. Ct. 3020, 3042 (Jun. 28, 2010).

93.     The States retain the ability to regulate the manner of carrying handguns within constitutional parameters; to prohibit the carrying of handguns in specific, narrowly defined sensitive places; to prohibit the carrying of arms that are not within the scope of Second Amendment protection; and, to disqualify specific, particularly dangerous individuals from carrying handguns.

94.     The States may not completely ban the carrying of handguns for self defense, deny individuals the right to carry handguns in non-sensitive places, deprive individuals of the right to carry handguns in an arbitrary and capricious manner, or impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

DM1\2410040.1

<u>**STATE LAWS**</u>

95.     Section 2C:39-5(b) of the New Jersey Statutes provides in pertinent part:

> Any person who knowingly has in his possession any handgun, including any antique handgun, without first having obtained a permit to carry the same as provided in [N.J. Stat. §] 2C:58-4, is guilty of . . . a crime of the second degree.

96.     Section 2C:58-4 of the New Jersey Statutes provides in pertinent part:

> **c.  Investigation and approval.**  Each application shall in the first instance be submitted to the chief police officer of the municipality in which the applicant resides, or to the superintendent, (1) if the applicant is an employee of an armored car company, or (2) if there is no chief police officer in the municipality where the applicant resides, or (3) if the applicant does not reside in this State.  The chief police officer, or the superintendent, as the case may be, shall cause the fingerprints of the applicant to be taken and compared with any and all records maintained by the municipality, the county in which it is located, the State Bureau of Identification and the Federal Bureau of Identification.  He shall also determine and record a complete description of each handgun the applicant intends to carry.

> No application shall be approved by the chief police officer or the superintendent unless the applicant demonstrates that he is not subject to any of the disabilities set forth in [N.J. Stat. §] 2C:58-3c., that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun. . . .

> **d.  Issuance by Superior Court; fee.**  If the application has been approved by the chief police officer or the superintendent, as the case may be, the applicant shall forthwith present it to the Superior Court of the county in which the applicant resides, or to the Superior Court in any county where he intends to carry a handgun, in the case of a nonresident or employee of an armored car company.  The court shall issue the permit to the applicant if, but only if, it is satisfied that the applicant is a person of good character who is not subject to any of the disabilities set forth in section 2C:58-3c., that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun.  The court may at its discretion issue a limited-type permit which would restrict the applicant as to the types of handguns he may carry and where and for what purposes such handguns may be carried. . . .

- 16 -

97.    Section 13:54-2.3(a) of the New Jersey Administrative Code provides:

No application for a permit to carry a handgun shall be approved by a chief police officer of a municipality, the Superintendent or the Superior Court, unless the applicant:

1.    Is a person of good character who is not subject to any of the disabilities which would prevent him or her from obtaining a permit to purchase a handgun or a firearms purchaser identification card as provided in this chapter;

2.    Has demonstrated that at the time of the application for the permit he or she is thoroughly familiar with the safe handling and use of handguns; and

3.    Has demonstrated a justifiable need to carry a handgun.

98.    Section 13:54-2.4(d) of the New Jersey Administrative Code provides in part:

Each application form shall also be accompanied by a written certification of justifiable need to carry a handgun, which shall be under oath and which:

1.    In the case of a private citizen shall specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun.  Where possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies[.]

99.    Section 13:54-2.5 of the New Jersey Administrative Code provides:

The chief of police or the Superintendent, as the case may be, shall cause the applicant to be thoroughly investigated.  The investigation shall include, but not be limited to, ascertaining that the applicant satisfies all of the requirements contained in this chapter for obtaining a permit to purchase a handgun or a firearms purchaser identification card, that the applicant has or has not demonstrated a thorough familiarity with the safe handling and use of handguns as evidenced by the application and accompanying materials, and that the applicant has or has not factually demonstrated a justifiable need to carry a handgun.  The chief of

police or the Superintendent shall approve or disapprove the application after completion of the investigation.  If the application is approved, by the chief of police or the Superintendent, as the case may be, it shall be forwarded to the Superior Court of the county where the applicant resides, or if a nonresident or an employee of an armored car company, to a county where he or she intends to carry the handgun, for presentation to a judge of the Superior Court.

100.   Section 13:54-2.7(b) of the New Jersey Administrative Code provides:

The court may, at its discretion, issue a limited type permit which would restrict the applicant as to the types of handguns he or she may carry and where and for what purposes such handguns may be carried.

### FIRST CAUSE OF ACTION

### N.J. STAT. § 2C:58-4 AND N.J. ADMIN. CODE §§ 13:54-2.3, -2.4, -2.5, AND -2.7 VIOLATE THE SECOND AND FOURTEENTH AMENDMENTS BECAUSE THEY VEST UNCONTROLLED DISCRETION IN THE HANDS OF STATE OFFICIALS

101.   N.J. Stat. § 2C:58-4(c) and N.J. Admin. Code § 13:54-2.5 are facially invalid in that they vest Chief Police Officers and the Superintendent of the New Jersey State Police with uncontrolled discretion to grant or deny approval of license applications.

102.   N.J. Stat. § 2C:58-4(d) is facially invalid in that it vests the Superior Court with uncontrolled discretion to issue or refuse to issue licenses.

103.   N.J. Stat. § 2C:58-4(d) and N.J. Admin. Code § 13:54-2.7(b) are facially invalid in that they vest the Superior Court with uncontrolled discretion to limit or restrict licenses.

104.   N.J. Admin. Code §§ 13:54-2.3(a) and 2.4(d)(1) are facially invalid in that they vest Chief Police Officers, the Superintendent of the New Jersey State Police, and the Superior Court with uncontrolled discretion to withhold approval of license applications and licenses.

105.   The invalidities of the aforesaid statute and regulations, and Defendants' application of same, infringe Plaintiffs' Second and Fourteenth Amendments right and damage Plaintiffs in violation of 42 U.S.C. § 1983.

106.    Plaintiffs' injuries are irreparable because Plaintiffs are entitled to enjoy their constitutional rights *in fact*.

### SECOND CAUSE OF ACTION

### N.J. STAT. § 2C:58-4 AND N.J. ADMIN. CODE § 13:54-2.4 VIOLATE THE SECOND AND FOURTEENTH AMENDMENTS BECAUSE THE EXERCISE OF FUNDAMENTAL CONSTITUTIONAL RIGHTS CANNOT BE CONDITIONED ON "JUSTIFIABLE NEED" OR "URGENT NECESSITY"

107.    N.J. Stat. § 2C:58-4(c)-(d), as implemented by N.J. Admin. Code § 2.4(d)(1), conditions the approval and issuance of a Permit to Carry on the existence of "justifiable need," which is defined as an "urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun."

108.    N.J. Stat. § 2C:58-4(c)-(d) and N.J. Admin. Code §§ 13:54-2.3(a), 2.4(d)(1) impermissibly burden the right to keep and bear arms by requiring private citizens to show "justifiable need" or "urgent necessity for self protection."

109.    The invalidities of the aforesaid statute and regulations, and Defendants' application of same, infringe Plaintiffs' Second and Fourteenth Amendments right and damage Plaintiffs in violation of 42 U.S.C. § 1983.

110.    Plaintiffs' injuries are irreparable because Plaintiffs are entitled to enjoy their constitutional rights *in fact*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

i.      declaratory judgment that N.J. Stat. § 2C:58-4(c)-(d) and N.J. Admin. Code §§ 13:54-2.3(a), 13:54-2.4(d)(1), 13:54-2.5, and 13:54-2.7(b) are facially invalid under the Second and Fourteenth Amendments because they vest uncontrolled discretion in the hands of state officials to grant or deny Permit to Carry applications and to grant, deny, limit, or restrict Permits to Carry;

ii.    declaratory judgment that N.J. Stat. § 2C:58-4(c)-(d) and N.J. Admin. Code § 2.4(d)(1) are facially invalid under the Second and Fourteenth Amendments because they condition the approval of Permit to Carry applications and the issuance of Permits to Carry on "justifiable need" and "urgent necessity";

iii.   an injunction directing Col. Fuentes, Chief Ingemi, and Chief Cook to approve the applications of Mr. Drake, Mr. Fenton, Mr. Gallaher, and Mr. Salerno for Permits to Carry;

iv.    an injunction permanently restraining Defendants Col. Fuentes, Chief Ingemi, Chief Cook, and Attorney General Paula T. Dow, and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from enforcing the Handgun Permit Laws so as to deny, restrict, or limit Permits to Carry or applications for same for any reason other than those reasons specifically codified in the statutes and regulations of the State of New Jersey;

v.     an injunction permanently restraining Defendants Col. Fuentes, Chief Ingemi, Chief Cook, and Attorney General Paula T. Dow, and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive notice of this injunction, from enforcing the Handgun Permit Laws so as to deny, restrict, or limit Permits to Carry or applications for same on the ground that an applicant does not have "justifiable need" or "urgent necessity";

vi.    such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

vii.   attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: November 22, 2010
        Newark, New Jersey

                                    Respectfully submitted,

                                    DUANE MORRIS LLP
                                    A Delaware Limited Liability Partnership


                        By: _____
                                    David D. Jensen, Esq.
                                    Robert P. Firriolo, Esq.
                                    744 Broad Street, Suite 1200
                                    Newark, New Jersey 07102-3889
                                    973.424.2000
                                    Attorneys for Plaintiffs