**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY M. MULLER; DANIEL J. PISZCZATOSKI; JOHN M. DRAKE; GREGORY C. GALLAHER; LENNY S. SALERNO; FINLEY FENTON; SECOND AMENDMENT FOUNDATION, INC.; and ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE HON. PHILIP J. MAENZA, *in his Official Capacity as Judge of the Superior Court of Morris County*; THE HON. RUDOLPH A. FILKO, *in his Official Capacity as Judge of the Superior Court of Passaic County*; THE HON. EDWARD A. JEREJIAN, *in his Official Capacity as Judge of the Superior Court of Bergen County*; THE HON. THOMAS A. MANAHAN, *in his Official Capacity as Judge of the Superior Court of Morris County*; COL. RICK FUENTES, *in his Official Capacity as Superintendent of the New Jersey State Police*; CHIEF FRANK INGEMI, *in his Official Capacity as Chief of the Hammonton, New Jersey Police Department*; CHIEF RICHARD COOK, *in his Official Capacity as Chief of the Montville, New Jersey Police Department*; and PAULA T. DOW, *in her Official Capacity as Attorney General of New Jersey*, <br><br> Defendants. | : <br> : <br> : **No. 2:10-CV-6110 (WHW) (CCC)** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : **ORAL ARGUMENT REQUESTED** <br> : <br> : <br> : <br> : |

**BRIEF IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

David D. Jensen, Esq.
Robert P. Firriolo, Esq.
**DUANE MORRIS LLP**
**Delaware Limited Liability Partnership**
744 Broad Street, Suite 1200
Newark, NJ 07102-3889
973.424.2000

TABLE OF CONTENTS

PAGE

INTRODUCTION & SUMMARY OF ARGUMENT ......................................................1

BACKGROUND ..........................................................................................6

    A.    New Jersey Handgun Statutes & Regulations.......................................6

    B.    The Plaintiffs in this Action ..................................................9

ARGUMENT .............................................................................................12

**POINT I: The Second Amendment Protects the Right to Possess and Carry Handguns for Self-Defense** ......................................................12

    A.    The Supreme Court Necessarily Ruled that the Right to "Bear" Arms is the Right of Individuals to Carry Firearms for Self-Defense ................................................................................13

    B.    The Supreme Court Understood it was Recognizing a Right to Carry Handguns..................................................................15

**POINT II: First Amendment Jurisprudence Supplies the Standards of Scrutiny** ..........................................................................................19

    A.    First Amendment Principles of Review Govern Laws that Burden the Exercise of Second Amendment Rights ..........................21

    B.    Societal Interests such as Public Safety Cannot Justify the Preclusion of Core Second Amendment Activities...........................23

    C.    The Permit Laws and the Prior Restraint Framework.......................25

**POINT III: The State Cannot Condition Issuance of Permits to Carry on Discretionary Determinations** ........................................................28

**POINT IV: States Cannot Condition the Exercise of Constitutional Rights on the Basis of "Need"**.................................................................33

CONCLUSION ..........................................................................................40

DM1\2441633.3

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ...................................................37

*Board of Airport Commissioners v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987)......25

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ................................................*Passim*

*Citizens United v. FEC*, 130 S. Ct. 876 (2010)........................................................37

*City of Lakewood v. Plain Dealer Pub'g Co.*, 486 U.S. 750 (1988) ...........20, 27, 31

*Clark v. Jeter*, 486 U.S. 456 (1988) .........................................................34

*Cox v. Louisiana*, 379 U.S. 536 (1965) ....................................................29

*Cox v. New Hampshire*, 312 U.S. 569 (1941).........................................................29

*District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008) ...........*Passim*

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ...........................................26

*Kunz v. New York*, 340 U.S. 290 (1951) ...................................................29

*Largent v. Texas*, 318 U.S. 418 (1943)............................................................29, 30

*Louisiana v. United States*, 380 U.S. 145 (1965) ....................................................28

*Maryland v. Joseph H. Munson Co.*, 467 U.S. 947 (1984) ....................................27

*McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010) ...........*Passim*

*Nat'l Socialist Party of Am. v. Skokie*, 432 U.S. 43 (1977) ....................................23

*Near v. Minnesota*, 283 U.S. 697 (1931) ................................................23

*Peruta v. County of San Diego*, 678 F. Supp. 2d 1046 (S.D. Cal. 2010) ...............17

*Peruta v. County of San Diego*, no. 09CV2371, 2010 U.S. Dist. LEXIS
    130878 (S.D. Cal. Dec. 10, 2010)........................................................5, 17, 35

*Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1985) ..........................................39

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) ...................................27

- ii -

*Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.*, 502 U.S. 105 (1991) 34, 39

*Staub v. Baxley*, 355 U.S. 313 (1958) .................................................................28

*United States v. Engstrum*, 609 F. Supp. 2d 1227 (D. Utah 2009)........................37

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)..............................*Passim*

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000).......................35

*United States v. Stevens*, 533 F.3d 218 (3d Cir. 2008) ...........................................22

*Walker v. City of Birmingham*, 388 U.S. 307 (1967) ..............................................30

STATE CASES

*Andrews v. State*, 50 Tenn. 165 (1871) ..................................................................18

*Aymette v. State*, 21 Tenn. 154 (1840) ..............................................................18, 19

*In re Brickey*, 70 P. 609 (Idaho 1902).....................................................................19

*City of Las Vegas v. Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971) .......................19

*Commonwealth v. Blanding*, 20 Mass. 304 (1825).................................................21

*Kellogg v. City of Gary*, 562 N.E.2d 685 (Ind. 1990).............................................19

*In re McIntyre*, 552 A.2d 500 (Del. Super. 1988) ..................................................17

*Nunn v. State*, 1 Ga. 243 (1846).........................................................................16, 17

*In re Preis*, 118 N.J. 564, 573 A.2d 148 (1990) ......................................................8

*Republica v. Oswald*, 1 U.S. (1 Dall.) 319 (Pa. 1788) ...........................................21

*State ex rel. City of Princeton v. Buckner*, 377 S.E.2d 139 (W. Va. 1988)............19

*State v. Chandler*, 5 La. Ann. 489 (1850)..........................................................16, 17

*State v. Delgado*, 692 P.2d 210 (Or. 1984)............................................................19

*State v. Kerner*, 107 S.E. 222 (N.C. 1921) ............................................................19

*State v. Moultrie*, 357 N.J. Super. 547 (App. Div. 2003) ........................................7

*State v. Reid*, 1 Ala. 612 (1840) ..............................................................................18

*State v. Rosenthal*, 55 A. 610 (Vt. 1903) ................................................................19

*State v. Spicer*, No. A-4741-01T4, 2006 N.J. Super. Unpub. LEXIS 2794
    (App. Div. Apr. 24, 2006)......................................................................................7

**FEDERAL STATUTES**

Law Enforcement Officers Safety Act of 2003, 28 U.S.C. § 926B.........................11

**STATE STATUTES**

Ala. Code § 13A-11-73 ..............................................................................................5

Ala. Code § 13A-11-75 ..............................................................................................5

Ark. Code Ann. § 5-73-309 ........................................................................................4

Cal. Penal Code § 12031 ............................................................................................5

Cal. Penal Code § 12050 ............................................................................................5

Colo. Rev. Stat. Ann. § 18-12-203 ............................................................................4

Conn. Gen. Stat. Ann. § 29-28 ...................................................................................5

Conn. Gen. Stat. Ann. § 29-35 ...................................................................................5

Del. Code Ann. tit. 11 §§ 1441-42 .............................................................................5

Fla. Stat. Ann. § 790.06 .............................................................................................4

Ga. Code Ann. § 16-11-129 ........................................................................................4

Haw. Rev. Stat. § 134-1-9 ..........................................................................................5

Idaho Code Ann. § 18-3302 ........................................................................................4

720 Ill. Comp. Stat. 5/24-1 .........................................................................................5

Ind. Code Ann. § 35-47-2-3 ........................................................................................4

2009 Iowa SF 2379, § 19 ............................................................................................5

Iowa Code Ann. § 724.7 .............................................................................................4

Kansas Stat. Ann. § 75-7c03 ...................................................................4

Ky. Rev. Stat. Ann. § 237.110 ................................................................4

La. Rev. Stat. Ann. § 40:1379 ................................................................4

Mass. Gen. Laws ch. 140, § 131 .............................................................5

Md. Code Ann., Pub. Safety § 5-302 .......................................................5

Md. Code Ann., Pub. Safety § 5-306 .......................................................5

Me. Rev. Stat. Ann. tit. 25, § 2003 .......................................................4-5

Mich. Comp. Laws Ann. § 28.422 ...........................................................5

Minn. Stat. § 624.714 .............................................................................5

Miss. Code Ann. § 45-9-101 ...................................................................5

Mo. Ann. Stat. § 571.090 .......................................................................5

Mont. Code Ann. § 45-8-321 ...................................................................5

N.C. Gen. Stat. § 14-415.11 ....................................................................5

N.D. Cent. Code § 62.1-04-03 .................................................................5

N.H. Rev. Stat. Ann. § 159.6 ...................................................................5

N.J.S.A. § 2C:39-5 .......................................................................2, 6, 7, 8

N.J.S.A. § 2C:39-6 .............................................................................2, 7

N.J.S.A. § 2C:43-6 .............................................................................2, 7

N.J.S.A. § 2C:44-1 .............................................................................1, 7

N.J.S.A. § 2C:58-3 ...................................................................................9

N.J.S.A. § 2C:58-4 ............................................... 1, 2, 5, 7, 8, 9, 29, 30, 32

N.M. Stat. Ann. § 29-19-4 .......................................................................5

N.Y. Penal Law § 400.00..........................................................................5

Neb. Rev. Stat. § 28-1202 ..................................................................5

Nev. Rev. Stat. Ann. § 202.3657 .........................................................5

Ohio Rev. Code Ann. § 2923.125 .........................................................5

Okla. Stat. Ann. tit. 21, § 1290.12 .......................................................5

Or. Rev. Stat. Ann. § 166.291 ..............................................................5

18 Pa. Cons. Stat. Ann. § 6109 ............................................................5

R.I. Gen. Laws § 11-47-1 ....................................................................5

S.C. Code Ann. § 23-31-215 ................................................................5

S.D. Codified Laws § 23-7-7 ...............................................................5

Tenn. Code Ann. § 39-17- 1351 ...........................................................5

Tex. Gov't Code Ann. § 411.177 ..........................................................5

Utah Code Ann. § 53-5-704 .................................................................5

Va. Code Ann. § 18.2-308 ...................................................................5

W. Va. Code Ann. § 61-7-4 .................................................................5

Wash. Rev. Code Ann. § 9.41.070 ........................................................5

Wis. Stat. Ann. § 941.23 .....................................................................5

Wyo. Stat. Ann. § 6-8-104 ..................................................................5

**REGULATIONS**

Conn. Agencies Regs. § 29-36m-8 .......................................................5

Md. Code Regs. 29.03.02.04 ................................................................5

N.J.A.C. § 13:54-2.3 ....................................................................10, 29

N.J.A.C. § 13:54-2.4 ..............................................2, 5, 9, 10, 30, 38

N.J.A.C. § 13:54-2.5 ....................................................................10, 29

DM1\2441633.3

N.J.A.C. § 13:54-2.7 ........................................................................10, 32

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. I .....................................................................*Passim*

U.S. Const. Amend. II.....................................................................*Passim*

U.S. Const. Amend. XIV ........................................................................1

**PUBLICATIONS**

James Kent, *Commentaries on American Law* (O. Holmes ed. 1873) ....................16

*The American Students' Blackstone* (G. Chase ed. 1884) .......................................16

DM1\2441633.3

## INTRODUCTION & SUMMARY OF ARGUMENT

The Second Amendment protects "the right of the people to keep and bear Arms."  U.S. Const. Amend. II.  On June 26, 2008, the United States Supreme Court ruled that the Second Amendment "guarantee[s] the individual right to *possess* and *carry* weapons in case of confrontation" and overturned the District of Columbia's ban on handguns as invalid, without regard to the standard of review. *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 2797, 2817 (2008) (emphasis added).  On June 28, 2010, the Court held that the Fourteenth Amendment incorporates the requirements of the Second Amendment against the States.  *See McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020, 3042 (2010).  The Second Amendment rights that the Supreme Court recognized in *Heller* and *McDonald* implicate the handgun carry laws of a handful of States that effectively preclude private citizens from carrying handguns for self-defense.

This lawsuit challenges the unrestrained discretion that New Jersey law vests in State and local officials to deny a "Permit to Carry" a handgun for lack of "justifiable need to carry a handgun."  N.J.S.A. § 2C:58-4(c), (d).  A private citizen must hold a Permit to Carry in order to carry a handgun for self-defense.  Aside from the discretionary "justifiable need" provisions, this lawsuit does not raise the issue of the State of New Jersey's authority to license and regulate the carrying of handguns, or to criminalize the unlicensed carry of handguns.

DM1\2441633.3

New Jersey's handgun laws are among the strictest in the country.  It is a second-degree crime (New Jersey's equivalent of a felony) to "possess" a handgun without a Permit to Carry (or "Permit") issued under § 2C:58-4 of the New Jersey Statutes.  *See* N.J.S.A. § 2C:39-5(b).  While there are limited "Exemptions" that allow otherwise eligible gun owners to, *inter alia*, keep handguns in their homes, a person must hold a Permit to Carry in order to carry a handgun in public.  *See* N.J.S.A. § 2C:39-6(e)-(g).  A person who runs afoul of the Exemptions – even unintentionally – faces a prison sentence of five to ten years.  *See* N.J.S.A. § 2C:43-6(a)(2).  The presumptive sentence is seven years.  *See* N.J.S.A. § 2C:44-1(f)(1)(c).

This lawsuit challenges only those aspects of the New Jersey Permit laws that allow officials to deny Permits to otherwise qualified citizens because they are found to lack "justifiable need."  State regulations define "justifiable need" as "urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun."  N.J.A.C. § 13:54-2.4(d).  Whether any individual applicant meets this definition is left to the discretion of the officials who administer the Permit laws – and these officials almost never find private citizens to have "justifiable need," even under extraordinary circumstances, such as those presented by some of the Plaintiffs.

Point I of this Brief shows that the Second Amendment guarantees the right of individuals to both possess and carry handguns, in public, for the purpose of self-defense.  The *Heller* Court necessarily decided that the Second Amendment's protection of the right to "bear Arms" includes the right to carry firearms for self-defense, and the Court's explicit conclusion that the words of the Second Amendment "guarantee the individual right to *possess* and *carry* weapons in case of confrontation," *Heller*, 128 S. Ct. at 2797 (emphasis added), was no fanciful musing.  The Court meant what it said.

Point II details the connection between the First and Second Amendments, which both protect rights to engage in affirmative acts.  First Amendment principles of review apply to laws that burden activities the Second Amendment protects.  While public safety concerns may justify reasonable *regulations* of certain acts that the First and Second Amendments protect, laws that preclude or impermissibly burden the exercise of fundamental constitutional rights cannot be saved by arguments based on public safety or other societal interests.

The Permit to Carry laws condition the exercise of constitutionally protected conduct – *viz.*, the carrying of handguns for self-defense – on the grant of permission from State and local officials.  As such, the Permit laws are prior restraints, and Point III shows that the discretionary aspects of the Permit laws do

- 3 -

not satisfy the procedural safeguards that apply to all laws that condition constitutionally protected acts on the prior approval of government officials.

The "justifiable need" requirement is inherently discretionary because it turns on the subjective opinions that officials form after reviewing applications. However, separate and apart from this deficiency, Point IV demonstrates that the "justifiable need" requirement is itself an impermissible burden on the exercise of Second Amendment rights.  People have a constitutional right to carry handguns for self-defense, and hence, a law that limits this activity to those with an "urgent necessity" does not and cannot serve any legitimate governmental interest (let alone an important or compelling one).  Moreover, the requirement is not narrowly tailored and does not leave alternative means of self-defense available.

The Second Amendment right that the Court recognized in *Heller* and *McDonald* directly implicates the handgun carry laws of only a few States.  The laws of *forty-three States* recognize that private citizens who are otherwise qualified have a right to carry handguns for self-defense – whether by issuing licenses to carry on the basis of non-discretionary criterion, or by allowing people to carry without licenses.[1]

---

[1] Thirty-five States have statues that require officials to issue licenses to applicants who meet non-discretionary standards.  *See* Ark. Code Ann. § 5-73-309(a); Colo. Rev. Stat. Ann. § 18-12-203(1); Fla. Stat. Ann. § 790.06(2); Ga. Code Ann. § 16-11-129; Idaho Code Ann. § 18-3302(1); Ind. Code Ann. § 35-47-2-3(e), Iowa Code Ann. § 724.7; Kansas Stat. Ann. § 75-7c03; Ky. Rev. Stat. Ann. § 237.110(2); La. Rev. Stat. Ann. § 40:1379(A)(1); Me. Rev. Stat. Ann. tit.

(*continued…*)

Of the remaining seven States, four – Hawaii, Massachusetts, New York, and Rhoad Island – issue handgun carry licenses on discretionary terms, but localities determine their own issuance policies.[2]  As a result, some private citizens are able to obtain licenses, depending largely upon the locality in which they apply.

New Jersey, along with Maryland, issues handgun carry licenses using discretionary standards, and binding statewide regulations make it virtually impossible for private citizens to obtain licenses.[3]

Only one State (Illinois) prohibits private citizens from carrying handguns.[4]

---

25, § 2003; Mich. Comp. Laws Ann. § 28.422(2)(3); Minn. Stat. § 624.714, subdiv. 2(b); Miss. Code Ann. § 45-9-101(2); Mo. Ann. Stat. § 571.090(1); Mont. Code Ann. § 45-8-321(1); Neb. Rev. Stat. § 28-1202; Nev. Rev. Stat. Ann. § 202.3657(2); N.H. Rev. Stat. Ann. § 159.6; N.M. Stat. Ann. § 29-19-4 ; N.C. Gen. Stat. § 14-415.11(b); N.D. Cent. Code § 62.1-04-03; Ohio Rev. Code Ann. § 2923.125(D)(1); Okla. Stat. Ann. tit. 21, § 1290.12(12); Or. Rev. Stat. Ann. § 166.291; 18 Pa. Cons. Stat. Ann. § 6109(e); S.C. Code Ann. § 23-31-215(A); S.D. Codified Laws § 23-7-7; Tenn. Code Ann. § 39-17- 1351(b); Tex. Gov't Code Ann. § 411.177(a); Utah Code Ann. § 53-5-704(1)(a); Va. Code Ann. § 18.2-308(D); Wash. Rev. Code Ann. § 9.41.070(1); W. Va. Code Ann. § 61-7-4(f); Wyo. Stat. Ann. § 6-8-104(b).  Iowa's law was passed in 2010 and will become effective on January 1, 2011.  *See* 2009 Iowa SF 2379, § 19.

   Connecticut's statute is facially discretionary, but implementing regulations eliminate this discretion.  *See* Conn. Gen. Stat. Ann. §§ 29-28(b), 29-35(a); Conn. Agencies Regs.§ 29-36m-8.

   Three States – Alaska, Arizona, and Vermont – do not require permits to carry handguns.

   Three States – Alabama, California, and Delaware – have discretionary statutes for licensing the carry of *concealed* handguns, but allow private citizens to carry exposed handguns. *See* Ala. Code §§ 13A-11-73, 13A-11-75; Cal. Penal Code §§ 12031, 12050(a)(1)(A)-(C); Del. Code Ann. tit. 11 §§ 1441-42; *see also Peruta v. County of San Diego*, no. 09CV2371, 2010 U.S. Dist. LEXIS 130878, *15-16 (S.D. Cal. Dec. 10, 2010).

   One State – Wisconsin – prohibits concealed carry, but allows citizens to carry exposed handguns without a license.  *See* Wis. Stat. Ann. § 941.23.

   [2] *See* Haw. Rev. Stat. § 134-1-9; Mass. Gen. Laws ch. 140, § 131(d); N.Y. Penal Law § 400.00(1), (3)(a); R.I. Gen. Laws § 11-47-11(a).

   [3] *See* Md. Code Ann., Pub. Safety §§ 5-302, 5-306(a)(5)(ii); Md. Code Regs. 29.03.02.04; N.J.S.A. § 2C:58-4; N.J.A.C. § 13:54-2.4(d).

   [4] *See generally* 720 Ill. Comp. Stat. 5/24-1(a)(4).

## BACKGROUND

A.     New Jersey Handgun Statutes & Regulations

Handguns are presumptively illegal in New Jersey – it is a crime (felony) of the second degree for a person to have a handgun "in his possession" unless he has been issued a Permit to Carry.  *See* N.J.S.A. § 2C:39-5(b).  A private citizen who does not hold a Permit may possess a handgun only under the limited strictures of "Exemptions" that are set forth in a separate statute.  *See* N.J.S.A. § 2C:39-6(e)-(g).  These Exemptions do not permit private citizens to carry operable handguns for self-defense in public.  *See id.*  A private citizen who carries a handgun without a Permit faces a prison term of five to ten years, even with no criminal history, *see* N.J.S.A. § 2C:43-6(a)(2), and the presumptive sentence a seven years, *see* N.J.S.A. § 2C:44-1(f)(1)(c).

New Jersey law allows unlicensed persons to transport handguns only between specified locations – between residences and place of business, and from these places directly to target ranges, gun stores, exhibitions, and places for hunting and fishing.  *See* N.J.S.A. § 2C:39-6(e)-(f).  The handgun must be transported unloaded, cased, and "the course of travel shall include only such deviations as are reasonably necessary under the circumstances."  N.J.S.A. § 2C:39-6(g).  A person who runs afoul of these restrictions (even inadvertently) commits Unlawful Possession of Weapons.  *See* N.J.S.A. § 2C:39-5(b).

The Exemptions are codified in a separate statute from the underlying criminal offense, and they have the status of ordinary defenses.  A person charged with the crime of possessing a handgun is not entitled to a jury instruction explaining the existence and potential application of an Exemption unless evidence in the case already indicates that the Exemption may apply.  *See State v. Moultrie*, 357 N.J. Super. 547, 555-56 (App. Div. 2003); *State v. Spicer*, No. A-4741-01T4, 2006 N.J. Super. Unpub. LEXIS 2794, *27 (App. Div. Apr. 24, 2006).  If there is no such evidence, then the jury will be instructed to decide the case based on N.J.S.A. § 2C:39-5(b) alone – which provides, simply, that it is a felony to possess a handgun without a Permit to Carry.  *See, e.g.*, *Spicer*, 2006 N.J. Super. Unpub. LEXIS 2794 at *27-28.

This statutory scheme entirely prohibits people from carrying handguns for self-defense without a State-issued license.  Indeed, the scheme substantially burdens all private citizens who wish to simply "possess" handguns for *any* purpose – including target shooting, collecting, or hunting.

The statute criminalizing the possession of handguns does not apply, by its terms, to a person "having obtained a permit to carry the same as provided in N.J.S. 2C:58-4."  N.J.S.A. § 2C:39-5(b).  To obtain a Permit to Carry, an applicant must satisfy several criteria:

      a.   Complete an approved training course;

    b.  Demonstrate familiarity with use-of-force laws;

    c.  Submit qualification scores that show proficiency with the handgun that the person intends to carry; and

    d.  Show "a justifiable need to carry a handgun."

N.J.S.A. § 2C:58-4(c)-(d); N.J.A.C. § 13:54-2.4(b)(1)-(3).

A person applies first to a police official – either the chief police officer for their municipality, or the state police superintendent, as mandated by N.J.S.A. § 2C:58-4(c). *See generally In re Preis*, 118 N.J. 564, 569, 573 A.2d 148, 151 (1990). An applicant must provide fingerprints for a background check, and must not be disqualified from gun ownership by reason of (for example) criminal history, age, or mental health condition. *See* N.J.S.A. §, 2C:58-4(c)-(d); *see also* N.J.S.A. § 2C:58-3(c). The police official determines whether the requirements – including "justifiable need" – have been met, and approves or disapproves the application accordingly. *See* N.J.S.A. § 2C:58-4(c).

After the police official has approved or disapproved the application, an applicant must then obtain the further approval of a Superior Court judge. Regardless of whether the police official approves or disapproves of the application, only a Superior Court judge can actually issue a Permit. *See* N.J.S.A. § 2C:58-4(e). The Superior Court judge also determines whether the various statutory requirements have been met. *See* N.J.S.A. § 2C:58-4(d). The Superior

Court judge may deny a Permit application, and also may limit or restrict a Permit. *See id.*; *see also* N.J.A.C. § 13:54-2.7(b).

This lawsuit challenges the statutory requirement of "justifiable need" and the vesting of discretion in State and local officials to deny Permit to Carry applications and licenses for lack of justifiable need.  State regulations define "justifiable need" as "the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun."  N.J.A.C. § 13:54-2.4(d)(1).  Plaintiffs challenge the discretionary "justifiable need" requirements set forth in N.J.S.A. § 2C:58-4 and N.J.A.C. §§ 13:54-2.3, 13:54-2.4, 13:54-2.5, and 13:54-2.7.

B.     The Plaintiffs in this Action

The six individual Plaintiffs in this action represent a sampling of people who would carry handguns for self-defense in New Jersey, but for the challenged aspects of the Permit laws.  Each of these individual plaintiffs was denied a Permit to Carry solely for lack of "justifiable need."

Plaintiff Jeff Muller was the victim of a violent kidnapping in New Jersey by claimed members of a motorcycle gang from Missouri.  He was beaten, Tasered, restrained, and a gun was held to his head.  Mr. Muller was able to summon

attention and escape when the attackers' car broke down in Missouri.  Mr. Muller

is – literally – lucky to be alive and able to serve as a Plaintiff in this action.

Mr. Muller wants to carry a handgun because he is concerned that associates

of the suspects may intimidate, injure, or kill him to prevent him from providing

testimony against them at their trials in New Jersey.  These criminal trials remain

pending at the time of this Motion, and Mr. Muller is the key witness.

Defendant Col. Rick Fuentes, Superintendent of the New Jersey State Police,

approved Mr. Muller's application for a Permit to Carry.  However, Defendant

Judge Maenza denied Mr. Muller's application six months later, on August, 31,

2010 on the ground that Mr. Muller lacked "justifiable need."  Judge Maenza

found that Mr. Muller lacked need because "[t]he threat of serious harm has been

dissipated by the fact that the captors were apprehended and are awaiting trial."

Incredibly, less than 30 days after Judge Maenza issued his ruling, the State of

New Jersey identified a *fifth* suspect in Mr. Muller's kidnapping and requested his

extradition to New Jersey.

Plaintiffs Daniel Piszczatoski and Finley Fenton both desire to carry

handguns for self-defense, most particularly because of self-defense concerns

arising from their involvement in law enforcement.  Mr. Piszczatoski is a civilian

employee of the FBI who sought a Permit after receiving specific information

indicating a potential terrorist threat to himself.  Mr. Fenton is a part-time sheriff's

- 10 -

deputy who is concerned that suspects he has apprehended may attempt to injure him while he is off-duty.[5]  The Wayne Police Department approved Mr. Piszczatoski's application, but Defendant Judge Filko denied it.

Plaintiff John Drake routinely carries large quantities of cash in the course of running his automated teller machine ("ATM") business.  He is concerned that someone will injure or kill him in order to take money he is carrying, to gain access to machines he is working on, or to obtain bank account information.

Plaintiffs Greg Gallaher and Lenny Salerno both sought Permits because they are concerned about their safety and want to carry handguns for protection.

Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit member organization with over 650,000 members and supporters nationwide, including in New Jersey.  SAF promotes both the right to keep and bear arms, and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms.  SAF also promotes research and education on the consequences of abridging the right to keep and bear arms, and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens.

---

[5] Although the Law Enforcement Officers Safety Act of 2003, 28 U.S.C. § 926B ("LEOSA"), authorizes Mr. Fenton to carry handguns off-duty, the State of New Jersey asserts that LEOSA applies only to "full-time" law enforcement officers.  Mr. Fenton needs a Permit to Carry in order to avoid arrest under State law.

Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") is a non-profit membership corporation organized in 1936 to represent the interests of target shooters, hunters, competitors, outdoors people, and other law-abiding firearms owners in New Jersey.  ANJRPC seeks to aid such persons in every way within its power, and support and defend the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.  ANJRPC is the largest statewide organization that is dedicated to the shooting sports and the right to keep and bear arms.

**ARGUMENT**

**POINT I:**
**THE SECOND AMENDMENT PROTECTS THE RIGHT TO POSSESS AND CARRY HANDGUNS FOR SELF-DEFENSE**

The Second Amendment explicitly protects two core activities:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to *keep* and *bear* Arms, shall not be infringed.

U.S. Const. Amend. II (emphasis added).  The Supreme Court's decision in *District of Columbia v. Heller* interpreted the Second Amendment for the first time in modern jurisprudence:

> Putting all of these textual elements together, we find that they guarantee the individual right to *possess* and *carry* weapons in case of confrontation.

*Heller*, 128 S. Ct. at 2797 (emphasis added).

The *Heller* Court could not review the District of Columbia's handgun ban without interpreting the phrase "to keep and bear Arms."  *See Heller*, 128 S. Ct. at 2791-99.  In the course of striking down the District of Columbia's ban, the Court necessarily concluded that the language protects two distinct activities – the acts of possessing and carrying firearms for the purpose of self-defense.  *See id.* at 2797.

A.  The Supreme Court Necessarily Ruled that the Right to "Bear" Arms
     is the Right of Individuals to Carry Firearms for Self-Defense

The right to "bear Arms" is the right to carry arms, including handguns.[6]  A close review of the competing construction put forth in Justice Stevens' dissent in *Heller* – and the Court's rejection of that view – resolves any doubt regarding the scope of the term "bear."

Justice Stevens' dissent maintained that the phrase "to keep and bear Arms" "protects only one right, rather than two.  That is, it does not describe a right 'to keep . . . Arms' and a separate right 'to bear . . . Arms.'"  *Heller,* 128 S. Ct. at 2830 (Stevens, J., dissenting).  Justice Stevens' reasoning was twofold.  First, he reasoned that the Amendment described a singular "right to keep and bear Arms," rather than "*rights* to keep and to bear Arms."  *See id.*  From this unitary premise, Justice Stevens reasoned that to "bear" arms "refers most naturally to a military

---

[6] *Heller* specifically found that the Second Amendment protects an individual right to keep and bear handguns, which are "overwhelmingly chosen by American society" for the lawful purpose of exercising the "inherent right of self-defense."  *Heller*, 128 S. Ct. at 2817.  The Court also noted that "the American people have considered the handgun to be the quintessential self-defense weapon."  *Id.* at 2818.

- 13 -

purpose," rather than to "civilian possession and use." *Id.* at 2828. According to Justice Stevens, "[t]he Amendment's use of the term 'keep' in no way contradicts the military meaning conveyed by the phrase 'bear arms.'" *Id.* at 2830. Justice Stevens thus concluded that the Second Amendment protects "a unitary right: to possess arms if needed for military purposes and to use them in conjunction with military activities." *Id.* at 2827.

The Court rejected Justice Stevens' construction, and the Court's conclusion that the Second Amendment protects individual rights rested squarely on its interpretation of the terms "keep" and "bear." *See Heller*, 128 S. Ct. at 2791-97. The Court dedicated several pages of its opinion to its decision that "bear" was *not* a military term – as maintained by Justice Stevens and the District of Columbia. *See Heller*, 128 S. Ct. at 2793-96. The Court explained that "bearing" arms was carrying arms for the purpose of protection:

> At the time of the founding, as now, to "bear" meant to "carry."
> When used with "arms," however, the term has a meaning that
> refers to carrying for a particular purpose—confrontation. . . .
> Although the phrase implies that the carrying of the weapon is
> for the purpose of "offensive or defensive action," it in no way
> connotes participation in a structured military organization.

*Id.* at 2793 (citations omitted). The term "keep" also had no military connotation and "most natural[ly]" meant to "'have weapons.'" *Id.* at 2792. The phrase "right to keep and bear Arms" thus did not describe a unitary concept – to use arms for military purposes – but two distinct rights that inure to individuals.

- 14 -

The Court relied on its interpretation of "bear arms" to reach one of the denominated holdings in the Court's syllabus: "The Second Amendment protects an individual right to possess a firearm *unconnected with service in a militia*, and to use that arm for traditionally lawful purposes, such as self-defense within the home." *Id.* at 2787 (emphasis added).

B.    The Supreme Court Understood it was Recognizing a Right to Carry Handguns

After construing "keep and bear" to mean "have and carry," the *Heller* Court provided guidance regarding gun restrictions that would be "presumptively" permissible. *See Heller*, 128 S. Ct. at 2816-17 & n.26. The contours of this dicta show that the Court understood that the Second Amendment rights it was recognizing include the general right to carry handguns, in public, for self-defense.

The Court's first cautionary statement – that the right to keep and bear arms is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 128 S. Ct. at 2816 – presupposes that the Second Amendment includes a basic right to carry some weapons, in some manner, and for some purposes. The statement would be pointless if the Second Amendment did not include a basic right to carry handguns.

The Court identified three "presumptively lawful" gun restrictions, one of which relates specifically to the act of carrying handguns in public. *See id.* at 2816-17 & n.26. The Court stated that States may permissibly ban carry from

- 15 -

certain "sensitive places such as schools and government buildings."  *Id.* at 2816-

17.  Again, this cautionary statement recognizes that carry bans are *not*

presumptively lawful when they pertain to places that are *not* sensitive.

The Court also cited several Nineteenth Century authorities that upheld bans

on the *concealed* (vis-à-vis exposed) carry of handguns to show the historical

understanding of "keep and bear Arms."  Again, the Court's rationale presupposes

the existence of a general right to carry handguns.  The Court explained:

> the majority of the 19th-century courts to consider the question
> held that prohibitions on carrying concealed weapons were
> lawful under the Second Amendment or state analogues.

*Heller,* 128 S. Ct. at 2816.  The Court supported this statement with citations to

four Nineteenth Century authorities – *all* of which had reasoned that concealed

carry might be banned *if people were still allowed to carry guns openly.  See id.*[7]

Thus, the historical authorities that the Supreme Court cited as upholding

bans on the concealed carry of handguns were premised on the availability of open

---

[7] *See State v. Chandler*, 5 La. Ann. 489, 489-490 (1850) (the right to carry arms openly "is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations"); *Nunn v. State*, 1 Ga. 243, 251 (1846) (it is permissible "to suppress the practice of carrying certain weapons secretly" but "a prohibition against bearing arms openly, is in conflict with the Constitution, and *void* "); *The American Students' Blackstone*, 84 n.11 (G. Chase ed. 1884) ("it is generally held that statutes prohibiting the carrying of concealed weapons are not in conflict with these constitutional provisions, since they merely forbid the carrying of arms in a particular manner," but "a contrary doctrine is maintained" in some states); 2 James Kent, *Commentaries on American Law* *340 n. 2 (O. Holmes ed. 1873) (there is "great difference of opinion" as to whether a prohibitions on concealed weapons are constitutional).

carry as an alternate means of self-defense.  *See Peruta v. County of San Diego*, 678 F. Supp. 2d 1046, 1052-53 (S.D. Cal. 2010) ("Both *Chandler* and *Nunn*, the two cases relied upon by the Supreme Court, concerned prohibitions on carrying of concealed weapons where the affected individuals had alternate ways to exercise their Second Amendment rights—by *openly* carrying those weapons.").[8]

Of course, if concealed carry bans can be upheld only where open carry remains available, then *ipso facto*, there is a basic right to "carry" guns – perhaps subject to a requirement that the gun be kept concealed or exposed.  Indeed, the United States District Court for the Southern District of California recently upheld California's concealed-handgun law on the rationale that the law did not raise constitutional concerns because California law still permitted unlicensed citizens to carry handguns in plain view.  *See Peruta v. County of San Diego*, no. 09CV2371, 2010 U.S. Dist. LEXIS 130878, *15-16 (S.D. Cal. Dec. 10, 2010).  While the issue of concealed carry is not before this Court – New Jersey law bans *all* carry without a Permit – the premise the *Peruta* court accepted that "not *all* concealed weapons bans are presumptively lawful," *id.* at *18 (emphasis in source), again recognizes a basic right to carry handguns.[9]

---

[8] *Cf. In re McIntyre*, 552 A.2d 500, 501 n.1 (Del. Super. 1988) ("'the right to keep and bear arms' does not of necessity require that such arms may be kept concealed").

[9] Plaintiffs emphasize that *concealed* carry is not before this Court.  The question of whether a State may permissibly ban concealed carry in favor of open carry is highly fact-

*(continued...)*

- 17 -

Two other Nineteenth Century state-court cases that *Heller* relied upon also support this rationale. *See Heller*, 128 S. Ct. at 2809, 2818 (citing *State v. Reid*, 1 Ala. 612 (1840), and *Andrews v. State*, 50 Tenn. 165 (1871)). In *Reid*, upholding a ban on the carrying of concealed weapons, Alabama's high court explained:

> We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defense, would be clearly unconstitutional.

*State v. Reid*, 1 Ala. 612, 616-17 (1840).

*Andrews* presaged *Heller* by finding that a handgun was a protected arm under the Tennessee constitution's Second Amendment analog. That State's Supreme Court found a ban on the carrying of weapons unconstitutional, as applied to a man carrying a revolver:

> If the Legislature think proper, they may by a proper law regulate the carrying of this weapon publicly, or abroad, in such a manner as may be deemed most conducive to the public peace, and the protection and safety of the community from lawless violence. We only hold that, as to this weapon, the prohibition is too broad to be sustained.

*Andrews v. State*, 50 Tenn. 165, 187-88 (1871).[10]

---

dependent and largely undecided. The *Peruta* court did not address whether open carry was *in fact* a reasonable alternative to concealed carry under the standards of contemporary society.

[10] *Andrews* appeared to abrogate in large part *Aymette v. State*, 21 Tenn. 154 (1840), upholding the prohibition on the concealed carry of daggers. But even *Aymette*, which found a

*(continued...)*

Again, the State authorities relied upon by the Supreme Court plainly recognize that the "right to keep and bear Arms" incorporates a general right to carry handguns in public.  The Court could have relied upon numerous other state-court decisions to establish this same basic point.  *See, e.g.*, *In re Brickey*, 70 P. 609 (Idaho 1902) (Second Amendment right to carry handgun);  *Kellogg v. City of Gary*, 562 N.E.2d 685 (Ind. 1990); *City of Las Vegas v. Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971); *State v. Kerner*, 107 S.E. 222 (N.C. 1921); *State v. Rosenthal*, 55 A. 610 (Vt. 1903) (striking down ban on concealed carry); *State ex rel. City of Princeton v. Buckner*, 377 S.E.2d 139 (W. Va. 1988); *see also State v. Delgado*, 692 P.2d 210 (Or. 1984) (right to carry a switchblade knife).

## POINT II:
### FIRST AMENDMENT JURISPRUDENCE SUPPLIES THE STANDARDS OF SCRUTINY

The First and the Second Amendments are unique because they protect the right of people to affirmatively engage in conduct – to speak freely, to assemble, to petition the government, to practice a religion, and to keep and bear arms.  The remainder of the first eight Amendments in the Bill of Rights protect different interests:  The Third and Fourth Amendments protect people from certain forms of governmental intrusion, and the Fifth, Sixth, Seventh, and Eighth Amendments establish basic requirements for the conduct of civil and criminal proceedings and

---

State right to bear arms limited by a military purpose, deduced from that interpretation that the right to bear arms protected the open carrying of arms.  *See Aymette*, 21 Tenn. at 160-61.

for the protection of life, liberty, and property from unjust deprivation.  While the
protections of these remaining Amendments are real and important, their terms do
not recognize any right to actually engage in any particular activity.  The First and
the Second Amendments, in contrast, identify specific activities and provide that
those activities are protected from encroachment.

The First and Second Amendments protect different activities, and different
core concerns and risks animate their protections.  As respects freedom of speech,
the First Amendment's core concern is free expression, and the core First
Amendment risk is that of censorship.  *See City of Lakewood v. Plain Dealer
Pub'g Co.*, 486 U.S. 750, 757 (1988).  In contrast, "the inherent right of self-
defense [is] central to the Second Amendment right," *Heller*, 128 S. Ct. at 2817,
2818; *accord McDonald*, 130 S. Ct. at 3023, 3036, and the Second Amendment
protects against the risk of disarmament, *see Heller*, 128 S. Ct. at 2801.

It is undeniable that the activities that the First and Second Amendments
protect raise legitimate public policy concerns.  Although the First Amendment
protects the right of people to peaceably assemble, an assembly may devolve into a
violent riot. What some may call a religion may really be an abusive cult or a
scam.  And, a person speaking freely may spread lies or promote violence and
sedition.  The Second Amendment protects the right to keep and bear arms, but
firearms have the potential to cause serious injury and death when they are

- 20 -

negligently or criminally misused. *See Commonwealth v. Blanding*, 20 Mass. 304,

314 (1825) ("The liberty of the press was to be unrestrained, but he who used it

was to be responsible in case of its abuse; like the right to keep fire arms, which

does not protect him who uses them for annoyance or destruction."); *Republica v.

Oswald*, 1 U.S. (1 Dall.) 319, 330 n.* (Pa. 1788) ("The right of publication, like

every other right, has its natural and necessary boundary; for, though the law

allows a man a free use of his arm, or the possession of a weapon, yet it does not

authorize him to plunge a dagger in the breast of an inoffensive neighbour.").

A.    First Amendment Principles of Review Govern Laws that Burden the
      Exercise of Second Amendment Rights

The Supreme Court's decisions in both *Heller* and *McDonald* repeatedly

analogized and relied upon the protections of the First Amendment to construe the

Second Amendment. *See McDonald*, 130 S. Ct. at 3031, 3043, 3045, 3054 n.5,

3055, 3056; *Heller*, 128 S. Ct. at 2797, 2799, 2805, 2813 n.23, 2816, 2821. In

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), the Court of Appeals for

the Third Circuit followed the Supreme Court's lead and applied First Amendment

principles to review a federal law that prohibits the possession of firearms with

obliterated serial numbers. *See id.* at 88-89. Looking to "other constitutional areas

for guidance in evaluating Second Amendment challenges," the Third Circuit

reasoned that "the First Amendment is the natural choice," and that "the structure

of First Amendment doctrine should inform our analysis of the Second

- 21 -

Amendment." *Id.* at 89 n.4.  "*Heller* itself repeatedly invokes the First

Amendment in establishing principles governing the Second Amendment."  *Id.*

The Third Circuit instructed lower courts to apply "a two-pronged approach

to Second Amendment challenges":

> First, we ask whether the challenged law imposes a burden on
> conduct falling within the scope of the Second Amendment's
> guarantee.  If it does not, our inquiry is complete.  If it does, we
> evaluate the law under some form of means-end scrutiny.  If the
> law passes muster under that standard, it is constitutional.  If it
> fails, it is invalid.

*Marzzarella*, 614 F.3d at 89 (citing *United States v. Stevens*, 533 F.3d 218, 233 (3d

Cir. 2008)).  Moving to the merits of the ban on obliterated serial numbers, the

Third Circuit contrasted the prohibition of *all* handguns that had been at issue in

*Heller*, reasoning that the serial number law does not "prohibit[ ] the possession of

any class of firearms, [and] it is more accurately characterized as a regulation of

the manner in which persons may lawfully exercise their Second Amendment

rights."  *Id.* at 97.  However, the *Marzarella* court also recognized that different

types of gun restrictions would require the use of different analytic models.  *See id.*

at 96 ("[T]he right to free speech, an undeniably enumerated fundamental right, is

susceptible to several standards of scrutiny, depending upon the type of law

challenged and the type of speech at issue.  We see no reason why the Second

Amendment would be any different.").

- 22 -

B.     Societal Interests such as Public Safety Cannot Justify the Preclusion of
       Core Second Amendment Activities

Public safety concerns may justify permissible *regulations* of protected

activities, but the Constitution does not permit fundamental civil rights to be

abridged by public safety fears.  *See, e.g., Near v. Minnesota*, 283 U.S. 697, 721-

22 (1931).  The *Heller* Court held that handguns could not be prohibited, even to

serve purportedly compelling societal needs:

> The very enumeration of the right [to keep and bear arms] takes
> out of the hands of government—even the Third Branch of
> Government—the power to decide on a case-by-case basis
> whether the right is really worth insisting upon.

*Heller*, 128 S. Ct. at 2821.  The Court's rationale makes it clear that the Second

Amendment stands on the same plane as any other enumerated constitutional right:

> We would not apply an "interest-balancing" approach to the
> prohibition of a peaceful neo-Nazi march through Skokie.  The
> First Amendment contains the freedom-of-speech guarantee
> that the people ratified, which included exceptions for
> obscenity, libel, and disclosure of state secrets, but not for the
> expression of extremely unpopular and wrong-headed views.
> The Second Amendment is no different.

*Id.* at 2821 (citing *Nat'l Socialist Party of Am. v. Skokie*, 432 U.S. 43 (1977)).

Regulatory choices that effectively preclude Second (and First) Amendment

activities are impermissible, regardless of their claimed merit or necessity.

The Court's rejection of Justice Breyer's dissenting view makes this point

clear.  Justice Breyer tacitly conceded that the Second Amendment protects

- 23 -

individual rights, but proposed "an interest-balancing inquiry" under which courts would "generally ask[ ] whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." *Heller,* 128 S. Ct. at 2852 (Breyer, J., dissenting). Justice Breyer reasoned that the handgun ban was "consistent with the Second Amendment" and was valid unless it was "show[n] that the District's regulation is unreasonable or inappropriate in Second Amendment terms." *Id.* at 2847. In other words, Justice Breyer's view was that there was no affirmative right to keep and bear arms – just an "interest" in arms that the government should keep in mind, but could also balance away. *See id.* at 2870 (the handgun ban is "a proportionate, not a disproportionate, response to [ ] compelling concerns . . . consistent with the Second Amendment's demands").

The Court explicitly rejected Justice Breyer's proposed "interest-balancing inquiry [that] results in the constitutionality of the handgun ban." *Heller,* 128 S. Ct. at 2821. The Second Amendment, "[l]ike the First, [ ] is the very product of an interest balancing by the people." *Id.* The handgun ban was thus invalid without regard to a standard of scrutiny. *See id.* at 2817. The Court did not remand the case to determine whether the ban was "reasonable" or "proportionate," but instead ordered that "the District must permit [plaintiff] to register his handgun and must

issue him a license to carry it in the home." *Id.* at 2822.  There could be no "interest-balancing" of the core protections of the Second Amendment.

C.   The Permit Laws and the Prior Restraint Framework

When the Supreme Court struck down the District of Columbia's handgun ban in *Heller*, it explained that the District's prohibition was invalid "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." *Heller*, 128 S. Ct. at 2817.  In *McDonald*, the Court struck down a Chicago statute that prohibited the possession of handguns without addressing the standard of review – it was sufficient to reiterate that "citizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense.'" *McDonald*, 130 S. Ct. at 3036 (quoting *Heller*, 128 S. Ct. at 2818) (alteration in source).

When the Court rules a law unconstitutional without regard to the standard of review, it necessarily rules that people have a right to actually engage in the activity at issue.  The restriction is invalid because it prohibits something that may not be prohibited – the exercise of constitutional rights deemed fundamental. While examples of laws that attempt to simply preclude the exercise of constitutional rights are rare in modern jurisprudence, one example is *Board of Airport Commissioners v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987), in which the Court struck down an LAX airport policy that prohibited (literally) all "First Amendment activities" on LAX property.  *See id.* at 575.  The unanimous Court

- 25 -

declined to address the standard of review, explaining simply that "no conceivable governmental interest would justify such an absolute prohibition of speech." *Id.*

The Court's holdings that the District of Columbia and Chicago handgun bans were invalid without reference to a standard of review shows that the Second Amendment protects an inviolate right "to keep and bear arms." While States may regulate the keeping and bearing of arms, within constitutional parameters, they may not "ban" handguns, *Heller*, 128 S. Ct. at 2817, and "citizens must be permitted" to use handguns for self-defense, *McDonald*, 130 S. Ct. at 3036. A law that prohibits these activities is invalid on its face.

The New Jersey Permit laws do not flatly prohibit people from carrying handguns for self-defense – at least in theory. Instead, they *condition* this right on a license that must be obtained from a government official – which the official has discretion to withhold. As such, the Permit laws fall under a different analytic framework than do the absolute handgun bans that were at issue in *Heller* and *McDonald*. Because the Permit laws condition the exercise of rights on official approval, they are *prior restraints* that trigger two key procedural safeguards.

First, a permissible prior restraint must not place "unbridled discretion in the hands of a government official or agency" and must not allow "a permit or license [to] be granted or withheld in the discretion of such official." *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225-26 (1990) (quoting *City of Lakewood v. Plain*

*Dealer Pub'g Co.*, 486 U.S. 750, 757 (1988) and *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (internal quotations omitted), respectively). Second, a valid prior restraint must "place limits on the time within which the decisionmaker must issue the license." *Id.* at 226.

The Supreme Court has repeatedly held that laws that condition the exercise of constitutional rights on official discretion are not evaluated using time, place, and manner analysis, but rather, using the prior restraint framework established by the Court over the course of the Twentieth Century. *See Cantwell v. Connecticut*, 310 U.S. 296, 304 (1940) ("[A] State may by general and non-discriminatory legislation regulate the times, the places of soliciting upon its streets. . . .  The Appellants are right in their insistence that the act in question is not such a regulation."); *see also City of Lakewood*, 486 U.S. at 768-69.

This suit is a facial challenge to the discretionary "justifiable need" components of the Permit laws.  Plaintiffs are entitled to relief on a showing that the discretionary need requirement is impermissible "in all its applications." *Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 968 (1984).  The "justifiable need" requirement allows for uncontrolled discretion by its very terms, and hence, it is an impermissible prior restraint in all its applications.

Separate and apart from their discretionary deficiencies, requirements that applicants demonstrate "justifiable need" and "urgent necessity for self protection"

are impermissible because the Second Amendment protects the "the *inherent* right

of self-defense," *Heller*, 128 S. Ct. at 2797 (emphasis added), and "*guarantee[s]*

the individual right to possess and carry weapons in case of confrontation," *id.* at

2817 (emphasis added).  Even if part of the "justifiable need" requirement can

somehow be characterized as nondiscretionary, it is impermissible to limit the

exercise of constitutional rights based on "need."

### POINT III:
### THE STATE CANNOT CONDITION ISSUANCE OF
### PERMITS TO CARRY ON DISCRETIONARY DETERMINATIONS

The applicable rule of review is well established:

> It is settled by a long line of recent decisions of this Court that
> an ordinance which, like this one, makes the peaceful
> enjoyment of freedoms which the Constitution guarantees
> contingent upon the uncontrolled will of an official – as by
> requiring a permit or license *which may be granted or withheld
> in the discretion of such official* – is an unconstitutional
> censorship or prior restraint upon the enjoyment of those
> freedoms.

*Staub v. Baxley*, 355 U.S. 313, 322 (1958) (emphasis added); *accord Shuttlesworth*

*v. City of Birmingham*, 394 U.S. 147, 151 (1969).  The Supreme Court has

invalidated a host of State and local laws that conditioned the exercise of various

constitutional rights – including the rights to vote, picket and protest, distribute

literature, and solicit support for a religion – on a permit that could be withheld in

the discretion of State or local officials.  *See, e.g., Louisiana v. United States*, 380

U.S. 145, 153 (1965) (interpretation test required to vote "leave[s] the voting fate

of a citizen to the passing whim or impulse of an individual registrar"); *Cox v.
Louisiana*, 379 U.S. 536, 556 (1965); *Largent v. Texas*, 318 U.S. 418, 422 (1943);
*Cantwell v. Connecticut*, 310 U.S. 296, 306-07 (1940).  The Court "ha[s]
consistently condemned licensing systems which vest in an administrative official
discretion to grant or withhold a permit upon broad criteria unrelated to proper
regulation of public places."  *Shuttlesworth*, 394 U.S. at 153 (quoting *Kunz v. New
York*, 340 U.S. 290, 294 (1951)).

State officials may only exercise "limited discretion, under properly drawn
statutes or ordinances, concerning the time, place, duration, or manner of use,"
*Cox*, 379 U.S. at 558, and this discretion must be:

> exercised with "uniformity of method of treatment upon the
> facts of each application, free from improper or inappropriate
> considerations and from unfair discrimination" . . . [and with] a
> "systematic, consistent and just order of treatment. . . ."

*Id.* (quoting *Cox v. New Hampshire*, 312 U.S. 569, 576 (1941) (internal quotations
omitted) (alteration and omissions in source).  The challenged aspects of the New
Jersey Permit laws do not satisfy this basic procedural safeguard.

This lawsuit challenges the requirement that officials find an applicant has
"a justifiable need to carry a handgun" before issuing a Permit to Carry.  N.J.S.A. §
2C:58-4(c)-(d); N.J.A.C. § 13:54-2.3(a)(3), -2.5.  Regulations explain that
"justifiable need" is:

> . . . urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun.  Where possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies[.]

N.J.A.C. § 13:54-2.4(d)(1).

Both police officials and judges have the statutory discretion to deny Permit applications on the ground that "justifiable need" does not exist.  *See, e.g.*, N.J.S.A. § 2C:58-4(c) ("[n]o application shall be approved by the chief police officer or the superintendent unless the applicant demonstrates . . . that he has a justifiable need to carry a handgun"), (d) ("[t]he court shall issue the permit to the applicant if, but only if, it is satisfied . . . that he has a justifiable need to carry a handgun").  These determinations are discretionary because they turn on "appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell*, 310 U.S. at 305 – *viz.*, the opinion that "a justifiable need" is or is not present.

On their face, these statutory "need" provisions are indistinguishable from other broad discretionary provisions the Supreme Court has struck.  *See, e.g., Walker v. City of Birmingham*, 388 U.S. 307, 329 (1967) (permit issued if "a proposed demonstration is consistent with 'public welfare, peace, safety, health, decency, good order, morals or convenience'"); *Largent*, 318 U.S. at 419 (permit issued "if after investigation the Mayor deems it proper or advisable"); *Cantwell*,

- 30 -

310 U.S. at 302 ("the secretary shall determine whether such cause is a religious one or is a bona fide object of charity or philanthropy").

The essential discretionary defect of the "justifiable need" requirement is the lack of clear and objective standards. *See Lakewood*, 486 U.S. at 758 ("Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating."). Without clearly articulated standards, officials cannot make any consistent determination that people have "urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun."

Many factors in evaluating "need" are left to the subjective determination of officials. When is the necessity "urgent"? How serious must threats be (and how many must there be), and how serious must an attack be, to render a danger to the applicant's life "special"? How does one know whether or not there are other means to avoid the "special danger"? In New Jersey, the issuance of a Permit is – undeniably – *not* "a matter of course," but is instead dependent on *opinions* drawn by officials based on their appraisal of facts. *See Cantwell*, 310 U.S. at 305. Even a cursory review of the Plaintiffs shows the extent to which "justifiable need" is inherently discretionary – police officials found two of six Plaintiffs to have "need," but judges reviewing the same applications reached opposite conclusions.

- 31 -

This suit also challenges the uncontrolled discretion that is vested in State officials to limit or restrict Permits.  The Permit laws provide that a "court may at its discretion issue a limited-type permit which would restrict the applicant as to the types of handguns he may carry and where and for what purposes such handguns may be carried."  N.J.S.A. § 2C:58-4(d); *accord* N.J.A.C. § 13:54-2.7(b).  Regardless of whether the State might validly *legislate* on these matters, the State cannot allow officials to make these determinations piecemeal.  *See City of Lakewood*, 486 U.S. at 764 ("even if the government may constitutionally impose content-neutral prohibitions on a particular manner of speech, it may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion").  While, as a general proposition, "a State may by general and non-discriminatory legislation regulate the times, the places, and the manner" in which constitutional rights are exercised, laws that vest officials with unrestrained discretion are not valid time, place and manner restrictions.  *See Cantwell*, 310 U.S. at 304.

The "justifiable need" components of the Permit laws are inherently discretionary.  The determination of whether one's need is justifiable, or urgent, or of whether there is evidence demonstrating a "special risk" that "cannot be avoided," is unavoidably the formation of an opinion.  The State of New Jersey cannot condition the exercise of constitutional rights in this fashion.

- 32 -

**POINT IV:**
## STATES CANNOT CONDITION THE EXERCISE OF CONSTITUTIONAL RIGHTS ON THE BASIS OF "NEED"

Assuming, *arguendo*, that some aspect of any "justifiable need" requirement might be characterized as nondiscretionary,[11] the requirement of "need" is an impermissible burden on the exercise of Second Amendment rights. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 128 S. Ct. at 2797. Hence, the regulatory desire to limit the exercise of this right to only those deemed to have an "urgent necessity for self-protection" is impermissible. The Permit laws are invalid because they require people to show that they have a "need" to exercise a constitutional right. The State may no more limit the right to keep and bear arms to those with an "urgent necessity for self-protection" than it could limit the rights of speech, petition, and assembly to those with an "urgent necessity for free expression."

A *nondiscretionary* restriction on the manner in which Second Amendment activities are exercised – falling short of a flat prohibition – is a time, place, and manner restriction that triggers the familiar framework of intermediate and strict scrutiny review. *See generally Marzzarella*, 614 F.3d at 95-97. Rational basis review is generally inapplicable to laws that restrict the Second Amendment

---

[11] Stripped of their discretionary aspects, the Permit laws might still require applicants to supply "a written certification of justifiable need to carry a handgun," N.J.A.C. § 13:54-2.4(d)(1) – although officials would lack discretion to reject proffered statements.

because "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Heller*, 128 S. Ct. at 2817 n.27; *see also id.* at 2817 ("Obviously, [rational basis] could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right[.]"); *Marzzarella*, 614 F.3d at 96.

Plaintiffs submit that it does not matter what level of scrutiny the Court applies to the "need" requirement because constitutional rights simply cannot be withheld on the basis of one's "need" to exercise his or her rights.  A right deemed fundamental carries with it an implicit and inherent recognition of its *necessity* to a free people.  States have no compelling (or even legitimate) interest in depriving people of their constitutional rights, and the State cannot point to the impact of its practice – the suppression of constitutional rights – as its interest.  *See Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991).

To whatever extent this Court may find that it is necessary to determine a specific standard of scrutiny, there can be no doubt that the Second Amendment protects fundamental civil rights, *McDonald*, 130 S. Ct. at 3042, and that "classifications affecting fundamental rights are given the most exacting scrutiny," *Clark v. Jeter*, 486 U.S. 456, 461 (1988).  Strict scrutiny applies to the "justifiable need" requirement for at least two reasons.

- 34 -

First, strict scrutiny applies because the "justifiable need" requirement is a complete preclusion on the right to carry a handgun – except, of course, for the extremely few individuals who are deemed to have the requisite "urgent necessity."  Although *some* people are (theoretically) able to obtain Permits in New Jersey, "[i]t is of no moment that the statute does not impose a complete prohibition.  The distinction between laws burdening and laws banning [a fundamental right] is but a matter of degree."  *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 812 (2000).  The degree of burden attendant the "need" requirement comes very close to complete preclusion.

In contrast, the Third Circuit's decision in *Marzzarella*, *supra*, concerned only a federal law that prohibited the possession of firearms with obliterated serial numbers.  *See Marzzarella*, 614 F.3d at 88 & n.1.  The Third Circuit concluded that the law was subject to intermediate scrutiny because "[t]he burden imposed by the law does not severely limit the possession of firearms."  *Id.* at 97.  The court reasoned that the law "leaves a person free to possess any otherwise lawful firearm he chooses—so long as it bears its original serial number."  *Id.*  In the same vein, the *Peruta* court used intermediate scrutiny to review California's concealed handgun law – largely because it found that California law otherwise allows people to carry handguns openly.  *See Peruta v. County of San Diego*, no. 09CV2371, 2010 U.S. Dist. LEXIS 130878, *15-16, 25 (S.D. Cal. Dec. 10, 2010).

- 35 -

The New Jersey Permit laws, in contrast, apply much more broadly.  A person who has been denied a Permit to Carry is *not* free to carry other kinds of handguns, nor is he or she free to carry handguns in alternative manners – the act of "carrying" a handgun for self-defense is simply precluded.  The burden is thus much more severe than the comparatively narrow burdens that the Third Circuit addressed in *Marzzarella*, and that the district court addressed in *Peruta*.  Strict scrutiny applies to this requirement because the absence of "justifiable need" is a complete bar on the right to carry a handgun for self-defense.

A second reason that strict scrutiny applies is that the Permit laws *facially rely upon* standards that conflict with the core values the Second Amendment protects.  The *Marzzarella* court observed that in the First Amendment context, "[s]trict scrutiny is triggered by content-based restrictions on speech in a public forum, but content-neutral time, place, and manner restrictions in a public forum trigger a form of intermediate scrutiny."  *Marzzarella*, 614 F.3d at 96.  This makes sense:  the core concern that the right of free speech vindicates is free expression, and the central risk is censorship.

However, "the inherent right of self-defense [is] central to the Second Amendment right," *Heller*, 128 S. Ct. at 2817; and the core risk the Second Amendment protects against is that of disarmament.  *See generally* <u>supra</u> p. 20.  Thus, a law that is expressly directed at limiting the number of citizens who may

carry operable handguns is inherently suspect.  There is no legitimate – or

important or compelling – interest in preventing people from exercising their

rights.  A law that is facially directed at preventing people from being armed for

lawful purposes is, fundamentally, one that draws a suspect classification.  And

there can be no doubt that "the overriding philosophy of [the New Jersey]

Legislature [has been] to limit the use of guns as much as possible."  *State v.*

*Valentine*, 124 N.J. Super. 425, 427, 307 A.2d 617, 619 (App. Div. 1973)

(conviction for carrying handgun without Permit).

Under "strict scrutiny" analysis, the government carries the burden of

proving that a law "furthers a compelling interest and is narrowly tailored to

achieve that interest," *Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010), a burden

that cannot be met where less restrictive alternatives are available to achieve the

same purpose, *see Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004); *see also United*

*States v. Engstrum*, 609 F. Supp. 2d 1227, 1331-32 (D. Utah 2009) (applying strict

scrutiny in Second Amendment analysis).

Again, to the extent it is even necessary to engage in burden analysis, the

deficiencies of the Permit laws are legion.  For one, the "justifiable need"

requirement is not narrowly tailored to any interest in public safety.  The State is

incapable of predicting crime and has no ability to predict who will face – much

less when or where – a situation in which they will urgently need self-protection.

- 37 -

From the perspectives of both the State and the victim, crime is largely random and unpredictable. A regulatory attempt to confine the right to keep and bear arms only to those who can somehow show "special danger" is really just a means to preclude virtually anyone from exercising the right.

The additional articulated components of the "need" requirement are similarly overbroad and impermissible. The requirement that citizens "corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies" is entirely irrational. Individuals victimized once may never be victimized again, and an individual's first encounter with a violent criminal may well lead to death or seriously bodily harm – before he or she can even articulate the "need." The right to self-defense at the core of the Second Amendment does not depend for its existence on a history of previous victimization. The Second Amendment provides that individuals – not the State – retain the ability to decide whether their own "necessity for self-protection" (N.J.A.C. § 13:54-2.4(d)(1)) necessitates being armed.

Finally, less-restrictive alternatives are plainly available to Defendants. In most States requiring a permit to carry guns, the issuance of carry permits is governed by objective standards that address permissible safety concerns, but leave regulators no discretion to deny permits to objectively qualified individuals. The State already conducts background checks on Permit applicants, requires

- 38 -

applicants to complete approved training, requires applicants to show they are qualified, and remains free to ban guns from being carried in "sensitive places" or in a dangerous manner.  Defendants thus have many narrowly-tailored – yet powerful – tools at their disposal for addressing compelling public safety interests, without depriving individuals of their fundamental rights.

For argument's sake, Plaintiffs note that the "justifiable need" requirement also could not pass muster under the framework of intermediate scrutiny. Intermediate scrutiny requires that a burden be "designed to serve a substantial governmental interest and allow[ ] for reasonable alternative avenues. . . ." *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 50 (1985).  Because people are *completely precluded* from carrying handguns without Permits to Carry, and because handguns are "considered … to be the quintessential self-defense weapon" *Heller,* 128 S. Ct. at 2818, there are *no* alternative avenues – let alone reasonable ones. *Compare Marzzarella*, 614 F.3d at 97 (obliterated-serial-number ban "leaves a person free to possess any otherwise lawful firearm he chooses—so long as it bears its original serial number").  And again, the mere desire to deprive people of their constitutional rights is no legitimate government purpose at all.  *See Simon & Schuster*, 502 U.S. at 120.

DM1\2441633.3

## CONCLUSION

The discretionary "justifiable need" requirement of the New Jersey Permit laws violates Plaintiffs' Second Amendment right to keep and bear arms. The Supreme Court has squarely ruled that the core of the Second Amendment protects the right of the individual to both possess and carry handguns for self-defense.

While this right is subject to permissible regulation, a State may not preclude its citizens from possessing or carrying handguns, and any licensing scheme must be implemented in a non-discretionary, uniform, and predictable manner. A State has no interest in precluding citizens from protecting themselves, and the Permit laws are facially invalid to the extent that they allow officials to deny Permit applications on the ground that "justifiable need" is not present.

Dated:  December 20, 2010

Respectfully submitted,

**DUANE MORRIS LLP**
**Delaware Limited Liability Partnership**

By: _____

David D. Jensen, Esq.
Robert P. Firriolo, Esq.
744 Broad Street, Suite 1200
Newark, NJ 07102-3889
973.424.2000
Attorneys for Plaintiffs

- 40 -