**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JEFFREY M. MULLER; DANIEL J. PISZCZATOSKI; JOHN M. DRAKE; GREGORY C. GALLAHER; LENNY S. SALERNO; FINLEY FENTON; SECOND AMENDMENT FOUNDATION, INC.; and ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., | : : : : : : : | **No. 2:10-CV-6110 (WHW) (CCC)** |
| Plaintiffs, | : : | |
| v. | : : | |
| THE HON. PHILIP J. MAENZA, *in his Official Capacity as Judge of the Superior Court of Morris County*; THE HON. RUDOLPH A. FILKO, *in his Official Capacity as Judge of the Superior Court of Passaic County*; THE HON. EDWARD A. JEREJIAN, *in his Official Capacity as Judge of the Superior Court of Bergen County*; THE HON. THOMAS A. MANAHAN, *in his Official Capacity as Judge of the Superior Court of Morris County*; COL. RICK FUENTES, *in his Official Capacity as Superintendent of the New Jersey State Police*; CHIEF FRANK INGEMI, *in his Official Capacity as Chief of the Hammonton, New Jersey Police Department*; CHIEF RICHARD COOK, *in his Official Capacity as Chief of the Montville, New Jersey Police Department*; and PAULA T. DOW, *in her Official Capacity as Attorney General of New Jersey*, | : : : : : : : : : : : : : : : : | |
| Defendants. | : : | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS

David D. Jensen, Esq.
Robert P. Firriolo, Esq.
**DUANE MORRIS LLP**
**Delaware Limited Liability Partnership**
744 Broad Street, Suite 1200
Newark, NJ 07102-3889
973.424.2000

## TABLE OF CONTENTS

PAGE

INTRODUCTION & SUMMARY OF ARGUMENT ........................................................1

ARGUMENT .................................................................................................................4

POINT I: SAF AND ANJRPC HAVE ORGANIZATIONAL STANDING ....................4

POINT II: *HELLER* HOLDS THAT THE SECOND AMENDMENT PROTECTS
THE GENERAL RIGHT TO POSSESS AND CARRY A GUN – AND THE
RULING IS *NOT* "LIMITED" TO THE HOME ...............................................7

    A.    The Holdings of a Decision are the Parts Necessary to the
Result Reached by the Court – Not Just the Boundaries of
Relief Ordered ...............................................................................8

    B.    The Plaintiff in *Heller* Expressly Sought the Right to Possess
*and Carry* a Handgun ..................................................................9

    C.    *Heller* Holds that the Right to "Bear Arms" is the Right to
Carry Guns ...................................................................................12

    D.    The *Heller* Court Did Not Limit its Ruling to the Home ...................15

    E.    The Dicta in *Heller* (and *McDonald*) Recognize a General
Right to Carry Guns in Public ........................................................18

    F.    Caselaw Does Not Support the Claim that the Second
Amendment Protects *Only* the Possession of Handguns within
the Home .....................................................................................24

POINT III: THE "JUSTIFIABLE NEED" REQUIREMENT IS INHERENTLY
DISCRETIONARY AND FAILS REVIEW AS A PRIOR RESTRAINT ................32

    A.    There is No Basis to Depart from *Marzzarella*'s Instruction to
Utilize First Amendment Standards of Review .................................33

    B.    The Permit Laws Are Prior Restraints Because they Condition
Constitutionally Protected Conduct on an Official Grant of
Permission ...................................................................................35

C.    The Determination of "Justifiable Need" is Plainly and
       Inherently Discretionary........................................................39

**POINT IV: "JUSTIFIABLE NEED" IS AN IMPERMISSIBLE BURDEN .....................42**

A.    The Supreme Court *Explicitly Rejected* the Attempt to "Balance
       Away" the Core Protections of the Second Amendment...................43

B.    There is No Basis for Applying the Proposed "Reasonable
       Regulation Test"..................................................................45

C.    The "Justifiable Need" Requirement is an Impermissible
       Burden on the Exercise of Constitutional Rights...............................49

**CONCLUSION** .................................................................................**53**

<u>**TABLE OF AUTHORITIES**</u>

**FEDERAL CASES**

*Abdelfattah v. United States Dep't of Homeland Sec.*, 488 F.3d 178 (3d Cir. 2007) ...................................................................................................9

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .......................4

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ..........................................................32

*Chambers v. Mississippi*, 410 U.S. 284 (1973) .......................................................16

*District of Columbia v. Heller*, 552 U.S. 1035 (2007) ............................................12

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ......................................*Passim*

*Dorr v. Weber*, no. C 08-4093, 2010 U.S. Dist. LEXIS 48950 (N.D. Iowa May 18, 2010)................................................................................ 26-28

*First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987)...................................................................................16

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ............................40

*Furman v. Georgia*, 408 U.S. 238 (1972)................................................................48

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990) .......................................................40

*Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265 (3d Cir. 2007).........................20

*Georgiacarry.org, Inc. v. Georgia*, no. 5:10-CV-302, 2011 U.S. Dist. LEXIS 6370 (S.D. Ga. Jan. 24, 2011)...............................................................29

*Gomillion v. Lightfoot*, 364 U.S. 339 (1960).........................................................15

*Gonzalez v. West Milwaukee*, no. 09CV0384, 2010 WL 1904977 (E.D. Wis. May 11, 2010)......................................................................................30

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ...........................5

*Jaffee v. United States*, 663 F.2d 1226 (3d Cir. 1981).............................................9

*McDonald v. Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010) ......................... 17-18

*McDonald v. Master Fin., Inc.*, 205 F.3d 606 (3d Cir. 2000) ........................ *Passim*

*Nat'l Socialist Party of Am. v. Skokie*, 432 U.S. 43 (1977) .............................. 34-35

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) ............................................................................. 19

*Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278 (3d Cir. 2002) ......................................................................................................................... 5

*Parker v. District of Columbia*, 311 F. Supp. 2d 103 (D.D.C. 2004)................ 10-11

*Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007).............................. 11

*Peruta v. County of San Diego*, 678 F. Supp. 2d 1046 (S.D. Cal. 2010) .... 25-26, 36

*Riel v. City of Bradford*, 485 F.3d 736 (3d Cir. 2007)............................................. 40

*Robertson v. Baldwin*, 165 U.S. 275 (1897) ............................................................. 28

*Scott v. Sanford*, 60 U.S. (19 How.) 393 (1857)....................................................... 28

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).............................................. 8

*Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969)................................................. 42

*Staub v. Baxley*, 355 U.S. 313 (1958)...................................................................... 36

*Summers v. Earth Island Inst.*, 129 S. Ct. 1142 (2009) ............................................ 6

*Teng v. Kensington*, no. 09-cv-8, 2010 U.S. Dist. LEXIS 13785 (D.N.H. Feb. 17, 2010) ................................................................................................... 28-29

*Thomas v. Chi. Park Dist.*, 534 U.S. 316 (2002) ..................................................... 40

*United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998)......................................... 13-14

*United States v. Chester*, no. 09-4084, 2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010)........................................................................................... 33, 50

*United States v. Hart*, 726 F. Supp. 2d 56 (D. Mass. 2010) .................................... 30

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010).............................. *Passim*

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000)....................... 51

*United States v. Serafini*, 167 F.3d 812 (3d Cir. 1999) ...........................................14

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ...........................................33

*United States v. Tooley*, 717 F. Supp. 2d 580 (S.D.W. Va. Jul. 16, 2010).............30

*Yee v. Escondido*, 503 U.S. 519 (1992) ............................................................10, 16

STATE CASES

*Aymette v. State*, 21 Tenn. 154 (1840) ....................................................................22

*In re Bastiani*, 23 Misc. 3d 235 (N.Y. County Ct. 2008) ........................................31

*Digiacinto v. Rector & Visitors of George Mason Univ.*, no. 091934, 2011
    Va. LEXIS 29 (Va. Jan. 13, 2011)......................................................................29

*In re Dubov*, 981 A.2d 87 (App. Div. 2009)............................................................31

*In re Echevarria*, 2010 WL 0428108 (N.J. App. Div. Aug. 20, 2010) ...................31

*In re Factor*, no. A-5202-08T4, 2010 N.J. Super Unpub. LEXIS 865 (N.J.
    App. Div. Apr. 21, 2010)....................................................................................30

*In re Novello*, 2010 WL 2795030 (N.J. App. Div. Jul. 15, 2010) ...........................31

*In re Preis*, 118 N.J. 564 (1990) ...............................................................................1

*Fife v. State*, 31 Ark. 455 (1876) ............................................................................29

*Hill v. Georgia*, 53 Ga. 472 (1874) ........................................................................29

*Kellogg v. City of Gary*, 562 N.E.2d 685 (Ind. 1990)............................................37

*Mack v. United States*, 6 A.3d 1224........................................................................32

*Mosby v. Devine*, 851 A.2d 1031 (R.I. 2004) .......................................38-39, 45-47

*People v. Dawson*, 934 N.E.2d 598 (Ill. Ct. App. 2010) ...................................31-32

*Schubert v. De Bard*, 398 N.E.2d 1339 (Ind. 1980) ..........................................37-38

*Skokie v. Nat'l Socialist Party*, 373 N.E.2d 21 (Ill. 1978)......................................35

*State v. Knight*, 218 P.2d 1177 (Kan. Ct. App. 2009) ............................................29

*State v. Workman*, 35 14 S.E. 9 (W. Va. 1891) ......................................................29

*Williams v. State*, no. 16, 2011 Md. LEXIS 1 (Md. Jan. 5, 2011)..................... 31-32

*Woollard v. Sheridan*, no. 10-2068, 2010 U.S. Dist. LEXIS 137031 (D. Md. Dec. 29, 2010).......................................................................................4

**FEDERAL STATUTES**

18 U.S.C. § 922...........................................................................................24

**STATE STATUTES**

D.C. Code § 22-4504 ...................................................................................10

Del. Code Ann. tit. 11 § 1441 ......................................................................22

Del. Code Ann. tit. 11 § 1442 ......................................................................22

Kansas Stat. Ann.§ 75-7c03 .........................................................................29

N.J.S.A. § 2C:39-5 ........................................................................................1

N.J.S.A. § 2C:39-6 ....................................................................................1, 52

N.J.S.A. § 2C:58-4 ........................................................................................1

18 Pa. Cons. Stat. Ann. § 6106 ....................................................................22

18 Pa. Cons. Stat. Ann. § 6109 ....................................................................22

R.I. Gen. Laws § 11-47-11............................................................................38

R.I. Gen. Laws § 11-47-18............................................................................38

**REGULATIONS**

N.J.A.C. § 13:54-2.4 ...............................................................................41, 52

N.J.A.C. § 13:54-2.7 .....................................................................................1

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. I ...........................................................................*Passim*

U.S. Const. Amend. II..........................................................................*Passim*

DM1\2510366.1

**PERIODICALS**

Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683
    (2007) ...............................................................................................45

David B. Kopel, *The Licensing of Concealed Handguns for Lawful
    Protection: Support from Five State Supreme Courts*, 68 Alb. L. Rev.
    305 (2005) ........................................................................................21

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-
    Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L.
    Rev. 1443 (2009) .............................................................................21

**NON-PERIODICAL PUBLICATIONS**

J. Kent, *Commentaries on American Law* (O. Holmes ed., 12th ed. 1873) ...........22

**OTHER AUTHORITIES**

Petioner's Brief, *District of Columbia v. Heller*, 554 U.S. 570 (2008) (No.
    07-290), 2008 U.S. S. Ct. Briefs LEXIS 7 ......................................12

DM1\2510366.1

## INTRODUCTION & SUMMARY OF ARGUMENT

This is a straightforward case:  The Supreme Court has held that the Second Amendment "guarantee[s] the individual right to *possess* and *carry* weapons [including, specifically, handguns] in case of confrontation."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added).  New Jersey law, however, criminalizes the unlicensed "possession" of handguns.  N.J.S.A. §§ 2C:39-5(b); 2C:44-1(f)(1)(c).  A private citizen must hold a Permit in order to carry a handgun in public for self-defense.  N.J.S.A. §§ 2C:39-5(b), -6(e).

This suit challenges *only one* aspect of New Jersey's gun laws – the ability of State officials to withhold Permits based on their *opinion* that individual applicants do not have a sufficient "need" for self-defense.  N.J.S.A. § 2C:58-4(c),(d); N.J.A.C. § 13:54-2.7(a).  This lawsuit does not challenge the authority of the State to criminalize the unlicensed possession or carry of handguns, nor does this lawsuit challenge the training, background, and qualification requirements otherwise needed to qualify for a Permit.  As such, the State Defendants' appeal to the need to preserve New Jersey's "careful grid of regulatory provisions" is misplaced.  State Br. at 2 (quoting *In re Preis*, 118 N.J. 564, 568 (1990)).

Since *McDonald*, no federal court has yet addressed the constitutionality of a law, such as New Jersey's, that bans the *general* act of "carrying" a handgun in public, or subjects this act to a license that state officials have discretion to

- 1 -

withhold.  The only federal court decisions to date have concerned – and generally upheld – delimited restrictions on the *manner* or *place* that guns are carried.

There is general agreement that the first analytic step requires this Court to determine whether the Permit laws burden conduct that the Second Amendment protects.  *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *see also* Plaintiffs Br.[1] at 22; State Br.[2] at 12.  The State Defendants' claim that the New Jersey laws do not implicate the Second Amendment can only be true if the Second Amendment reaches *no further than* one's home, business, and property. The State Defendants thus incorrectly attempt to characterize the Second Amendment as "the right to possess a handgun in one's home for purposes of self-defense."  *See* State Br. at 1, 11, 16, 19, 20.  However, they also concede that *Heller* "was leaving the affirmative scope of the Second Amendment to another day."  *Id.* at 15-16.  This concession is fatal.

Point II shows that the Supreme Court necessarily ruled that the Second Amendment protects a general right to "carry" guns that is not limited to the home. The Court's conclusion that the right to "bear Arms" is the right to "carry guns" was necessary to its resolution of *Heller*, which had hung on the meaning of "bear" since its resolution at the District Court level, and this conclusions is part of the

---

[1] Brief in Support of Plaintiffs' Motion for Summary Judgment (Doc. No. 13).

[2] Brief on Behalf of State Defendants (Doc. No. 25).

Court's holding.  Contrary to the claim of State Defendants and Amici, the Court did not specify that its holding was limited to the facts presented.

Also contrary to the State Defendants' averment, the *Heller* Court did *not* "suggest[ ] that the Second Amendment does not prohibit a complete prohibition against the carrying of handguns," *id.* at 1, and the State Defendants cite no provision of the *Heller* decision that contains such a statement.  The Court indicated only that *delimited* restrictions on the *manner* and *place* of carry are valid.  The State Defendants' claim that the Court used "prohibitions on carrying concealed firearms as an 'example' that demonstrates that the scope of the Second Amendment . . . does not encompass a right to carry a handgun beyond one's home," *id.* at 17, is pure sophistry.  These examples were used to show that there is a basic individual right to carry guns, subject to a degree of permissible restriction.

Once it is determined that a Permit to Carry is necessary to engage in constitutionally protected conduct – "to keep and bear Arms" – the resolution of this case is easy.  Where permission is necessary to engage in constitutionally protected acts, the Supreme Court has long imposed a two-part procedural test that is designed to ensure that state and local officials *do not have discretion to withhold* that permission.  While the State Defendants argue that no other court has (yet) applied prior restraint principles to a gun law since *Heller*, this misses the point.  The State Defendants show no reason that prior restraint principles should

- 3 -

*not* apply – and certainly, they have been applied to analogous statutory schemes in the past.

To whatever extent the Court finds it necessary to proceed further in analysis, Point IV explains that there is no basis for the proposed "reasonable regulation test" that would allow the State to balance away individuals citizens' constitutional right to bear arms.  The Supreme Court has rejected this interest-balancing approach, and further, the Court of Appeals for the Third Circuit has *directed* this Court to apply First Amendment principles of review.  Under a proper burden analysis, the "justifiable need" requirement cannot pass review because the lack of a Permit to Carry leaves *no* alternatives allowing carry in public.

<u>**ARGUMENT**</u>

**POINT I:**
<u>**SAF AND ANJRPC HAVE ORGANIZATIONAL STANDING**</u>

The State Defendants challenge the standing of Plaintiffs SAF and ANJRPC, claiming that "no individual plaintiff" is alleged to be a member of SAF or ANJRPC, and that SAF and ANJRPC do not identify specific members who were denied permits.  *See* State Br. at 10-11.

The Court need not reach this issue because there is no dispute that the remaining Plaintiffs have standing.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977); *see also Woollard v. Sheridan*, no. 10-2068, 2010 U.S. Dist. LEXIS 137031, *2-3 n.1 (D. Md. Dec. 29, 2010).

- 4 -

In any event, SAF and ANJRPC have standing because: (1) their members otherwise have standing to sue; (2) the interests they seek to protect – Second Amendment rights – are germane to their purpose; and (3) the claim for declaratory and injunctive relief that the "justifiable need" requirement is facially invalid does not require the participation of individual members in the lawsuit. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 286 (3d Cir. 2002).

There is no doubt that the organizational purposes of Plaintiffs SAF and ANJRPC are germane to this suit. Plaintiff SAF is a nationwide Second Amendment advocacy group that sponsored and was a party to the *McDonald* litigation. SAF continues to sponsor carefully selected lawsuits that vindicate the constitutional rights of law-abiding gun owners throughout the United States. *See* Ex. 1, Supp. Dec. of Miko Tempski ¶¶ 2-5. Plaintiff ANJRPC is the largest state-level organization that advocates for the rights of law-abiding gun owners in the State of New Jersey. ANJRPC also sponsors litigation that seeks to vindicate the rights of law-abiding gun owners. *See* Ex. 2, Supp. Dec. of Scott Bach ¶¶ 2-3.

Neither SAF nor ANJRPC could exist without thousands and thousands of members and supporters – both nationwide and in New Jersey – who contribute their time, money, and energy to support the organizations' goals.

There is no difficulty responding to the State Defendants' demand that Plaintiffs identify specific individuals who have standing. *See Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009) (looking to affidavits). Going no further than the parties to this case, at least two of the named Plaintiffs – John Drake and Daniel Piszczatoski – are members of both SAF and ANJRPC. *See* Ex. 3, Supp. Dec. of John Drake ¶¶ 1-3; Ex. 4, Supp. Dec. of Daniel Piszczatoski ¶¶ 1-3.

The membership of SAF and ANJRPC also includes individuals who are unable to represent their own interests, but who rely on SAF and ANJRPC to assert claims for them. These include people like Michael Fleischer, MD, a practicing ophthalmic physician and surgeon in Fort Lee. *See* Ex. 5, Dec. of Michael Fleischer, MD ¶¶ 1-3. Dr. Fleischer has completed all of the statutory requirements for a Permit to Carry – training in the use of firearms, training in use of force laws, and successful passage of the State Police shooting test – but he has not applied for a Permit because he fears that medical boards may view the (nearly certain) denial of his application negatively. *See* Ex. 5 ¶¶ 5-6.

The membership of SAF and ANJRPC also includes people like Scott Rivera, who works for the Town of Hammonton, New Jersey as an Assistant Superintendent. *See* Ex. 6, Dec. of Scott Rivera ¶¶ 1-3. Mr. Rivera applied for, and was denied, a Permit to Carry. *See* Ex. 6 ¶¶ 5-9. Mr. Rivera is concerned that seeking judicial review of his denied application for a Permit to Carry will be

- 6 -

costly and may cause unwanted attention, and hence, he relies on SAF and

ANJRPC to seek relief for him.  Ex. 6 ¶¶ 10-11.

**POINT II:**

***HELLER* HOLDS THAT THE SECOND AMENDMENT PROTECTS
THE GENERAL RIGHT TO POSSESS AND CARRY A GUN –
AND THE RULING IS *NOT* "LIMITED" TO THE HOME**

The Supreme Court *necessarily ruled* that the Second Amendment protects

the discrete acts of "keeping" (possessing) and "bearing" (carrying) guns – as

Plaintiffs demonstrated in their moving papers at pages 12-15.  As such, the Court

has *held* that the Second Amendment protects a general right to carry guns.

The State Defendants respond by arguing that the Court has not

"recognized" a general right to carry guns, and also, that the Second Amendment's

protections are confined to the home.  The State Defendants argue that "if . . . the

Court understood that it was recognizing a right to carry a handgun beyond one's

home, it could have and would have said so.  It did not."  State Br. at 13-14.  With

added invective, Brady Amici present the same argument.  *See* Brady Br.[3] at 7.

Incredibly, the State Defendants, and Brady Amici, hang these contentions

on one – *one* – paragraph of the *Heller* decision.  *See* State Br. at 13; Brady Br. at

6-7.  In this paragraph, the Court summarized the relief it was ordering for plaintiff

Heller:

---

[3] Proposed Amici Curiae Brief by Brady Center to Prevent Gun Violence, Ceasefire NJ, and
New Jersey Million Mom March Chapters of the Brady Campaign (Doc. No. 26).

- 7 -

> In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense.  Assuming that Heller is not disqualified from the exercise of Second Amendment rights, *the District must permit him to register his handgun and must issue him a license to carry it in the home*.

*Heller*, 554 U.S. at 635 (emphasis added).

The State Defendants, and Brady Amici, cite *no other portion* of the 64-page *Heller* decision to support their contention that the Court "*limited*" its holding – or even its analysis of the scope of the right protected – to the home.  *See* State Br. at 13, 20; Brady Br. at 1, 6-7.

A.    The Holdings of a Decision are the Parts Necessary to the Result
      <u>Reached by the Court – Not Just the Boundaries of Relief Ordered</u>

Neither the State Defendants nor Brady Amici discuss principles of *stare decisis* – apparently taking it as a foregone conclusion that if the Court did not order relief outside the home, then *ipso facto*, this delimits the boundaries of the Second Amendment's protections.  This foregone conclusion is mistaken.

The holdings of Supreme Court decisions are *not* confined to the questions presented for review, nor are they confined to the relief actually ordered by the Court.  "When an opinion issues for the Court, it is not only the result *but also those portions of the opinion necessary to that result* by which we are bound."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (emphasis added).  The Third Circuit has explained that:

- 8 -

> A holding . . . extends beyond a statement of who won or lost a case.  A court can choose among different holdings that offer broader or narrower ways of resolving a dispute.

*McDonald v. Master Fin., Inc.*, 205 F.3d 606, 612 (3d Cir. 2000).  The Third Circuit has also counseled that "we cannot avoid our obligation to forecast or predict how the Court will decide troubling cases involving new factual situations."  *Jaffee v. United States*, 663 F.2d 1226, 1228 (3d Cir. 1981).

Dicta, in contrast to a holding, is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding – that, being peripheral, may not have received the full and careful consideration of the court that uttered it."  *Abdelfattah v. United States Dep't of Homeland Sec.*, 488 F.3d 178, 185 (3d Cir. 2007) (quoting *McDonald*, 205 F.3d at 612 (internal quotations omitted)).

A close review of the controversy resolved by the Court in *Heller* shows that the Court necessarily ruled – *held* – that the Second Amendment protects an enumerated right to *carry* guns.  This right does not hang on whether one is located in his or her home.

B.   The Plaintiff in *Heller* Expressly Sought the Right to Possess *and Carry* a Handgun

*Heller* concerned provisions of the D.C. Code that prohibited:  (1) the possession of unregistered guns; (2) the registration of handguns, (3) the carry of a

- 9 -

handgun in the home without a license; and (4) the keeping of operable firearms in the home.  *See Heller*, 554 U.S. at 575-76.

Significantly, the plaintiff in *Heller* chose to present a narrowly framed claim for relief:  He sought the right to possess a handgun, and to carry it, *but only within his home.  See id.*  A party is generally entitled to "frame the question as broadly or as narrowly as he sees fit."  *Yee v. Escondido*, 503 U.S. 519, 535 (1992). The party's framing determines the issues that the Court *must* address, but the Court also resolves other questions "fairly included therein":

> The framing of the question presented has significant consequences, however, because under this Court's Rule 14.1(a), only the questions set forth in the petition, or fairly included therein, will be considered by the Court.  While *the statement of any question presented will be deemed to comprise every subsidiary question fairly included therein*, we ordinarily do not consider questions outside those presented in the petition for certiorari.

*Id.* (quotation omitted) (emphasis added).

Plaintiff Heller's claim, while specifically confined to his home, raised the issues of both *possession* and *carry*.  Aside from challenging the District's *de facto* handgun ban, Plaintiff Heller challenged, *inter alia*, D.C. Code § 22-4504, which prohibited "carry . . . either openly or concealed on or about one's person [of] a pistol."  *Parker v. District of Columbia*, 311 F. Supp. 2d 103, 103-04 & n.3 (D.D.C. 2004) (quoting D.C. Code § 4504(a) (2001)), *rev'd* 478 F.3d 400 (D.C. Cir. 2007), *aff'd sub nom. Heller*, 554 U.S. 570.  This statute differentiated

between carry in a "person's dwelling place, place of business, or on other land possessed," and carry in public, punishing the first as a misdemeanor, and the second as a felony. *See id.*; *see also Parker*, 478 F.3d at 400 n.20.

The District Court "reject[ed] the notion that there is an individual right to *bear* arms separate and apart from service in the Militia." *Parker*, 311 F. Supp. 2d at 109 (emphasis added). The court considered *only* the meaning of the term "bear" (not "keep") and concluded that the Second Amendment protects only a "Militia" right because it found that "bear" was a military term. *See id.*; *see also Parker*, 478 F.3d at 374.

The Court of Appeals for the District of Columbia Circuit rejected the "military sense" interpretation and reversed. *Parker*, 478 F.3d 370. The court instead concluded that "the Second Amendment protects an individual right to keep and bear arms." *Id.* at 395. One judge dissented, finding that the protection of the Second Amendment "relates to the Militia of the States only." *Id.* at 409 (Henderson, J., dissenting).

The Supreme Court granted certiorari to address this question:

> Whether the following provisions – D.C. Code §§ 7-2502.02(a)(4), 22-4504(a), and 7-2507.02 – violate the Second Amendment rights of individuals *who are not affiliated with any state-regulated militia*, but who wish to keep handguns and other firearms for private use *in their homes*?

*District of Columbia v. Heller*, 552 U.S. 1035 (2007) (emphasis added).

- 11 -

C.    <u>Heller</u> Holds that the Right to "Bear Arms" is the Right to Carry Guns

The District of Columbia's brief to the Supreme Court *led* with the argument that the Second Amendment only "protects [ ] the right to keep and bear arms as part of a well-regulated militia." Pet. Br. at 11-12, *District of Columbia v. Heller*, 554 U.S. 570 (2008) (No. 07-290), 2008 U.S. S. Ct. Briefs LEXIS 7. A core part of the District's argument was its claim that the phrase "'bear Arms' refers idiomatically to using weapons in a military context." *See id.* at 15-17.

The Court devoted the first 25 pages of its opinion to analyzing the meaning of the words of the Second Amendment themselves. *See Heller*, 554 U.S. at 576-600. The Court ultimately rejected the "military context" argument and found instead that the words of the Second Amendment "guarantee the individual right to possess *and carry* weapons in case of confrontation." *Id.* at 592 (emphasis added).

The State Defendants and Brady Amici attempt to ignore that a key aspect of the Court's ruling was its conclusion that the Second Amendment's right to "*bear* Arms" is not an idiomatic reference, but is instead a general right to carry firearms. But, as explained above, the meaning of "bear Arms" in the Second Amendment had been controlling at all levels of the litigation.

And it was a controlling issue at the Supreme Court. Although the Court had little difficulty concluding that "keep" meant "have weapons," *id.* at 582, it

devoted considerably more analysis to the meaning of the term "bear," *see id.* at

584-92.  The Court set forth its conclusion at the beginning of its analysis:

> At the time of the founding, as now, to "bear" meant to "carry."
> When used with "arms," however, the term has a meaning that
> refers to carrying for a particular purpose – confrontation.  In
> *Muscarello v. United States*, in the course of analyzing the
> meaning of "carries a firearm" in a federal criminal statute,
> Justice Ginsburg wrote that "[s]urely a most familiar meaning
> is, as the Constitution's Second Amendment . . . indicate[s]:
> 'wear, bear, or carry . . . upon the person or in the clothing or in
> a pocket, for the purpose . . . of being armed and ready for
> offensive or defensive action in a case of conflict with another
> person.'"  We think that Justice Ginsburg accurately captured
> the natural meaning of "bear arms."  Although the phrase
> implies that the carrying of the weapon is for the purpose of
> "offensive or defensive action," it in no way connotes
> participation in a structured military organization.

*Id.* at 584 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998)

(Ginsburg, J., dissenting)) (other quotations omitted; alterations in source).

Plaintiffs showed in their moving papers (pp. 13-15) that the Court's explicit

rejection of Justice Stevens' dissenting view – opposing the Court's conclusion

that the Second Amendment right to "bear Arms" is a personal right to carry guns

– resolves any doubt or ambiguity on the point.  In *United States v. Bloom*, 149

F.3d 649 (7th Cir. 1998), the Court of Appeals for the Seventh Circuit concluded

that the Supreme Court had rejected a competing view set forth in a *concurring*

opinion because "[h]ad the majority agreed with Justice Stevens about the meaning

of § 3731, it would have done as he urged:  it would have ordered the appeal

- 13 -

dismissed without turning to the Constitution." *Id.* at 653; *accord United States v. Serafini*, 167 F.3d 812, 815 n.7 (3d Cir. 1999). Had the majority agreed with Justice Stevens that "bear" does *not* mean "carry," it would have done as Justice Stevens urged and found there was no personal right at issue. Minimally, the Court would have substantially altered its analysis at pages 584-592.

The State Defendants offer no response to this plain fact – that the Court necessarily decided that "bear" means "carry in case of confrontation." Brady Amici's only response is confined to a footnote that substantively asserts that the Court's discussion of the meaning of "bear Arms" in the Second Amendment did not actually address the meaning of "bear Arms" in the Second Amendment, and proposes that this Court interpret the term "bear Arms" differently. *See* Brady Br. at 7 n.4 (quoting *Heller*, 554 U.S. at 584).[4]

This misplaced argument simply ignores both the Court's explicit conclusion – that to "bear Arms" means to "carry weapons in case of confrontation," *Heller*, 554 U.S. at 592 – as well as *stare decisis*. The very fact that the Court needed to resolve the meaning of "bear Arms" to construe the meaning of "keep and bear Arms" shows that the meaning of "bear Arms" was *necessarily decided* by the

---

[4] Brady Amici state that "the Heller Court discussed 'bear' as meaning 'carry' simply to support its position that the Second Amendment's use of 'bear arms' 'in no way connotes participation in a structured military organization,' and, therefore, the Court opined, the phrase did not indicate that the Second Amendment was limited to militia matters." Brady Br. at 7 n.4 (quoting *Heller*, 554 U.S. at 584).

- 14 -

Court.  The *Heller* Court was certainly not deciding the meaning of "bear Arms" in the context of interpreting some other provision of the Constitution.  *Cf. Gomillion v. Lightfoot*, 364 U.S. 339, 344 (1960) (*stare decisis* reaches "the particular prohibitions of the Constitution considered in [prior] cases").

The Court's resolution of the meaning of "bear Arms" – as a personal right to carry guns in case of confrontation – could not be removed from *Heller* without seriously impairing the analytical foundations of the holding.  As such, the Court's conclusion is a holding – not dicta.  *See McDonald v. Master Fin., Inc.*, 205 F.3d 606, 612 (3d Cir. 2000) ("dictum [is] a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding – that, being peripheral, may not have received the full and careful consideration of the court that uttered it" (quotations omitted)).

D.      The *Heller* Court Did Not Limit its Ruling to the Home

The State Defendants, and Brady Amici, claim that the Supreme Court "*limited*" its *Heller* decision to the home, but again, the only part of the *Heller* decision that they cite is the Court's summary of the relief it was ordering for the plaintiff.  *See* State Br. at 13, 20; Brady Br. at 1, 6-7.  What State Defendants (and Brady Amici) ignore is that the Court ordered *all* of the relief that the plaintiff in *Heller* had sought.  It was not a situation in which the plaintiff had sought, and the Court had refused, relief outside the home.  The Court had no power to grant relief

that went beyond the question presented.  *See generally Yee v. Escondido*, 503 U.S. 519, 535 (1992).

Therefore, the claim that the Court "limited" its holding is misplaced.  The Court did *not* make a statement explicitly confining its analysis to the facts before it – as it has done in the past.  *See, e.g.*, *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 321 (1987) ("We limit our holding to the facts presented[.]"); *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973) ("In reaching this judgment, we establish no new principles of constitutional law. . . . Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.").

And it was certainly not a case in which the Court lacked apprehension that a recognized right to "carry" guns would apply both inside and outside the home. Justice Stevens, in dissent, observed that "the need to defend oneself may suddenly arise in a host of locations outside the home" and that the ban on home possession "may well be just the first of an unknown number of dominoes to be knocked off the table."  *Heller*, 554 U.S. at 679-80 (Stevens, J., dissenting).  While the Court responded to many of the potential ramifications that Justice Stevens raised, they pointedly did *not* disclaim this suggestion.

The *Heller* Court's discussion of the significance of the home only reinforces the conclusion that the Second Amendment secures rights that apply far

- 16 -

more broadly than the home.  Far from suggesting the right was *confined* to the

home, the Court described the right as one that had its *consummation* in the home:

> The handgun ban . . . extends, moreover, to the home, where
> the need for defense of self, family, and property is *most acute*.
>
> \*      \*      \*
>
> [W]hatever else [the Second Amendment] leaves to future
> evaluation, it surely elevates above all other interests the right
> of law-abiding, responsible citizens to use arms in defense of
> hearth and home.
>
> \*      \*      \*
>
> The Constitution leaves the District of Columbia a variety of
> tools for combating that problem, including *some* measures
> regulating handguns.  But the enshrinement of constitutional
> rights necessarily takes certain policy choices off the table.
> These *include* the absolute prohibition of handguns held and
> used for self-defense in the home.

*Heller*, 554 U.S. at 628, 635, 636 (quotations omitted) (emphasis added).  These

statements plainly recognize that the right to keep and bear arms is *not* confined to

the home, and that the home is merely a place where the right is at its zenith.

While "some measures regulating handguns" are permissible under the

Constitution, the Court surely did not signal *carte blanche* for regulatory measures

that operate outside the home.

Nor is such limiting or qualifying language to be found in *McDonald*, which

also addressed a claim confined to the home.  *See McDonald v. Chicago*, 561 U.S.

___, 130 S. Ct. 3020, 3026 (2010).  The *McDonald* Court continued *Heller*'s

- 17 -

theme of referencing personal protection in the home as a "notable example" of protected conduct.  *See id.* at 3044.

The Court's holding that the Second Amendment guarantees the right to possess and carry guns for self-defense admits of no "home"-based limitation on its face.  Moreover, the Court did *not* disclaim the existence of rights outside the home.  There is no merit to the contention that the Court's holdings are not binding merely because a somewhat different factual context is now presented.

E.    The Dicta in *Heller* (and *McDonald*) Recognize a General Right to
      Carry Guns in Public

The Court provided two examples of carry restrictions that either were, or might be, permissible.  The significance is that the restrictions the Court outlined pertain to the *place* and *manner* of carry – not the basic ability to carry or bear guns.  Thus, the Court's opinion explicitly recognizes a constitutional right to "possess and carry weapons in case of confrontation," and the dicta then qualifies the sweep of that ruling with statements that laws precluding carry *in certain places or manners* are, or may be, valid.

The clear import is that laws that simply *preclude* "carry" are not valid.

1.    *"Presumptively Lawful" Restrictions*

The State Defendants claim that "Plaintiffs read the Court's reference to laws prohibiting the carrying of firearms in sensitive places to be exactly what the Court said it was not, an exhaustive list."  State Br. at 15.  The State Defendants

- 18 -

place considerable weight on the three "presumptively lawful" gun restrictions the

*Heller* Court identified:

> Although we do not undertake an exhaustive historical analysis
> today of the full scope of the Second Amendment, nothing in
> our opinion should be taken to cast doubt on longstanding
> prohibitions on the possession of firearms by felons and the
> mentally ill, or laws forbidding the carrying of firearms in
> sensitive places such as schools and government buildings, or
> laws imposing conditions and qualifications on the commercial
> sale of arms.

*Heller*, 554 U.S. at 626-27.  Certainly, the basic contours of these restriction reflect

an understanding that *permissible* regulations will not simply preclude objectively

qualified private citizens from possessing and carrying guns.  The Court explained

it supplied its "presumptively lawful" restrictions "as examples."  *Id.* 627 n.26.

The State Defendants' argument fails to recognize that the Court selected its

dicta examples carefully – even including the examples as a point in its Syllabus.

*See id.* at 572; *see also Marzzarella*, 614 F.3d at 93 ("prudence counsels caution

when extending these recognized exceptions to novel regulations unmentioned by

*Heller*").  The Third Circuit has explained that:

> *we should not idly ignore considered statements the Supreme*
> *Court makes in dicta.*  The Supreme Court uses dicta to help
> control and influence the many issues it cannot decide because
> of its limited docket.

*McDonald v. Master Fin., Inc.*, 205 F.3d 606, 612 (3d Cir. 2000) (emphasis

added); *accord Official Comm. of Unsecured Creditors of Cybergenics Corp. v.*

- 19 -

*Chinery*, 330 F.3d 548, 561 (3d Cir. 2003); *see also Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007).

The State Defendants claim that "there is no indication that the Court coupled or associated, much less rationalized, that prohibition [on carry in sensitive places] as presupposing the existence of a general right to carry handguns." State Br. at 15. But this argument does not make sense.

As previously noted, the Court expressly ruled that the Second Amendment protects the right "to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. If – as State Defendants and Brady Amici contend – the Court had *intended to limit* its broad holding *to the home*, then it would have been pointless for the Court to identify laws prohibiting guns from specified, sensitive *public* places as an "example" of a "presumptively lawful" restriction. The Court could have stated simply that "laws forbidding the carrying of firearms *in public*" were "presumptively valid." (For that matter, it could have said, "we limit our holding to the home.")

The State Defendants' argument – that the carry-related example the Court provided do not recognize a *general* right to carry handguns in public – requires one to assume that the Court selected its example without thought. One must assume that after supposedly *limiting* its holding to the home, the Court then *carelessly* excepted laws prohibiting guns from "sensitive places such as schools

- 20 -

and government buildings" and "laws imposing conditions and qualifications on the commercial sale of arms" – activities that plainly take place *in public*.

This case does not present the question of what place and manner restrictions will ultimately be found to be permissible burdens on the right to keep and bear arms.  New Jersey law bans the general act of "*possessing*" a handgun outside one's home at all, and hence, the validity of place and manner restrictions is irrelevant.

### 2. *Historical Validity of Bans on* Concealed *Carry*

A requirement that guns be carried either in the open, or concealed, relates to the *manner* in which guns are carried – not to whether people have the basic ability to carry guns *at all*.  Thus, cases discussing bans or restrictions on *concealed* carry relate only obliquely to the New Jersey scheme that bans *all* carry.

The essential background to this controversy is that the laws of a vast majority of states – including the other two States in the Third Circuit – allow people (not otherwise disabled) to carry firearms in the open, but either prohibit or (more commonly) license the *concealed* carry of firearms.  *See generally* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense:  An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443,  (2009); David B. Kopel, *The Licensing of Concealed Handguns for Lawful Protection:*

*Support from Five State Supreme Courts*, 68 Alb. L. Rev. 305, 305 (2005); *see also*
Del. Code Ann. tit. 11 §§ 1441-42; 18 Pa. Cons. Stat. Ann. §§ 6106(a), 6109(e).

The *Heller* decision referenced a historical debate over whether bans on
concealed carry were permissible under state constitutional provisions protecting a
right to "bear arms."  The Court first addressed the issue of concealed carry in the
portion of its opinion that considered whether various nineteenth century
authorities supported the conclusion that the Second Amendment protects a
personal right to possess and carry guns.  *See Heller*, 554 U.S. at 613-14, 618.  The
Court noted that *Aymette v. State*, 21 Tenn. 154 (1840), had upheld a ban on
concealed carry, but the Court also observed that other Tennessee decisions had
otherwise upheld a general right to carry guns.  *See Heller*, 554 U.S. at 613-14.  A
few pages later, the Court quoted J. Kent, *Commentaries on American Law*, which
explained that it was unclear whether bans on concealed carry were valid or not:

> As the Constitution of the United States, and the constitutions
> of several of the states, in terms more or less comprehensive,
> declare the right of the people to keep and bear arms, it has
> been a subject of grave discussion, in some of the state courts,
> whether a statute prohibiting persons, when not on a journey, or
> as travellers, from *wearing or carrying concealed weapons*, be
> constitutional.  *There has been a great difference of opinion on
> the question.*

*Heller*, 554 U.S. at 618 (quoting 2 J. Kent, Commentaries on American Law *340,
n.2 (O. Holmes ed., 12th ed. 1873)) (second emphasis added).

- 22 -

The Court returned to the issue of concealed carry in the sentence before it articulated its "presumptively lawful" measures.  *See id.* at 626.  Contrary to the claims of the State Defendants and Brady Amici, the *Heller* Court did *not* state that bans on concealed carry were "presumptively lawful," but only that "a majority of" nineteenth century courts had found that they passed muster:

> Like most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.  For example, *the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful* under the Second Amendment or state analogues.

*Id.* at 626 (emphasis added).  In its Syllabus, the Court reiterated that its "opinion should not be taken to cast doubt on" the articulated presumptively lawful regulations, but the Court stated only that "concealed weapons prohibitions *have been upheld*."  *Id.* at 572 (emphasis added).

Thus, far from stating that concealed carry bans are *presumptively lawful*, the Court appears to have reserved the decision of this question for a later date.

This lawsuit takes no position on the concealed vs. open carry debate.  The only thing that matters here is that the debate *exists*.  That there is substantial disagreement over whether a constitutional right to "bear arms" allows states to ban the *concealed* carry of firearms in favor of their open carry shows only that the

- 23 -

right to "bear Arms" indisputably encompasses a basic right to carry guns – one
that may be subjected to permissible regulations, but not precluded.

F.    Caselaw Does Not Support the Claim that the Second Amendment
      Protects *Only* the Possession of Handguns within the Home

In arguing that the Second Amendment "does not encompass a right to carry
a handgun beyond one's home," the State Defendants cite decisions that are
inapposite and that do *not* support the claim that the Second Amendment's right to
"bear Arms" ends at the threshold of one's home.

*None* of the federal court decisions cited confines the Second Amendment to
the home.  *See* State Br. at 17-18.  The only decision that the State Defendants cite
that is a binding precedent for this Court is the Third Circuit's decision in
*Marzarella*, which again, concerned a federal law that prohibits the possession of
any firearm that has an obliterated serial number.  *See Marzzarella*, 614 F.3d at 87;
*see also* 18 U.S.C. § 922(k).  Even though *Marzarella* concerned the issue of
basic possession, rather than the issue of carry, the Third Circuit recognized that
the Second Amendment protects an "individual right to possess *and carry* weapons
in case of confrontation."  *Marzzarella*, 614 F.3d at 90 (2797) (emphasis added).

By its terms, the obliterated-serial number law at issue did not categorically
prohibit the possession of handguns – in the home, or anywhere else.  *See id.* at 94.
Thus, if the *Marzzarella* court had indeed concluded that the Second Amendment
protects *only* the right to possess a handgun within the home – as the State

- 24 -

Defendants and Brady Amici claim – then it would have ruled simply that the law at issue did not implicate the Second Amendment because it did not categorically prohibit handguns from the home.  But the court did not so rule.

Instead, the *Marzzarella* court reasoned that while "*Heller* delineates *some* of the boundaries of the Second Amendment right to bear arms," still, "*Heller* did not purport to *fully define* all the contours of the Second Amendment."  *Id.* at 92 (emphasis added).  These statements, and this approach, are totally inconsistent with the State Defendants' contention that the Second Amendment is *confined* to the home.

The State Defendants offer no real resistance to the California District Court's two decisions in *Peruta v. County of San Diego*, which substantively ruled that the facial requirements of California's *concealed* carry laws were not unconstitutional because private citizens could still carry handguns *un*concealed.  *See* Plaintiffs Br. at 17.  (Tellingly, Brady Amici do not cite the decisions at all.)  The State Defendants point to the court's qualification that its summary judgment decision "d[id] not need to decide" the scope of the right to carry guns because the *concealed* handgun license process "would pass constitutional muster even if it burdens protected conduct."  *Peruta v. County of San Diego*, no. 09CV2371, 2010 U.S. Dist. LEXIS 130878, *19 (S.D. Cal. Dec. 10, 2010); *see* State Br. at 16.

- 25 -

However, the State Defendants ignore that the court had previously denied the defendants' motion to dismiss on the finding that "the *Heller* decision cannot stand for the broad proposition that *all* concealed weapon bans are presumptively constitutional." *Peruta v. County of San Diego*, 678 F. Supp. 2d 1046, 1054 (S.D. Cal. 2010) (emphasis in source).  Indeed, the court reiterated this point in its summary judgment decision.  *See Peruta*, 2010 U.S. Dist. LEXIS 130878 at *18. A key part of the District Court's summary judgment decision rested on its conclusion that the right to bear arms historically allowed *concealed* carry to be banned where "alternative forms of carrying arms were available." *Id.*  It was in this context that the court concluded that "to the extent [the concealed weapon law] burden[s] conduct falling within the scope of the Second Amendment, if at all, *the burden is mitigated* by the provisions . . . *that expressly permit loaded open carry* for immediate self-defense." *Id.* at 19 (emphasis added).  The court then found that the burdens imposed on *concealed* carry passed, or would pass, intermediate scrutiny review. *See id.* at *26-27.  As such, the court's qualification only goes so far – and the court certainly recognized a general right to carry guns in public.

The State Defendants and Brady Amici cite *Dorr v. Weber*, no. C 08-4093, 2010 U.S. Dist. LEXIS 48950 (N.D. Iowa May 18, 2010), to support their claim that the Second Amendment "does not encompass a right to carry a handgun beyond one's home."  State Br. at 17.  However, this case contains no such

- 26 -

pronouncement and is also readily distinguished on two grounds.  First, the *cited* decision actually discussed the Second Amendment in the limited context of *qualified immunity*.  *See Dorr*, 2010 U.S. Dist. LEXIS 48950 at *22-31.  Second, *Dorr* concerned the claim that there was "a right to carry a *concealed* weapon under the Second Amendment."  *Id.* at *24 (emphasis added).  Thus, the decision addressed *only* whether a right to carry *concealed* handguns had been "*clearly established*" at the time the defendant sheriff denied the license application.  *See id.* at *29-30 (quotations omitted) (emphasis added).[5]  While the *Dorr* court concluded that qualified immunity should be granted because "a right to carry a concealed weapon under the Second Amendment has not been recognized to date," *id.* at *26, the court most certainly did *not* declare that the Second Amendment only protects conduct that takes place inside the home.

In fact, the *Dorr* court expressly recognized that "[t]he [*Heller*] Court *declared unequivocally* that the Second Amendment guarantees 'the individual right to possess *and carry* weapons in case of confrontation.'"  *Id.* at *24-25 (quoting *Heller*, 554 U.S. at 592) (emphasis added).  After the qualified immunity decision, the case proceeded to trial, where the court found for the Plaintiff on other grounds and ordered the sheriff to issue the license.  *See Dorr v. Weber*, no.

---

[5] The present lawsuit seeks relief from Defendants only in their official capacities and does not seek money damages.  As such, qualified immunity is not in issue.

C 08-4093, 2010 U.S. Dist. LEXIS 67517, *27 (N.D. Iowa Jul. 7, 2010).  Although the court never reached the Second Amendment issue, it was still careful to note that it took "no position" regarding whether the concealed handgun license law was constitutional.  *Id.* at *28 n.13.  Clearly, the court did not confine the Second Amendment to the home.

This is also true of the Court's statement upholding the validity of concealed carry bans in *Robertson v. Baldwin*, 165 U.S. 275 (1897), which is noted to have been well beyond any issue presented in that case and pure dicta.  *See id.* at 281-82.  To the extent this Court is inclined to rely on tangential dicta – and while Plaintiffs are loathe to cite the decision – the Court in *Scott v. Sanford*, 60 U.S. (19 How.) 393 (1857), recognized that a constitutional right enjoyed by all citizens is "the full liberty . . . to keep and carry arms wherever they [go]."  *Id.* at 417.

The State Defendants, and particularly Amici, rely on many cases that uphold *delimited restrictions* on the *manner* of carrying guns to support the claim that there is *no* "right to carry a handgun beyond one's home."  These cases do not support this proposition.  On the contrary, they indicate that a policy of *preclusion* is impermissible.  *Teng v. Kensington*, no. 09-cv-8, 2010 U.S. Dist. LEXIS 13785 (D.N.H. Feb. 17, 2010), concluded merely that a requirement that one submit additional background information in order to obtain a concealed handgun license was permissible, and the court noted that a person could still carry a gun openly

- 28 -

DM1\2510366.1

without any license.  *See id.* at *16-17 n.11.  The decisions in *State v. Knight*, 218

P.2d 1177, 1190 (Kan. Ct. App. 2009),[6] and *State v. Workman*, 35 14 S.E. 9, 10

(W. Va. 1891), both concerned the validity of bans on the carry of *concealed*

handguns – an issue that is not present here.  The court in *Fife v. State*, 31 Ark. 455

(1876), upheld a restriction on carrying "pocket" pistols, but noted that such a ban

could not be extended to cover *all* revolvers.  *See id.* at 460-61.

     Cases that support the restriction of guns from delimited and sensitive *places*

also do not support the proposition that states may permissibly ban *all* carry in

public.  *Hill v. Georgia*, 53 Ga. 472 (1874), upheld a conviction for carrying a gun

*into a court*, but the court noted that a carry restriction could not validly "interfere

with the ordinary bearing and using of arms."  *Id.* at 483.  This rationale is entirely

consistent with two court decisions (decided since Plaintiffs submitted their

moving papers) that uphold restrictions on the right to carry guns in university

buildings and churches.  *See Georgiacarry.org, Inc. v. Georgia*, no. 5:10-CV-302,

2011 U.S. Dist. LEXIS 6370, *30-32 (S.D. Ga. Jan. 24, 2011); *Digiacinto v.*

*Rector & Visitors of George Mason Univ.*, no. 091934, 2011 Va. LEXIS 29, *11-

13 (Va. Jan. 13, 2011).

---

[6] It must be observed that the State of Kansas issues licenses to carry concealed handguns on
nondiscretionary terms.  *See* Kansas Stat. Ann. § 75-7c03.  The *Knight* decision concerned a
person convicted of carrying without a license.

Amici's citation to *United States v. Tooley*, 717 F. Supp. 2d 580 (S.D.W. Va. Jul. 16, 2010), is inapposite.  *See* Brady Br. at 10.  *Tooley* concerned the constitutionality of a provision of federal law that prohibits those convicted of domestic violence assault from possessing firearms.  *See Tooley*, 717 F. Supp. 2d at 592-98.  There is nothing about the decision that indicates an intent to confine the Second Amendment to the home.

Brady Amici cite *United States v. Hart*, 726 F. Supp. 2d 56 (D. Mass. 2010), and *Gonzalez v. West Milwaukee*, no. 09CV0384, 2010 WL 1904977 (E.D. Wis. May 11, 2010), but these decisions most certainly do *not* disclaim the existence of a right to carry guns outside the home.  The cases do, however, belie Brady Amici's contention that the recognition of Second Amendment rights will prevent police officers from doing their jobs (p. 13).  In both cases, the courts upheld police stops that were predicated on officers observing a person with a gun in public.  *See Hart*, 726 F. Supp. 2d at 60; *Gonzalez*, 2010 WL 1904977 at *3.

The State Defendants also cite the New Jersey Appellate Division's decision in *In re Factor*, no. A-5202-08T4, 2010 N.J. Super. Unpub. LEXIS 865 (Apr. 21, 2010).  *Factor* framed the issue as being whether "the Second Amendment prohibits laws that restrict carrying *concealed* weapons."  *Id.* at *9 (emphasis added).  It is unclear whether the applicant in *Factor* sought a license limited to the act of carrying a handgun "concealed," or whether the court misapprehended the

scope of conduct that New Jersey law prohibits.  In any event, a decision

upholding a ban on *concealed* carry is inapposite.  *See also In re Bastiani*, 23 Misc.

3d 235, 237 (N.Y. County Ct. 2008).  Amici also cite numerous New Jersey state-

court decisions that have no bearing on the issue herein at all – it appears Amici

cited any New Jersey decisions that upheld any aspect of New Jersey's gun laws

after *Heller*, without regard to their lack of relevance to this case.[7]

Notwithstanding their oft-repeated claim that courts have limited and

confined the Second Amendment to the home, the State Defendants identify only

three decisions that in fact do so.  *All* of these decisions were appeals from criminal

convictions for the unlicensed carrying of handguns, and one of the decisions

expressly noted that it did *not* reach the issue of whether the state's discretionary

permit law was constitutional.  *See Williams v. State*, no. 16, 2011 Md. LEXIS 1,

*15 & n.7 (Md. Jan. 5, 2011).  The rationale, as expressed in the Illinois appellate

decision *People v. Dawson*, 934 N.E.2d 598 (Ill. Ct. App. 2010), is that "*Heller*

specifically limited its ruling to interpreting the amendment's protection of the

right to possess handguns in the home, not the right to possess handguns outside

the home."  *Id.* at 605-06; *see also Williams*, 2011 Md. LEXIS 1 at *31-32 (relying

---

[7] Brady Amici cite *In re Dubov*, 981 A.2d 87 (App. Div. 2009), *In re Echevarria*, 2010 WL 0428108 (App. Div. Aug. 20, 2010), and *In re Novello*, 2010 WL 2795030 (App. Div. Jul. 15, 2010), but all of these concerned denials of firearms purchaser identification cards and/or permits to purchase handguns that were grounded in reasons revealed in the investigation.  *See* Brady Br. at 1, 8.  These cases are unrelated to the "justifiable need" requirement.

on *Dawson*); *cf. Mack v. United States*, 6 A.3d 1224, 1236 (D.C. 2010).  The defect in this rationale – whether expressed by a results-oriented state court, or by the State Defendants, or by Amici – is that there is *no part* of the *Heller* decision that so limits the Court's holding.  The *Dawson* court justified its "limited holding" conclusion with a citation to two portions of *Heller* – 128 S. Ct. at 2801-02 and 2815-16 – but neither portion indicates that the Court's ruling is confined to the home.  *See Dawson*, 934 N.E.2d at 605 (citing *Heller* at 128 S. Ct. 2801-02 and 2815-16); *see also Williams*, 2011 Md. LEXIS 1 at *31-33 (relying on *Dawson*).

### POINT III:
### THE "JUSTIFIABLE NEED" REQUIREMENT IS INHERENTLY DISCRETIONARY AND FAILS REVIEW AS A PRIOR RESTRAINT

The "justifiable need" component of the Permit to Carry laws *allows* officials to withhold Permits based on their *opinion* that applicants do not have "justifiable need."  Plaintiffs showed in their moving papers that under *Cantwell v. Connecticut*, 310 U.S. 296 (1940), and progeny, states and localities may not condition a license that is necessary to engage in constitutionally protected conduct on the grant of a license that officials have *discretion to withhold*.  *See* Plaintiffs Br. at 26-32.  The determination of "justifiable need" is a matter of opinion, and hence, the Permit laws are invalid in that they allow officials to withhold Permits on their opinion that "need" does not exist.  *See id.* at 28-32.

- 32 -

DM1\2510366.1

A.    There is No Basis to Depart from *Marzzarella*'s Instruction to Utilize First Amendment Standards of Review

There is little doubt that the *Marzzarella* court was correct in its conclusion that First Amendment principles should generally apply to laws that burden the Second Amendment's protections.  *See* Plaintiffs Br. at 19-22; *see also United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010); *United States v. Chester*, no. 09-4084, 2010 U.S. App. LEXIS 26508, *24-25 (4th Cir. Dec. 30, 2010).

While the State Defendants purport to concede that First Amendment principles of review govern laws that infringe Second Amendment activities, the State Defendants contend that "[t]he First Amendment presents concerns that are not presented by the Second Amendment," and they point to the footnoted qualification in *Marzzarella* that "the precise standards of scrutiny and how they apply may differ under the Second Amendment."  State Br. at 23 (quoting *Marzzarella*, 614 F.3d at 96 n.15).  The Brady Amici go further, asserting that First Amendment principles should not govern because "[w]hile 'words can never hurt me,' guns are designed to inflict grievous injury and death."  Brady Br. at 14.

Of course, "Arms" are weapons – they have inherent dangers.  The Court's decision in *Heller* recognizes that firearms also have the significant ability to protect life.  *See, e.g., Heller*, 554 U.S. at 584-85, 609, 629.  While Plaintiffs sharply disagree that recognizing the right to bear arms will increase the net dangers facing society, the enumeration of a constitutional right "to keep and bear

- 33 -

Arms" necessarily reflects a societal decision to protect the "keep[ing] and bear[ing] Arms" *notwithstanding* whatever danger may be unavoidably attendant. *See id.* at 634 ("The very enumeration of the right takes out of the hands of government – even the Third Branch of Government – the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

Moreover, the "safety" distinction offered by State Defendants and Brady Amici relies on a false assumption – that the conduct protected by the First Amendment does *not* raise significant risks and concerns for society. But this is not the case. While there is no doubt that guns can be *dangerous*, words can be *powerful*, and words have the ability to motivate large groups of people – for better or worse. While the rights of speech, petition, and assembly intrinsically raise public safety risks – sometimes acutely – modern First Amendment jurisprudence forbids the preclusion of these activities notwithstanding these risks.[8]

The *Heller* Court recognized this fundamental connection between the First and Second Amendments when it addressed whether societal interests could "balance away" the basic ability to engage in core Second Amendment activities. The Court observed that it had forced unwilling local officials to allow a neo-Nazi

---

[8] It was speech, petition, and assembly – not guns – that recently overturned the Mubarak regime in Egypt. On the contrary, all of the guns in the army could not contain the power of speech, petition, and assembly. To the extent *Amici* would like to hang legal arguments on clichés, they would be well advised to remember that "the pen is mightier than the sword."

group to parade through their town in *National Socialist Party of America v. Skokie*, 432 U.S. 43 (1977).  *See Heller*, 554 U.S. at 635.  Few would dispute that a (substantially Jewish) community would have compelling *public safety* reasons for stopping a neo-Nazi group from parading, displaying swastikas, and distributing literature, but these safety reasons were insufficient to override the *enumerated* rights of speech and assembly.  *See Skokie v. Nat'l Socialist Party*, 373 N.E.2d 21, 22 (Ill. 1978).  Immediately after analogizing to *Skokie*, the *Heller* Court stated that the Second Amendment's protection "*is no different*."  *Heller*, 554 U.S. at 635 (emphasis added).

The *Marzzarella* court's qualification that "the *precise* standards of scrutiny and how they apply *may* differ under the Second Amendment," *Marzzarella*, 614 F.3d at 96 n.15 (emphasis added), is not *carte blanche* to apply standards of scrutiny that are heretofore unknown to the First Amendment.  Rather, it is a recognition that First Amendment principles, and their application, must account for characteristics that distinguish the possession and carry of firearms from other protected activities.

B.     The Permit Laws Are Prior Restraints Because they Condition Constitutionally Protected Conduct on an Official Grant of Permission

The State Defendants argue that "reasoning and case law [ ] support rejecting" prior restraint principles, and they point to the fact that Plaintiffs'

- 35 -

moving papers do not cite authority "applying or even discussing the prior restraint framework in this context."  *See* State Br. at 22.

However, a host of prior restraint cases establish that "the peaceful enjoyment of freedoms *which the Constitution guarantees*" may not be made "contingent upon the uncontrolled will of an official."  *Staub v. Baxley*, 355 U.S. 313, 322 (1958) (emphasis added).  The procedural requirements attendant prior restraints have been applied to a broad range of constitutionally protected acts.

The Second Amendment was incorporated against the states only months ago.  The dearth of on-point, post-*Heller* decisions owes to the emergent nature of Second Amendment jurisprudence and the basic fact that – unlike New Jersey – the vast majority of states *already* allow their citizens to carry handguns on reasonable and *nondiscretionary* terms.

It is significant that the State Defendants cite no cases that *reject* the application of prior restraint principles to laws burdening the Second Amendment.[9]

Their failure to do so is not surprising – one need look no further than *Heller* itself for authority to support the use of prior restraint principles.  As noted in Point II(B), *supra*, one of the statutes at issue in *Heller* prohibited the carry of handguns at home, but another statute provided that the police department "may issue" a

---

[9] The plaintiffs in *Peruta* did not raise the issue.  *See Peruta v. County of San Diego*, no. 09CV2371, 2010 U.S. Dist. LEXIS 130878, *28-37 (S.D. Cal. Dec. 10, 2010) (detailing claims).

permit to carry. *See Heller*, 554 U.S. at 575-76. Plaintiff Dick Heller sought

relief, but only in respect of his home. *See id.* Upon concluding that the Second

Amendment protects the substantive right to possess and carry guns, the Court

negated the discretionary aspect of the law and directed the District to issue a

license that would satisfy the prayer for relief:

> Assuming that Heller is not disqualified from the exercise of
> Second Amendment rights, the District must permit him to
> register his handgun *and must issue him a license to carry it in
> the home*.

*Heller*, 554 U.S. at 635 (emphasis added).

The judicial treatment of state "right to bear arms" provisions also supports

the application of prior restraint principles to schemes for licensing the carry of

handguns. For example, in 1980 the Supreme Court of Indiana found that a state

constitutional right to "bear arms" protected the right to carry handguns, and it

accordingly overturned a state law that allowed officials to deny permits to carry

handguns on the ground that a "proper reason" was not present. *See Schubert v.

De Bard*, 398 N.E.2d 1339, 1341 (Ind. 1980); *see also Kellogg v. City of Gary*, 562

N.E.2d 685, 696 (Ind. 1990) (city officials could not refuse to distribute

applications for permits to carry handguns). The court explained:

> [I]t is clear from the record that the superintendent decided the
> application on the basis that the statutory reference to "a proper
> reason" vested in him the power and duty to subjectively
> evaluate an assignment of "self-defense" as a reason for
> desiring a license and the ability to grant or deny the license

upon the basis of whether the applicant "needed" to defend himself.

*Such an approach contravenes the essential nature of the constitutional guarantee.* It would supplant a right with a mere administrative privilege which might be withheld simply on the basis that such matters as the use of firearms are better left to the organized military and police forces even where defense of the individual citizen is involved.

*Schubert*, 398 N.E.2d at 1341 (emphasis added).

While Plaintiffs respond to the State Defendants' proposed "reasonable regulation test" in Point IV(B), *infra*, it is significant that the *only* case the State Defendants cite to support this purported standard actually supports the use of prior restraint principles – and indicates that discretionary "need" requirements like New Jersey's are invalid. *See* State Br. at 21 (citing *Mosby v. Devine*, 851 A.2d 1031 (R.I. 2004)). The Supreme Court of Rhode Island's decision in *Mosby* concerned a state law that – like the New Jersey laws at issue here – conditioned licenses to carry handguns "upon a proper showing of need." *Mosby*, 851 A.2d at 1035 (quoting R.I.G.L. § 11-47-18(a)). The *Mosby* court upheld the "need" requirement because it found that a *separate* provision of state law provided for the "mandatory" issuance of carry licenses. *See id.* at 1047 ("Because the Firearms Act provides for both discretionary and mandatory licensing to qualified

applicants, the constitutional guarantee to keep and bear arms is fulfilled.").[10]

However, in a discussion that is particularly pertinent to the case at bar, the Rhode

Island court was careful to qualify that a law conditioning carry licenses on a

finding of "need" would be unconstitutional:

> One does not need to be an expert in American history to
> understand the fault inherent in a gun-permitting system that
> would allow a licensing body *carte blanche* authority to decide
> who is worthy of carrying a concealed weapon.  The
> constitutional right to bear arms would be illusory, of course, if
> it could be abrogated entirely on the basis of an unreviewable
> unrestricted licensing scheme.

*Id.* at 1050.

Once it is established that a Permit is necessary to engage in constitutionally

protected conduct – to possess and (particularly) carry a handgun outside the home

– the application of prior restraint principles is straightforward.

C.   The Determination of "Justifiable Need" is Plainly and Inherently
     Discretionary

The State Defendants characterize the "justifiable need" requirement as

*nondiscretionary*, arguing that the requirement "is codified and judiciously

applied" and "is a carefully constructed regulatory scheme bounded by reasonable,

identified standards."  State Br. at 24, 25.  They also point to the statutory language

---

[10] The operative distinction between the two provisions is that § 11-47-18 (the discretionary provision) allows for the issuance of a license "to carry a pistol or revolver, *whether concealed or not*," while § 11-47-11 (the mandatory provision) provides authorization only "to carry *concealed* upon his or her person."  *Compare* R.I.G.L. § 11-47-11 *with* R.I.G.L. § 11-14-18(a) (emphasis added); *see also Mosby*, 851 A.2d at 1078 (Flanders, J., dissenting).

that a Superior Court judge "shall" issue a Permit, upon being satisfied that (*inter alia*) "justifiable need" is present.  *See id.* at 3.

The State Defendants' argument fails because the operative issue is *not* whether there are standards that are "reasonable, identified," or "codified." Instead, the licensing law "must contain *narrow, objective, and definite* standards to guide the licensing authority," and it is invalid if it "*allows* arbitrary application."  *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-31 (1992) (emphasis added); *accord Riel v. City of Bradford*, 485 F.3d 736, 755 (3d Cir. 2007).  In *Forsyth County*, the law at issue authorized county officials to assess a fee for demonstrations, and (in pertinent part) it authorized the county to "adjust the amount to be paid in order to meet the expense incident to the administration of the Ordinance and to the maintenance of public order in the matter licensed."  *Forsyth County*, 505 U.S. at 127 (quoting ordinance).  Although a directive to set a fee in accordance with the "expenses incident" to a demonstration may be "reasonable, identified," and "codified," the Court ruled the law unconstitutional because "[t]he decision how much to charge for police protection or administrative time – or even whether to charge at all – is left to the whim of the administrator."  *Id.* at 133.

A permissible license law identifies grounds for denial that are "reasonably specific and objective" and – significantly – that can be effectively enforced on

- 40 -

review. *See Thomas v. Chi. Park Dist.*, 534 U.S. 316, 324 (2002). For example, the Supreme Court struck down a Dallas ordinance licensing adult businesses because the ordinance created a *possibility* that officials might withhold licensure indefinitely. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990) ("the city's regulatory scheme allows indefinite postponement of the issuance of a license").

New Jersey's requirement of "justifiable need" plainly fails under this standard, and the State's articulation of "urgent necessity" fares no better. Again, the "urgent necessity" standard provides that "justifiable need" lies in:

> urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun.

N.J.A.C. § 13:54-2.4(d). This standard provides no guidance for determining what constitutes "specific threats or previous attacks," nor for determining whether those threats and/or attacks "demonstrate a special danger to the applicant's life" or "cannot be avoided by [other] means." How many threats are sufficient? How serious must a prior attack be? When does a threat or attack demonstrate special danger to an individual's life, and when is the threat or attack merely random? When can an applicant "avoid" the need to carry a handgun? Perhaps the applicant could move to a better neighborhood? While Plaintiffs raised these issues in their moving papers, *see* Plaintiffs Br. at 31, the State Defendants do not respond to them, except to make the general statement that the standard is "reasonable,

- 41 -

identified" and "codified."  If the standard is permissibly definite, then why were

two of the Plaintiffs in this action approved by the police, but denied by the court?

Contrary to the State Defendants' suggestion, *see* State Br. at 3, the

mandatory "shall" language in the Administrative Code does not overcome the fact

that officials have discretion to determine whether or not a person has "justifiable

need."  Indeed, in *Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969), the

ordinance under consideration provided that the commission "*shall* grant a written

permit . . . *unless* in its judgment the public welfare, peace, safety, health, decency,

good order, morals or convenience require that it be refused."  *Id.* at 149-50

(quoting ordinance) (emphasis added).  The "shall grant" language was no bar to

the Court's conclusion that the ordinance "conferred upon the City Commission

virtually unbridled and absolute power" to deny permission.  *See id.* at 150.

### POINT IV:
### "JUSTIFIABLE NEED" IS AN IMPERMISSIBLE BURDEN

The "justifiable need" requirement is impermissible because people have a

fundamental constitutional right to keep and bear arms for self-defense.  Hence, a

law that limits this franchise to those who are determined to have an "urgent

necessity for self protection" is impermissible – just as a law limiting the rights of

speech or assembly to those with an "urgent necessity for free expression" would

be impermissible.  Plaintiffs Br. at 33-39.

The State Defendants respond by proposing that the Court adopt an analytic approach – the "reasonable regulation test" – that would uphold laws that *preclude* the exercise of core Second Amendment activities on public-safety rationales.  *See* State Br. at 19-21.  Anticipating that this argument will fail – it is, after all, plainly foreclosed by *Heller* – the State Defendants then propose that the Court apply the lowest level of scrutiny possible and sustain the measure as being necessary to meet the State's public-safety claims.  *See id.* at 17-18, 21-22.

A.    The Supreme Court *Explicitly Rejected* the Attempt to "Balance Away" the Core Protections of the Second Amendment

The State Defendants propose a "reasonable regulation test" that would (purportedly) sustain the State's ability to withhold license on the ground of lack of "need."  *See* State Br. at 20-21.  To the extent State Defendants argue that this test supplies a basis for precluding the general ability to "bear" a handgun, the claim need not delay this Court long:  The Supreme Court *explicitly rejected it* in *Heller*.

The State Defendants explain that their proffered "reasonable regulation test" provides (vaguely) that "States and localities retain legislative freedom to address the problem of handgun violence with reasonable regulations under the Second Amendment."  *Id.* at 20.  The *sine qua non* of this proposed standard is that it would "permit[ ] New Jersey to *assess the corresponding dangers and risk* to the public and to the person seeking to carry a handgun" in determining *whether or not to issue* a Permit to Carry.  *Id.* at at 27 (emphasis added).  Brady Amici explain "it

- 43 -

'focuses on the balance of the interests at stake.'"  Brady Br. at 16 (quoting *State v. Cole*, 665 N.W. 2d 328, 338 (Wis. 2003)).

Because this proposed test would allow the State to preclude the bearing of arms based on its assessment of relative societal interests, it must be rejected.  As Plaintiffs showed in their moving papers (pp. 24-25), Justice Breyer's dissent proposed exactly the same "interest-balancing" approach:

> I shall ask *how the statute seeks to further the governmental interests* that it serves, *how the statute burdens the interests that the Second Amendment seeks to protect*, and whether there are *practical less burdensome ways of furthering those interests*. The ultimate question is whether the statute imposes burdens that, when viewed in light of the statute's legitimate objectives, are *disproportionate*.

*Heller*, 554 U.S. at 693 (Breyer, J., dissenting) (emphasis added).  Under this approach, the ultimate inquiry determining whether a law was a "permissible regulation" would have been whether that "law *disproportionately* burden[ed] Second] Amendment-protected interests."  *Id.* at 714 (emphasis in source). A law could *preclude* the acts of keeping and bearing handguns – the ultimate burden on the right – so long as it sought "to further the sort of life-preserving and public-safety interests that the Court has called compelling."  *Id.* at 705.

However, the Court explicitly rejected this "reasonable" or "proportionate" interest-balancing approach in no uncertain terms:

> We know of *no other enumerated constitutional right* whose *core protection* has been subjected to a freestanding "interest-

- 44 -

> balancing" approach.  The very enumeration of the right takes
> out of the hands of government – even the Third Branch of
> Government – the power to decide on a case-by-case basis
> whether the right is *really* worth insisting upon.

*Heller*, 554 U.S. at 634 (first two emphases added).

Brady Amici try to distance their approach from Justice Breyer's by asserting that their standard would be "a more heightened form of scrutiny than the rational basis test" and "more demanding than the 'interest balancing' test suggested by Justice Breyer in dissent[ ] because it does not permit states to prohibit all firearm ownership."  Brady Br. at 16.  However, Justice Breyer in fact also maintained that his test was more stringent than rational basis review.  *See Heller*, 554 U.S. at 689-90 (Breyer, J., dissenting); *see also id.* at 710-11.  Moreover, Justice Breyer's approach also eschewed prohibitions on *all* firearms, instead upholding just the prohibition of handguns.  *See id.* at 708.  Tellingly (and probably fatally), Justice Breyer explicitly relied on *the same* academic article[11] that Brady Amici now rely upon to articulate their "reasonable regulation" test. *See id.* at 691; *see also* Brady Br. at 15.

B.     There is No Basis for Applying the Proposed "Reasonable Regulation Test"

The only decision the State Defendants cite to support their claim that a "reasonable regulation test" should govern the scope of the Second Amendment's

---

[11] Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683 (2007).

protection is *Mosby v. Devine*, 851 A.2d 1031 (R.I. 2004), which predates *Heller*

by four years.  *See* State Br. at 21, 25.  The State Defendants' failure to cite even a

single post-*Heller* decision embracing this approach is itself telling.  There are

certainly plenty of cases that address the standard of review.  Remarkably, a close

review of the decision cited shows that their "reasonable regulation test" should

*not* apply to the Second Amendment.

The Rhode Island state constitution protects a "right to keep and bear arms,"

but the *Mosby* court interpreted this provision *differently* than the Supreme Court

interpreted the Second Amendment in *Heller*.  *See Mosby*, 851 A.2d at 1041-42.

Specifically, the *Mosby* court found that the right to "keep" arms was an individual

right, but that the right to "bear" arms did not "extend[ ] beyond the military

context."  *Id.* at 1042.  It was in this context that the *Mosby* court ruled that

restrictions on the public carry of firearms should be tested using a "reasonable

regulation" standard.  *See id.* at 1044.

Of course, the Supreme Court concluded in *Heller* that the Second

Amendment protects an "*individual* right to possess and carry weapons."  *Heller*,

554 U.S. at 592 (emphasis added).  Even accepting, *arguendo*, the Mosby court's

rationale that the "reasonable regulation" standard should apply under the Rhode

- 46 -

Island constitution, that rationale has no application to the Second Amendment's right to bear arms.[12]

Brady Amici claim that Professor Eugene Volokh supports their "reasonable regulation test," but this is not the case. *See* Brady Br. at 16. Professor Volokh's article discussed various ways that courts could "translate th[e newly recognized Second Amendment] right into workable constitutional doctrine," and he did mention briefly that "some" states had enforced state constitutional provisions by "asking whether a restriction is a 'reasonable regulation' or a prohibition." *See* Volokh, *supra* p. 21, at 1445, 1458. However, Professor Volokh explains that *regardless* of what constitutional doctrines are ultimately applied, states are *not* free to preclude citizens from carrying handguns:

> *Heller* stated that bans on concealed carry of firearms are so traditionally recognized that they must be seen as constitutionally permissible. . . .
>
> The same cannot, however, be said about general bans on carrying firearms in public, which prohibit open as well as concealed carrying. *Heller* expressly concluded that "the right to . . . bear arms" referred to carrying arms.

*Id.* at 1516.

_____

[12] While the court's rationale in *Mosby* indicates that the approach should *not* be applied in this case (notwithstanding the Supreme Court's previous rejection of it!), it is significant that the New Jersey law would not pass muster even under this standard. As discussed in *supra* Point III(B), the *Mosby* court found that a law allowing officials to withhold carry permits on the basis of "need" *would not be constitutional*. *See Mosby*, 851 A.2d at 1047.

Brady Amici attempt to analogize to "reasonableness" standards developed to examine the Eighth Amendment's protection against "cruel and unusual" punishments, the right to privacy, the Fifth Amendment's protection against deprivation without "due process" of law, and the Fourth Amendment's protection against "unreasonable" search and seizure. *See* Brady Br. at 15 n.7. This attempt fails and reveals the defect in Amici's argument. These four constitutional protections do not concern *enumerated* rights to engage in *affirmative* acts. Rather, they concern constitutional protections that are not enumerated or that require consideration of "reasonableness" by their terms.[13]

Finally, Brady Amici cite a slew of additional pre-*Heller* state-court decisions to support their "reasonable regulation" proposal. *See id.* at 15-17. These are the *same* cases that Professor Winkler used to develop and articulate his interest-balancing proposal. *See* Winkler, *supra* note 11, at 686-726.[14] And, as

---

[13] For example, a punishment will be deemed "cruel and unusual" if it is "a severe punishment that is clearly and totally rejected throughout society" or that is "patently unnecessary." *Furman v. Georgia*, 408 U.S. 238, 281 (1972). These tests are essentially founded in an assessment of whether the punishment is reasonable.

[14] *See* Winkler, *supra* note 11, at 686-87 & nn.11-13, 701 & n.102, 705 & n.130, 711 & n.164, 715 & nn.179-80, 716 & n.186, 717 & nn.188 & 193-94, 718 & n.198, 719 & nn.191 & 201 & 205 & 208, 723-24 & nn.233-37, 726 & nn.250 & 252 (citing *State v. Hamdan*, 665 N.W.2d 785 (Wis. 2003), *State v. Cole*, 665 N.W. 2d 328 (Wis. 2003), *Robertson v. City & County of Denver*, 874 P.2d 325 (Colo. 1994), *State v. Comeau*, 448 N.W.2d 595 (Neb. 1989), , *Trinen v. City of Denver*, 53 P.3d 754 (Colo. Ct. App. 2002), and *State v. Dawson*, 159 S.E.2d 1 (N.C. 1968)).

- 48 -

discussed above, and in Plaintiffs' moving papers, the Supreme Court has already

consider, and rejected, Professor Winkler's proposal.

C.    The "Justifiable Need" Requirement is an Impermissible Burden on
      the Exercise of Constitutional Rights

        The standard of scrutiny is not outcome-dispositive because the "need"

requirement does not leave open any alternative channels and is not narrowly

tailored.  Regardless of whether intermediate or strict scrutiny were applied, the

Permit laws would not pass muster.  *See* Plaintiffs Br. at 34.  The State

Defendants' suggestion that Plaintiffs' case hangs on the application of strict

scrutiny, *see* State Br. at 21, is incorrect.

        The State Defendants argue that the "justifiable need" requirement "is a

mere regulation rather than a prohibition" and that it "does not prohibit the

carrying of a handgun but affords a person the ability to do so upon demonstration

of need."  *Id.* at 15, 20.  The State Defendants argue that the Court should apply

intermediate scrutiny in light of "the body of case law which recently has

addressed Second Amendment issues and rejected the application of strict

scrutiny."  *Id.* at 21.

        The State Defendants are erroneous in their argument that intermediate

scrutiny simply applies, *ipso facto*, to laws that burden the Second Amendment.  It

is not the *subject matter* (e.g. "guns") that determines the applicable standard of

scrutiny, but rather, it is the nature of the *conduct* being regulated and the *burden*

that is at issue.  *See United States v. Chester*, no. 09-4084, 2010 U.S. App. LEXIS 26508, \*24-25 (4th Cir. Dec. 30, 2010) ("In the analogous First Amendment context, the level of scrutiny we apply depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.").  In *Marzzarella*, the Third Circuit explained that the level of scrutiny applied to a burden is intrinsically tied to both the scope and nature of the burden imposed:

> Strict scrutiny does not apply automatically any time an enumerated right is involved.  We do not treat First Amendment challenges that way.  Strict scrutiny is triggered by content-based restrictions on speech in a public forum, but content-neutral time, place, and manner restrictions in a public forum trigger a form of intermediate scrutiny.

*Marzzarella*, 614 F.3d at 96.  Laws that target conduct that is within the core values of the First Amendment – such as free expression – are likely to trigger strict scrutiny, as are laws that target the core value that the Second Amendment protects – the right of self-defense.  *See* Plaintiffs Br. at 20.  A key aspect of the *Marzzarella* court's decision to apply intermediate scrutiny to the ban on guns with obliterated serial numbers was the court's conclusion that "[t]he burden imposed by the law does not severely limit the possession of firearms."  *Marzzarella*, 614 F.3d at 97.

The "justifiable need" requirement, in contrast, is a *flat prohibition* on the ability to carry a handgun in public, and it is one that applies *unless* a government

official determines that "need" exists – a circumstance that rarely occurs under the implementing regulations.

Thus, if the Court finds it necessary to apply a specific standard of "burden" scrutiny, then the Permit laws should trigger strict scrutiny for the two essential reasons identified in Plaintiffs' moving papers:  (1) they completely preclude the act of bearing a handgun, and (2) their animating factor is a determination about an individual's "need" to exercise his or her fundamental constitutional right.  *See* Plaintiffs Br. at 35-37.  The State Defendants are correct that most federal courts have applied intermediate scrutiny – but then, most federal courts have addressed *bona fide* "regulations," such as requirements that firearms be carried openly, or concealed, or that persons seeking to carry firearms undertake training, or demonstrate competence.

The State Defendants' characterization of the requirement as a "regulation" rather than a "ban" is of no moment.  *See United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 812 (2000) ("It is of no moment that the statute does not impose a complete prohibition.  The distinction between laws burdening and laws banning speech is but a matter of degree.  The Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans."); *see also Marzzarella*, 614 F.3d at 94 ("infringements on protected rights can be,

depending on the facts, as constitutionally suspect as outright bans" and citing *Playboy*'s "matter of degree" language).

The State Defendants assert that the "justifiable need" requirement protects important and compelling governmental interest in that it "combats the dangers and risks associated with the accidental and misuse of handguns, and reduces the use of handguns in crime." State Br. at 26.

However, contrary to the State Defendants' (not explicitly stated) argument, the State of New Jersey has *not* made a blanket legislative pronouncement that handguns are too dangerous to allow people to carry. On the contrary, both private security guards and retired police officers are issued Permits upon their satisfaction of *the same* training and proficiency requirements that the Plaintiffs themselves satisfied – but without the requirement that they demonstrate "an urgent necessity for self-protection." *See* N.J.S.A. § 2C:39-6(*l*) (retired police); N.J.A.C. § 13:54-2.4(d)(2) (security guards). As such, any claim that there are no reasonable alternatives, or that the law is narrowly tailored, *must* fail. If, indeed, the activity of carrying a handgun were too dangerous to allow without a discretionary determination of an "urgent necessity for self-protection," then the State would not allow it – for anyone!

To the extent the State deems it prudent or advisable to enact regulations to prevent the accidental or criminal misuse of handguns, then (as a general premise)

- 52 -

it is free to do so.  Plaintiffs have stressed that this lawsuit does not challenge the State's requirements of training and proficiency.  However, because the Second Amendment protects an enumerated right to *possess* and *carry* guns, the State cannot preclude either of these activities by citing claimed risks to the public.  This is especially the case where – as here – the State plainly has *not* concluded that the claimed risks of carrying handguns require a complete prohibition on the activity.

CONCLUSION

Plaintiffs respectfully submit that, in the end, this is an easy case.  New Jersey law requires a license to generally "possess" a handgun, and specifically, to carry that handgun anywhere except in one's home or business or on one's property.  However, people have a constitutional right to keep and bear arms, and the Supreme Court has held that this right specifically protects the possession and carrying of handguns for self-defense.

Because people have a constitutional right to engage in the activity, they also have a constitutional right to obtain the necessary licenses – without having to prove to an official that their claimed "need" is "justifiable."

The claim that the Second Amendment does not apply beyond the home fails.  The Supreme Court did not limit its holding to the facts presented, and certainly, "the right of the people to keep and bear Arms" does not reference any delineation that would end at the threshold of one's home.  While some Second

- 53 -

Amendment issues may remain undecided, there is no doubt that one must hold a

Permit to Carry in order to carry a handgun in New Jersey.  And thus, there is no

doubt that the State may not withhold Permits on the ground that one does not have

"a justifiable need" to exercise his or her constitutional right.

Dated:  February 18, 2011

                                        Respectfully submitted,

                                        **DUANE MORRIS LLP**
                                        **Delaware Limited Liability Partnership**


                        By:  _____
                                        David D. Jensen, Esq.
                                        Robert P. Firriolo, Esq.
                                        744 Broad Street, Suite 1200
                                        Newark, NJ 07102-3889
                                        973.424.2000
                                        Attorneys for Plaintiffs