## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANIEL J. PISZCZATOSKI; JOHN M. DRAKE; GREGORY C. GALLAHER; LENNY S. SALERNO; FINLEY FENTON; SECOND AMENDMENT FOUNDATION, INC.; and ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., | **OPINION** Civ. No. 10-06110 (WHW) |
| Plaintiffs, | |
| v. | |
| THE HON. RUDOLPH A. FILKO, in his Official Capacity as Judge of the Superior Court of Passaic County; THE HON. EDWARD A. JEREJIAN, in his Official Capacity as Judge of the Superior Court of Bergen County; THE HON. THOMAS A. MANAHAN, in his Official Capacity as Judge of the Superior Court of Morris County; COL. RICK FUENTES, in his Official Capacity as Superintendent of the New Jersey State Police; CHIEF ROBERT JONES, in his Official Capacity as Chief of the Hammonton, New Jersey Police Department; CHIEF RICHARD COOK, in his Official Capacity as Chief of the Montville, New Jersey Police Department; and PAULA T. DOW, in her Official Capacity as Attorney General of New Jersey, | |
| Defendants. | |

**Walls, Senior District Judge**

This case presents a facial challenge to the constitutionality of the New Jersey law governing permits to carry handguns. The challenged provisions in N.J.

Stat. § 2C:58-4 and the attendant regulations (the "Handgun Permit Law") require permit applicants to demonstrate a "justifiable need to carry a handgun," first to a police official and then to a Superior Court judge. N.J. Stat. Ann. § 2C:58-4(c)–(d) (2011).

The plaintiffs, five individuals denied handgun permits and two issue advocacy organizations, assert that the Handgun Permit Law is facially unconstitutional because it encroaches upon an alleged fundamental right to carry operable handguns for self-defense under the Second Amendment of the United States Constitution. Compl. ¶ 91. The plaintiffs allege that the Handgun Permit Law vests "uncontrolled discretion" in state officials to deny permits, which they challenge as a prior restraint. Id. ¶¶ 101–04. The plaintiffs further allege that requiring an applicant to demonstrate a "justifiable need" for self-protection is an impermissible burden on the asserted Second Amendment right. Id. ¶¶ 107–09.

The plaintiffs move for summary judgment seeking declaratory and injunctive relief. The defendants oppose this motion and cross-move to dismiss the case for failure to state a claim. Oral argument was heard on both motions.

At the outset, it is noted to any reader of this Opinion that this Court shall be careful – most careful – to ascertain the reach of the Second Amendment right that the plaintiffs advance. That privilege is unique among all other constitutional rights to the individual because it permits the user of a firearm to cause serious personal injury – including the ultimate injury, death – to other individuals, rightly or wrongly. In the protection of oneself and one's family in the home, it is a right use.

In the deliberate or inadvertent use under other circumstances, it may well be a wrong use. A person wrongly killed cannot be compensated by resurrection.

The Court finds that the Handgun Permit Law is not facially unconstitutional. The Handgun Permit Law does not on its face burden protected conduct because the Second Amendment does not include a general right to carry handguns outside the home. Alternatively, if the scope of the Second Amendment were interpreted to include a right to carry handguns outside the home for self-defense, the Court finds that the challenged provisions do not on their face unconstitutionally burden the protected conduct. The prior restraint doctrine does not apply in the Second Amendment context and would be inapposite because the statutory scheme does not vest uncontrolled discretion in state officials to deny permits. The justifiable need requirement survives intermediate scrutiny because it is sufficiently tailored to governmental interests in regulating the possession of firearms outside the home. The Court denies the plaintiffs' motion for summary judgment and grants the defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Using a "careful grid of regulatory provisions," New Jersey closely regulates the possession and use of firearms within the state. In re Preis, 573 A.2d 148, 150 (N.J. 1990). The possession of firearms is a criminal offense unless a specific statutory exemption applies. N.J. Stat. Ann. § 2C:39-5 (2011). These exemptions generally allow eligible individuals to carry firearms for specific purposes, such as hunting or target practice. Id. § 2C:39-6(f)(1)–(2). The exemptions "draw careful lines between permission to possess a gun in one's home or place of business and

permission to carry a gun." <u>In re Preis</u>, 573 A.2d at 150 (citations omitted). A person

may generally keep or carry firearms "about his place of business, residence,

premises or other land owned or possessed by him." N.J. Stat. Ann. § 2C:39-6(e)

(2011). This exemption also allows for the secure transportation of unloaded

firearms between a person's dwelling and place of business. <u>Id.</u> Outside one's home,

property, or place of business, the exemptions allowing possession and use of

firearms are otherwise more restricted.

    The plaintiffs challenge only the limited exemption that permits a person to

carry a handgun for self-defense outside his or her home, property, or place of

business. Unless a specific statutory exemption otherwise applies, a person may

legally carry a handgun for self-defense only if that person first applies for and

obtains the necessary permit. <u>Id.</u> § 2C:39-5(b). To qualify for a permit under the

Handgun Permit Law, an applicant must demonstrate that he or she (1) is a person

of good character who is not otherwise disqualified as a result of any statutory

disabilities, (2) is thoroughly familiar with the safe handling and use of handguns,

and (3) "has a justifiable need to carry a handgun." <u>Id.</u> § 2C:58-4(d).

    New Jersey courts use a "core substantive standard" to determine whether

there is "justifiable need" for a private citizen to be issued a permit to carry a

handgun. <u>In re Preis</u>, 573 A.2d at 151–52. This standard requires "an urgent

necessity for self-protection" based on "specific threats or previous attacks

demonstrating a special danger to the applicant's life that cannot be avoided by

other means." <u>Id.</u> at 152 (citing <u>Siccardi v. State</u>, 284 A.2d 533, 540 (N.J. 1971)).

Neither "generalized fears for personal safety" nor the "need to protect property

alone" satisfy the standard. Id. New Jersey's permit to carry regulation reflects this standard, requiring applicants to submit written certification of justifiable need which details

> the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun. Where possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies . . . .

N.J. Admin. Code § 13:54-2.4(d)(1) (2011).

The application process for handgun permits involves several tiers of review. Permit applications are first presented for investigation and preliminary approval to a designated police official, either the chief of police of the municipality in which the applicant resides or, under certain circumstances, the state police superintendent. N.J. Stat. Ann. § 2C:58-4(c) (2011). If the police official denies the initial application, then the applicant may request a hearing before a judge on the New Jersey Superior Court. Id. § 2C:58-4(e). If the police official approves the initial application, then the applicant presents his or her application to a Superior Court judge for final approval and issuance. Id. § 2C:58-4(d). If the judge is satisfied that the applicant meets the requirements, the court must approve the application and issue the permit. Id. Any determination that the applicant does not meet the permit requirements is subject to full appellate review. Id. § 2C:58-4(e). See In re Preis, 573 A.2d at 150; In re Application of Borinsky, 830 A.2d 507, 508 (N.J. Super. Ct. App. Div. 2003).

On November 22, 2010, the plaintiffs filed the complaint in the current action as a facial constitutional challenge to the Handgun Permit Law. Individual plaintiffs Daniel J. Piszczatoski, John M. Drake, Gregory C. Gallaher, Lenny S. Salerno, and Finley Fenton are each a New Jersey resident who asserts that his application for a handgun permit was denied under the challenged law solely on the grounds that he lacked a justifiable need to carry a handgun. Compl. ¶¶ 30–82. Jeffrey M. Muller was originally the lead plaintiff in this case, but he was granted a permit while this case was pending. Mots. Hr'g Tr. 3, Oct. 27, 2011. Muller's claims are now moot and were dismissed by stipulation of the parties on November 1, 2011. Stipulation of Dismissal & Substitution ¶ 1. Organizational plaintiffs Second Amendment Foundation, Inc. ("SAF") and Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") are non-profit advocacy groups that bring this suit on behalf of their membership, which includes individuals who have been denied permits or who have not applied for permits because they failed to meet the justifiable need requirement.[1] Compl. ¶¶ 83–89; Pls.' Reply Br. 6–7.

Defendants are state and local officials sued in their official capacities based on their responsibility for approving applications for permits to carry handguns or otherwise executing and administering New Jersey handgun laws and regulations. New Jersey Superior Court Judges Edward A. Jerejian, Rudolph A. Filko, and Thomas A. Manahan are sued based on their designated roles in approving and

---

[1] The defendants challenge the standing of the organizational defendants. Defs.' Br. 10–11. The Court need not reach this question because it is not disputed that the individual plaintiffs have standing. Where injunctive and declaratory relief are sought, courts need not reach the question of whether additional plaintiffs have standing. See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 n.9 (1977); see also Horne v. Flores, 129 S. Ct. 2579, 2592 (2009) ("Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so.").

issuing permits in their respective counties. Compl. ¶¶ 18–22. Superior Court Judge
Philip J. Maenza was dismissed as a party on November 1, 2011 after plaintiff
Jeffrey Muller's claims became moot. Stipulation of Dismissal & Substitution ¶ 2.
Defendants also include police officials responsible for investigating and approving
permit applications, namely Col. Rick Fuentes as Superintendent of the New Jersey
State Police and municipal chiefs of police Robert Jones in Hammonton, New Jersey
and Richard Cook in Montville, New Jersey. Compl. ¶¶ 23–25; Stipulation of
Dismissal & Substitution ¶ 3. Defendant Attorney General Paula T. Dow is sued in
her role as Attorney General of the State of New Jersey. Compl. ¶ 26.

## STANDARD OF REVIEW

The plaintiffs move for summary judgment, which the defendants oppose.
Summary judgment is appropriate where the moving party establishes that "there
is no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a). All parties agree that this lawsuit presents
purely legal issues and ask the Court to resolve the suit based solely on the motions
submitted. Letter from Pls. and Defs., Dec. 8, 2010, ECF No. 9.

The defendants cross-move under Federal Rule of Civil Procedure 12(b)(6) for
dismissal of the complaint for failure to state a claim. To withstand a motion to
dismiss, a complaint must permit the "reasonable inference that the defendant is
liable for the conduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949
(2009). The court must "accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff, and determine whether, under

any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007).

As said, this suit presents a facial challenge to New Jersey's handgun permit regulations. To prevail, the plaintiffs must establish that "no set of circumstances exists under which [the Handgun Permit Law] would be valid, *i.e.*, that the law is unconstitutional in all of its applications." United States v. Barton, 633 F.3d 168, 172 (3rd Cir. 2011) (citation omitted). The Third Circuit does not "recognize an 'overbreadth' doctrine" in the context of the Second Amendment. Id. at 172 n.3. This doctrine allows plaintiffs to prevail on a facial challenge by showing that the statute operates unconstitutionally under some particular sets of circumstances rather than in every circumstance. Although recognized in the limited context of the First Amendment, the Supreme Court has explained that this doctrine should be applied extremely sparingly and only in light of particular First Amendment concerns. See New York v. Ferber, 458 U.S. 747, 766–73 (1982).

## DISCUSSION

Modern Second Amendment doctrine is a relatively new frontier. In its 2008 decision, District of Columbia v. Heller, the Supreme Court explicitly recognized for the first time that the Second Amendment confers an individual right to keep and bear arms. 554 U.S. 570, 595 (2008). The Court held that a District of Columbia law which forbade the individual possession of useable handguns in the home violated the Second Amendment. Id. Justice Scalia, writing for the majority, held that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635. At the

same time, the Justice wrote that the Second Amendment does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. The Court did not "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," id., and also "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions." Id. at 634. Instead the Court held that a total ban on handgun possession in the home is unconstitutional under "any of the standards of scrutiny that we have applied to enumerated constitutional rights . . . ." Id. at 628. Later in McDonald v. City of Chicago, the Supreme Court determined that the Second Amendment applies to state as well as federal laws through the Fourteenth Amendment, but provided little additional guidance on how it should be applied. 130 S.Ct. 3020, 3026 (2010); see United States v. Marzzarella, 614 F.3d 85, 88 n.3 (3d Cir. 2010) ("McDonald dealt primarily with the incorporation of the Second Amendment against the states and does not alter our analysis of the scope of the right to bear arms.") (internal citation omitted).

In the wake of Heller and McDonald, lower courts have endeavoured to resolve the uncertainty left by these decisions by (1) outlining the appropriate scope of the individual Second Amendment rights defined in Heller and (2) determining the appropriate standard of scrutiny for federal, state, and local laws that may burden these rights. See United States v. Masciandaro, 638 F.3d 458, 467 (4th Cir.), cert denied, No. 10-11212, 2011 WL 2516854 (Nov. 28, 2011). The Third Circuit has marked "a two-pronged approach" to Second Amendment challenges that addresses these issues sequentially. Marzzarella, 614 F.3d at 89. First, the Court considers

"whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny." Id. (internal citation omitted). Similar two-step approaches have been adopted in other circuits as well. See Heller v. District of Columbia, No. 10-7036, 2011 WL 4551558, at *5 (D.C. Cir. Oct. 4, 2011) (hereinafter "Heller II"); Ezell v. City of Chicago, 651 F.3d 684, 702–04 (7th Cir. 2011); United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010); United States v. Reese, 627 F.3d 792, 800–01 (10th Cir. 2010).

I.   **The Handgun Permit Law does not burden conduct protected by the Second Amendment.**

The first question is whether the challenged law "regulates conduct that falls within the scope of the Second Amendment." Marzzarella, 614 F.3d at 89. To state a valid facial challenge, the plaintiffs must demonstrate that the challenged law is invalid as to every set of circumstances to which applied. Barton, 633 F.3d at 172. To do this, the plaintiffs must establish that the scope of the Second Amendment extends to all applications of the challenged law. See id. In other words, the Second Amendment must protect the right to carry a handgun for self-defense wherever the Handgun Permit Law requires applicants to apply for a permit and demonstrate a justifiable need for self-protection. This Court finds that the challenged law is not facially unconstitutional because it can be applied without creating a burden on protected conduct. The Second Amendment does not protect an absolute right to carry a handgun for self-defense outside the home, even if the Second Amendment

may protect a narrower right to do so for particular purposes under certain circumstances.

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. From an extensive textual and historical analysis, Heller determined that this language was adopted to protect a pre-existing individual right to possess and carry weapons in certain circumstances. Heller, 554 U.S. at 592–95. Because the specific question before the Supreme Court was whether the District of Columbia's prohibition of keeping useable handguns in the home violated the Second Amendment, Heller clearly held that the Second Amendment protects at its core an individual right to possess and use a handgun for self-defense within the home. Id. at 635 ("[W]hatever else it leaves to future evaluation, [the Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). While Heller did not establish a right to carry a handgun for self-defense outside the home, the majority opinion did not explicitly foreclose later extension of the core right.

Because New Jersey's Handgun Permit Law does not affect one's ability to legally carry a handgun in one's home, private property, or place of business, this case requires that this Court address the extent to which the Second Amendment protects a right for individuals to carry handguns outside the home. As the Fourth Circuit has explained, a "dilemma faced by lower courts in the post-Heller world" has been "how far to push Heller beyond its undisputed core holding." Masciandaro,

11

638 F.3d at 475. Since neither the Supreme Court nor the Third Circuit has decided the extent to which the Second Amendment applies outside the home, this Court looks at the question through the lens of the reasoning of <u>Heller</u> and <u>McDonald</u> as applied by the Third Circuit and, where relevant, other circuits.

The parties here advance competing interpretations of the scope of the individual Second Amendment right to keep and bear arms outside the home. Based on a broad reading of the majority opinion in <u>Heller</u>, the plaintiffs argue that the Second Amendment protects a "general right to carry handguns, in public, for self-defense" and that protected conduct is necessarily burdened by the challenged law. Pls.' Br. 15. The defendants reply that the conduct regulated by the challenged law is outside the scope of the Second Amendment because <u>Heller</u> and <u>McDonald</u> recognized only the "right to possess a handgun in the home for the purpose of self-defense" and that there is no basis for extending this right beyond the home. Defs.' Br. 13–14. The plaintiffs counter that <u>Heller</u> "plainly recognize[s] that the right to keep and bear arms is not confined to the home, and that the home is merely a place where the right is at its zenith." Pls.' Reply Br. 17.

### A. <u>Heller</u> recognized only an individual right to carry handguns for self-defense in the home.

The focus of the plaintiffs' argument is a textual emphasis on <u>Heller</u>'s interpretation of the language of the Second Amendment's protection of the individual right to "bear" arms as a right to "carry" firearms in non-sensitive places. The plaintiffs insist that <u>Heller</u> "necessarily ruled – held – that the Second Amendment protects an enumerated right to carry guns. This right does not hang on whether one is located in his or her home." <u>Id.</u> at 9. Furthermore, they argue that

"a key aspect of the Court's ruling was its conclusion that the Second Amendment's right to 'bear Arms' is not an idiomatic reference, but is instead a general right to carry firearms." Id. at 12.

Even though Heller uses some broad language in recognizing an individual right to bear arms, closer inspection reveals that plaintiffs' argument ultimately misses the mark. Heller's recognition of the right to "bear" arms as a right to "carry" does not inexorably lead to the conclusion that there is a general right to carry arms outside the home. Instead, this definition simply serves to emphasize the nature of the right as an individual right to carry "for a particular purpose – confrontation." Heller, 554 U.S. at 584. Heller found that the individual right to carry a firearm for confrontation was obviously not an "unlimited" right to carry "for any sort of confrontation," but included a right to carry a handgun "for self-defense in the home." Id. at 595, 636. The District of Columbia could not require that a handgun be kept inoperable in the home and could not "prevent a handgun from being moved throughout one's house." Id. at 584 (quoting Parker v. District of Columbia, 478 F.3d 370, 400 (D.C. Cir. 2007)).

The language of Justice Scalia's majority opinion deliberately limited the scope of the right recognized to the home. The Southern District of New York recently noted that Heller's focus on the right to carry a handgun "for the purpose of 'self-defense in the home' permeates the Court's decision and forms the basis for its holding—which, despite the Court's broad analysis of the Second Amendment's text and historical underpinnings, is actually quite narrow." Kachalsky v. Cacace, No. 10-CV-5413, 2011 WL 3962550, at *19 (S.D.N.Y. Sept. 2, 2011). Judge Easterbrook

writing en banc for the Seventh Circuit explained that <u>Heller</u>'s language "warns readers not to treat <u>Heller</u> as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense." <u>United States v. Skoien</u>, 614 F.3d 638, 640 (7th Cir. 2010) (en banc), <u>cert. denied</u>, 131 S.Ct. 1674 (2011).

Even though notably the District of Columbia more generally prohibited handgun possession both inside and outside the home, the majority focused on the specific question presented – whether the Second Amendment protects an individual right to keep and carry handguns in the home. <u>Heller</u>, 554 U.S. at 574– 75, 628. As a result, <u>Heller</u> repeatedly and specifically limited itself to the home. Justice Scalia explained, "In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." <u>Id.</u> at 635. He emphasized that "whatever else it leaves to future evaluation, [the Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." <u>Id.</u> As a result, the Second Amendment "necessarily takes certain policy choices off the table," including "the absolute prohibition of handguns held and used for self-defense in the home." <u>Id.</u> at 636.

Much of <u>Heller</u>'s reasoning refers to the need for self-defense specifically in the home. Justice Scalia emphasized that the challenged statute "extends, moreover, to the home, where the need for defense of self, family, and property is most acute." <u>Id.</u> at 628. He listed potential reasons that "a citizen may prefer a

handgun for home defense" and concluded that "handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." Id. at 629. The reasoning is so tied to the holding that it loses context if one tries to broadly apply it, as the plaintiffs seek, to a general right to carry such weapons for self-defense outside the home.

Heller's reasoning leaves room for the possibility that the Second Amendment could apply to self-defense outside the home in limited circumstances, but does not recognize or even suggest a broad general right to carry arms. Justice Scalia insisted that "we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment." Id. at 626. Because Heller was the Supreme Court's "first in-depth examination of the Second Amendment," he wrote that "one should not expect it to clarify the entire field . . . ." Id. at 635. He did emphasize that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. If the Supreme Court majority had intended to create a broader general right to carry for self-defense outside the home, Heller would have done so explicitly.

**B. Courts have declined to extend Heller beyond its core holding to recognize a general right to carry for self-defense.**

Although the Third Circuit has not specifically considered whether the Second Amendment right to carry a handgun for self-defense extends outside the home, the court's formulation of the scope of the right recognized in Heller is inconsistent with the plaintiffs' arguments for a broad general right to carry for self-defense outside the home. Consistent with the approach taken by the Third Circuit, other circuits have applied the right outside the home only in limited circumstances

or declined to reach the issue where alternative grounds for upholding a law are available. State courts and federal district courts have also consistently declined to recognize any broad general right to carry outside the home.

In upholding a federal law criminalizing possession of a firearm with an obliterated serial number, the Third Circuit in <u>Marzzarella</u> noted that "<u>Heller</u> delineates some of the boundaries of the Second Amendment right to bear arms." 614 F.3d at 92. The circuit court interpreted <u>Heller</u> as holding that, "[a]t its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons for self-defense in the home."[2] <u>Id.</u> (citing <u>Heller</u>, 554 U.S. at 635). <u>See also</u> <u>Barton</u>, 633 F.3d at 170–71 ("At the 'core' of the Second Amendment is the right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'") (quoting <u>Heller</u>, 554 U.S. at 635). Although the law at issue in <u>Marzzarella</u> applied both within and outside the home, the court explicitly limited its formulation of the scope of <u>Heller</u>'s core right to carry for self-defense in the home.

<u>Marzzarella</u> also observed that "certainly, to some degree, [the Second Amendment] must protect the right of law-abiding citizens to possess firearms for other, as-yet-undefined, lawful purposes." 614 F.3d at 92. The examples the Third Circuit provided, however, were for purposes other than self-defense. <u>Marzzarella</u> specifically referred to <u>Heller</u>'s discussions of "hunting's importance to the pre-ratification conception of the right" and "the right to bear arms as a bulwark against potential governmental oppression." <u>Id.</u> (citing <u>Heller</u>, 554 U.S. at 599).

---

[2] The Third Circuit explained that the misleading term of art "non-dangerous weapons" refers specifically "to weapons that do not trigger <u>Miller</u>'s exception for dangerous and unusual weapons." <u>Marzzarella</u>, 614 F.3d at 92 n.10. <u>See</u> <u>Heller</u>, 554 U.S. at 624–26 (citing <u>United States v. Miller</u>, 307 U.S. 174, 178 (1939)).

While <u>Marzzarella</u> did not explicitly preclude the possibility that the Second Amendment right extends to self-defense outside the home, the Third Circuit clearly has not recognized or even suggested such a right.

Other circuits have also recognized <u>Heller</u>'s limited definition of the right, even where the challenged law applied more broadly. The Seventh Circuit en banc in <u>United States v. Skoien</u> explained that "the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open." 614 F.3d at 640. In <u>Heller II</u>, the District of Columbia Circuit applied <u>Heller</u> by considering whether certain novel registration requirements "make it considerably more difficult for a person lawfully to acquire and keep a firearm, including a handgun, for the purposes of self-defense in the home—the 'core lawful purpose' protected by the Second Amendment." 2011 WL 4551558, at *8 (citing <u>Heller</u>, 554 U.S. at 630). <u>See also</u> <u>Moreno v. New York City Police Dep't</u>, No. 10-cv-6269, 2011 WL 2748652, at *3 (S.D.N.Y. May 7, 2011) ("<u>Heller</u> has been narrowly construed, as protecting the individual right to bear arms for the specific purpose of self-defense within the home."), <u>report and recommendation adopted</u>, 2011 WL 2802934 (S.D.N.Y. July 14, 2011).

Recognizing the uncertainty surrounding <u>Heller</u>'s application outside the home, the Fourth Circuit in <u>Masciandaro</u> explicitly declined to decide whether Second Amendment rights extended beyond the home in upholding a conviction under a federal law prohibiting possession of a loaded handgun in a motor vehicle within a national park. 638 F.3d at 474–75. Although Judge Niemeyer wrote for the

panel on all other issues, he wrote separately in finding that the law burdened the Second Amendment rights of an individual sleeping in his car with a handgun for self-defense. Id. at 468. That judge argued that "a plausible reading of Heller" could provide "a constitutional right to possess a loaded handgun for self-defense outside the home" that extended "at least in some form" to "wherever a person could become exposed to public or private violence." Id. at 467–68.

The majority specifically declined to follow his finding, upholding the conviction solely on the basis that the law would survive intermediate scrutiny even if it was found to burden protected conduct. Id. at 475. Describing the scope of Second Amendment rights as "a vast terra incognita," the majority explained that there "may or may not be a Second Amendment right in some places beyond the home, but we have no idea what those places are" or even "what the criteria for selecting them should be . . . ." Id. Declining to "break ground that our superiors have not tread," the majority noted that it was "not far-fetched to think" that Heller intentionally left open the applicability of the Second Amendment outside the home because the dangers of accidentally formulating the right to bear arms too broadly "would rise exponentially as one moved the right from the home to the public square." Id. at 475–76.

In finding that a statute banning firing ranges from Chicago likely violates the Second Amendment, the Seventh Circuit panel in Ezell v. City of Chicago recently recognized a limited Second Amendment right to bear arms outside the home. 651 F.3d 684, 710–11 (7th Cir. 2011). Because firing range training was a prerequisite to all lawful carry, including in the home, the statute at issue in Ezell

actually operated as a "complete ban on gun ownership within City limits" and "imposed an impossible pre-condition on gun ownership for self-defense in the home." Id. at 711–12 (Rovner, J., concurring). Judge Sykes, writing for the majority, reasoned that the "right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." Id. at 704. Notably, since N.J. Stat. § 2C:39-6(f) contains explicit provisions for the use of handguns for target practice, any similar right recognized in this circuit would not be burdened by the Handgun Permit Law.

Judicial authority addressing this issue favors planting the right to self-defense in the home or extending it outside the home only in a limited way. State and federal courts have consistently upheld statutory schemes comparable to New Jersey's Handgun Permit Law on the grounds that they do not burden protected conduct.

The Southern District of New York recently denied a constitutional challenge to a comparable New York state law. Kachalsky, 2011 WL 3962550, at *30. The New York law conditions licenses to carry handguns on a discretionary determination that "proper cause exists for the issuance thereof," which has been "interpreted by New York state courts to mean 'a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession.'" Id. at *1–2 (internal citations omitted). Kachalsky found that "the scope of the Second Amendment right in Heller does not extend to invalidate regulations . . . on carrying handguns." Id. at *20. "[T]he language of Heller makes

19

clear that the Court recognized 'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose,' but rather a much narrower right—namely the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" Id. (quoting Heller, 554 U.S. at 626, 635). Even where the licensing law regulates possession in the home, the Southern District of New York has upheld it against constitutional challenge. See Moreno, 2011 WL 2748652, at *4 (finding that as long as the denial of an "application comports with New York licensing laws—which regulate, but do not prohibit, firearm possession in the home—this Court finds that the denial is consistent with Heller and does not infringe upon [the applicant's] Second Amendment rights").

The District of Hawaii also dismissed a constitutional challenge to a statute requiring an applicant to demonstrate need to carry a handgun outside the home. Young v. Hawaii, No. 08-cv-00540, 2009 WL 1955749, at *9 (D. Haw. Jul. 2, 2009). Reading Heller, the court concluded that it could not "identify any language that establishes the possession of an unconcealed firearm in public as a fundamental right. Heller held as unconstitutional a law that effectively banned the possession of a useable handgun in one's home." Id.

State courts have also consistently upheld convictions for unlawful possession of a handgun in public without a permit despite arguments that the underlying permit laws were unconstitutional under the Second Amendment. The Maryland Court of Appeals upheld a conviction for possession of a handgun in public without a permit on the grounds that the permit requirement did not burden any Second Amendment rights. Williams v. State, 10 A.3d 1167, 1177–78 (Md. 2011), cert.

denied, Williams v. Maryland, No. 10-1207, 2011 WL 4530130 (Oct. 3, 2011). The

court wrote "it is clear that prohibition of firearms in the home was the gravamen of

the certiorari questions in both Heller and McDonald and their answers. If the

Supreme Court . . . meant its holding to extend beyond home possession, it will need

to say so more plainly." Id. The Supreme Court declined to review that holding by

its denial of certiorari. The statute upheld in Williams is similar to New Jersey's in

that one requirement to obtain a permit is that the applicant "has good and

substantial reason to wear, carry, or transport a handgun, such as a finding that

the permit is necessary as a reasonable precaution against apprehended danger."

Md. Code Ann., Pub. Safety § 5-301(d) (West 2003). Maryland's regulations require

consideration of the "[r]easons given by the applicant as to whether those reasons

are good and substantial; . . . Whether the applicant has any alternative available to

him for protection other than a handgun permit; . . . [and] Whether the permit is

necessary as a reasonable precaution for the applicant against apprehended

danger." Md. Code Regs. 29.03.02.04 (2011).

 In People v. Dawson, the Illinois Appellate Court upheld the defendant's

conviction under a statute barring individuals from carrying loaded firearms.

People v. Dawson, 934 N.E.2d 598, 604, 607 (Ill. App. Ct. 2010), cert. denied,

Dawson v. Illinois, 131 S.Ct. 2880 (2011). The Illinois court noted that the Supreme

Court "deliberately and expressly maintained a controlled pace" in outlining the

scope of the Second Amendment and limited its holdings in both Heller and

McDonald to "the right to possess handguns in the home, not the right to possess

handguns outside of the home in case of confrontation . . . ." Id. at 605–06. Because

the statute did not prohibit possession of a firearm in one's "legal dwelling," it "does not implicate the fundamental right to keep and bear arms in one's home for self-defense." Id. at 607. See also People v. Aguilar, 944 N.E.2d 816, 826–28 (Ill. App. Ct. 2011) ("No reported cases have held that Heller or McDonald preclude states from prohibiting the possession of handguns outside the home."), appeal allowed, 949 N.E.2d 1099 (Ill. 2011). The District of Columbia has also upheld convictions under a law prohibiting individuals from carrying handguns in public without a license. See Little v. United States, 989 A.2d 1096, 1101 (D.C. 2010) ("Appellant concedes that he was not in his own home. Thus, appellant was outside of the bounds identified in Heller, i.e., the possession of a firearm in one's private residence for self-defense purposes."). See also Sims v. United States, 963 A.2d 147, 149–50 (D.C. 2008).

**C. Historical sources cited by Heller reveal at most historical uncertainty about the scope of the right outside the home.**

In addition to relying on the language of Heller, the plaintiffs argue that the historical understanding of the enumerated rights codified in the Second Amendment included a general right to carry arms for self-defense. Justice Scalia wrote in Heller that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them . . . ." Heller, 554 U.S. at 634–35. Because the "original meaning" of the Second Amendment included a recognition that "some categorical limits are proper," legislatures have retained power to enact regulations limiting firearm possession that are outside the scope of the Second Amendment. Skoien, 614 F.3d at 640. As the Third Circuit has interpreted Heller, laws regulating possession that fall outside the scope of the Second Amendment

must be based either on (1) longstanding historical regulations that have become incorporated over time into the understanding of the right or (2) novel regulations designed to address a heightened capability to cause damage. <u>Marzzarella</u>, 614 F.3d at 91–95.

The plaintiffs point to the reasoning of a selection of nineteenth-century authorities mentioned in <u>Heller</u> to support their proposition "that concealed carry might be banned if people were still allowed to carry guns openly." Pls.' Br. 16. The plaintiffs argue that "if concealed carry bans can be upheld only where open carry remains available, then ipso facto, there is a basic right to 'carry' guns – perhaps subject to a requirement that the gun be kept concealed or exposed." Pls.' Br. 17. The plaintiffs also refer to <u>Peruta v. County of San Diego</u>, a Southern District of California opinion, to support their conclusion that "the right to bear arms historically allowed concealed carry to be banned where 'alternative forms of carrying arms were available.'" Pls.' Reply Br. 26 (citing 758 F. Supp. 2d 1106, 1114 (S.D. Cal. 2010)).

That conclusion is off-target because the focus of the nineteenth-century cases was on the upholding of prohibitions on concealed carry of arms. <u>Heller</u> cited these cases to emphasize that the Second Amendment does not convey "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 629. Only one nineteenth-century case went far afield to find that a handgun ban was unconstitutional to the extent that it also categorically prohibited the open carry of a pistol. <u>Nunn v. State</u>, 1 Ga. 243, 251 (1846) (cited in <u>Heller</u>, 554 U.S. at 629.).

Rather than establishing that there is a general right to carry firearms outside the home for self-defense, these cases stand for little more than a suggestion that a categorical ban on carrying firearms in public without any alternative could implicate the Second Amendment. This Court agrees with the Southern District of New York's reading that these cases

> seem not to be premised on the existence of open carry provisions specifically, but rather on the existence of provisions for some other means of carry generally; in other words, they suggest that such statutes would fail to pass muster only if functioning as complete bans to carrying weapons outside the home under any circumstances.

Kachalsky, 2011 WL 3962550, at *22. As Kachalsky noted, the plaintiffs' reading is also in tension with other nineteenth-century cases that upheld the constitutionality of more general bans on carrying handguns outside the home either openly or concealed. Id. That court cited Fife v. State as upholding a statute that generally prohibited carrying a pistol as a weapon because this prohibition was a lawful "exercise of the police power of the State without any infringement of the constitutional right." Id. (quoting 31 Ark. 455, 1876 WL 1562, at *4 (1876)). See also State v. Workman, 14 S.E. 9, 11 (W.Va. 1891).

Furthermore, because these are nineteenth-century cases, they do not specifically define the scope of the pre-existing right at the time the Second Amendment was adopted but provide a window into "the public understanding of a legal text in the period after its enactment or ratification." Heller, 554 U.S. at 605. Without engaging in a full historical analysis of the scope of the right to bear arms as it was understood at the time the Second Amendment was adopted, these sources serve only to reveal a historical uncertainty in applying the Second Amendment

outside the home that long pre-dates the Supreme Court's 2008 decision. Given this uncertainty, it follows that the historical sources cited by Heller do not establish that the individual right necessarily extended to a broad general right to carry for self-defense. At most, they suggest that there may be a limited right to carry a handgun outside the home for certain purposes in certain situations that should be explored and determined on a case-by-case basis.

Peruta does not support the proposition that the historical scope of the Second Amendment has been held to extend outside the home. Contrary to plaintiffs' assertion that Peruta "certainly recognized a general right to carry guns in public," Pls.' Reply Br. 26, Peruta expressly avoided the question. The court explicitly said that it did "not need to decide whether the Second Amendment encompasses Plaintiffs' asserted right to carry a loaded handgun in public." Peruta, 758 F. Supp. 2d at 1115. The plaintiffs' themselves quote the court as writing "to the extent [the concealed weapon law] burden[s] conduct falling within the scope of the Second Amendment, if at all, the burden is mitigated by the provisions . . . that expressly permit loaded open carry for immediate self-defense." Pls.' Reply Br. 26 (quoting Peruta, 758 F. Supp. 2d at 1114–15) (emphasis added, emphasis in original omitted). The Peruta court discussed concealed versus unconcealed, or open, carry to address only whether the challenged concealed carry law could survive the applicable level of scrutiny for the statutory scheme as a whole. It assumed for the sake of disposing of the case that the Second Amendment right did extend outside the home, without addressing its scope. Peruta, 758 F. Supp. 2d at 1114–15.

To further support their reading of Heller as recognizing a historical general right to carry a handgun for self-defense, the plaintiffs point to Heller's examples of historical regulations that do not burden conduct protected by the Second Amendment. They cite Heller's suggestion that laws burdening the individual ability to possess firearms in "sensitive places such as schools and government buildings" are "presumptively lawful." See Heller, 554 U.S. at 626, 627 n.26. In a twist of logic, the plaintiffs argue that "this cautionary statement recognizes that carry bans are not presumptively lawful when they pertain to places that are not sensitive." Pls.' Br. 15–16 (internal citations omitted).

To the extent that the Supreme Court has not yet established a right to carry a handgun for self-defense outside the home, these categorical exceptions are irrelevant and do not establish outer bounds for the scope of Second Amendment rights. In noting a longstanding history of prohibiting firearms in sensitive places, Heller was simply identifying one of several common firearms regulations that were clearly beyond the scope of the Second Amendment. The en banc Seventh Circuit decision in Skoien has warned that these references function as "precautionary language" about the limits of the Second Amendment rights recognized in Heller rather than "a comprehensive code" outlining the exact scope of those rights. 614 F.3d at 640.

The logical fallacy of the plaintiffs' argument that the sensitive places exception necessitates the interpretation that the Supreme Court recognized a general right to carry outside the home is easily demonstrated. While Heller's underlying reasoning does imply that there are some situations where the Second

Amendment includes a right to carry outside the home, logic does not bear the argument that the Supreme Court necessarily recognizes a general right to carry for self-defense in all non-sensitive locations. This presumptively lawful "sensitive places" ban could apply to cases having nothing to do with self-defense. Since Heller's language limits even possession in a sensitive place, this prohibition could apply to the transport of weapons in an inoperable state through sensitive places. The exclusion on possessing firearms in sensitive places could also implicate other potentially protected Second Amendment rights, such as possessing firearms for the purposes of hunting or protection against governmental oppression. See Marzzarella, 614 F.3d at 92.

And even if the Court was indicating, however obliquely, that the Second Amendment right to carry a gun for self-defense extends outside the home, it does not follow that it extends to a general right to carry everywhere. The plaintiffs erroneously argue that a categorical exception for sensitive places would have no effect if there is not an absolute right to carry firearms in public. This argument ignores the possibility that the Second Amendment right could extend outside the home in limited circumstances and locations, and that those locations could be subject to a sensitive places exception. Courts could potentially find that there are locations outside the home where there is an established historical right to bear arms for self-defense based on an individual's vulnerability in that location. As example, the Handgun Permit Law would continue to be outside the scope of the Second Amendment even if the Supreme Court were to recognize a right to carry in one's place of business. The Handgun Permit Law allows individuals to carry

handguns within their "place of business" without requiring them to demonstrate justifiable need. N.J. Stat. Ann. § 2C:39-6(e) (2011). But even if, hypothetically, the Second Amendment were to extend to one's place of business, New Jersey would be free to prohibit people from bringing handguns to work if they work in sensitive locations. Heller's statement about the presumptive lawfulness of laws limiting the right to carry in sensitive places would be fully operative despite the absence of an absolute constitutional right to carry firearms in public.

Where the scope of the historical right to keep and bear arms under the Second Amendment is unclear, this right should be narrowly construed against recognizing an absolute right to carry in public. As said when this Opinion began, the Second Amendment is unique among the enumerated constitutional rights because it permits the use of a lethal weapon by one person who rightly or wrongly may cause serious personal injury – including the ultimate injury of death – to another person. The inherent risks associated with the public exercise of that right require this Court to carefully analyze the self-described limited scope of Heller.

Given the considerable uncertainty regarding if and when the Second Amendment rights should apply outside the home, this Court does not intend to place a burden on the government to endlessly litigate and justify every individual limitation on the right to carry a gun in any location for any purpose. The risks associated with a judicial error in discouraging regulation of firearms carried in public are too great. See United States v. Masciandaro, 638 F.3d 458, 475 (4th Cir. 2011) ("This is serious business. We do not wish to be even minutely responsible for

some unspeakably tragic act of mayhem because in the peace of our judicial

chambers we miscalculated as to Second Amendment rights.")

Drawing a historical distinction between the constitutional right to carry for

self-defense at home and any right to carry for self-defense in public is neither

unreasonable nor arbitrary. New Jersey, like other jurisdictions, already makes a

significant distinction under its criminal laws by justifying the use of deadly force

for self-defense without an obligation to retreat in the home. N.J. Stat. Ann. § 2C:3-

4 (2011). See, e.g., People v. Tomlins, 107 N.E. 496, 497 (N.Y. 1914) ("It is not now,

and never has been the law that a man assailed in his own dwelling is bound to

retreat. . . . Flight is for sanctuary and shelter, and shelter, if not sanctuary, is in

the home. That there is, in such a situation, no duty to retreat is, we think, the

settled law in the United States as in England."); see also 40 Am. Jur. 2d Homicide

§ 163 (2011) ("Regardless of any general theory to retreat . . . before one can justify .

. . taking life in self-defense, the law imposes no duty to retreat upon one who . . . is

attacked at or in his or her own dwelling or home . . . . [T]he rule is practically

universal . . . ."). The Supreme Court has found limitations on the scope of a

constitutional right outside the home in the First Amendment context, recognizing a

right to privately possess obscene materials in the home but allowing the states

broad power to regulate obscenity outside the home. Stanley v. Georgia, 394 U.S.

557, 565–68 (1969).

### D. Longstanding handgun permit regulations requiring applicants to demonstrate need do not burden protected conduct.

To the extent that New Jersey's Handgun Permit Law may implicate some

narrow right to carry a firearm outside the home, the challenged provisions would

not necessarily burden any protected conduct. The requirement that an applicant demonstrate need for a permit to carry a handgun in public is a "longstanding" licensing provision of the kind that <u>Heller</u> identified as presumptively lawful. 554 U.S. at 626–27, 627 n.26. The Third Circuit has found that these longstanding regulations have become exceptions to the right to keep and bear arms so that the regulated conduct falls outside the scope of the Second Amendment. <u>United States v. Barton</u>, 633 F.3d 168, 172 (3d Cir. 2011) (citing <u>Marzzarella</u>, 614 F.3d at 91); <u>United States v. Huet</u>, No. 10–4729, 2012 WL 19378 at *8 (3d Cir. Jan. 5, 2012). <u>Marzzarella</u> explained that this list of presumptively lawful regulations was not exhaustive and that other laws "derived from historical regulations" could be outside the scope of the Second Amendment. 614 F.3d at 92–93.

The District of Columbia Circuit in <u>Heller II</u> found that certain basic handgun registration requirements are presumptively outside the scope of the Second Amendment based on their historical acceptance. 2011 WL 4551558, at *7. The court explained that a longstanding regulation "necessarily . . . has long been accepted by the public" and that "concomitantly the activities covered by a longstanding regulation are presumptively not protected from regulation by the Second Amendment." <u>Id.</u> at *6. The court focused on the fact that the specific registration requirements it upheld were "longstanding in American law, accepted for a century in diverse states and cities and now applicable to more than one fourth of the Nation by population." <u>Id.</u> at *7. Similarly, the New Jersey Handgun Permit Law's requirement that an applicant demonstrate need to carry a handgun to state officials is longstanding.

The challenged provisions are longstanding because they are almost a century old. Noting that the "New Jersey Legislature has long been aware of the dangers inherent in the carrying of handguns and the urgent necessity for their regulation," the New Jersey Supreme Court has traced the history of the Handgun Permit Law and its requirement that an applicant demonstrate need as far back as the 1920s. Siccardi v. State, 284 A.2d 533, 538 (N.J. 1971).

> [A]lmost a half century ago [the New Jersey Legislature] directed that no persons (other than those specifically exempted such as police officers and the like) shall carry handguns except pursuant to permits issuable only on a showing of 'need.' L. 1924, c.137; R.S. 2:176-41-44. Under the terms of the 1924 statute the application for permit was submitted to the local chief of police for approval and, on approval, to the Justice of the Supreme Court holding the circuit for the county in which the applicant was a resident. If, after investigation, the Justice was satisfied with the sufficiency of the application and 'the need of such person carrying concealed upon his person, a revolver, pistol or other firearm' he would issue the permit.

Id. Since that time, "there were many enactments affecting firearms but none of them changed the requirement that 'need' must be shown for the issuance of a permit to authorize the carrying of a handgun." Id. See also In re Preis, 573 A.2d 148, 151 (N.J. 1990). As a result, the challenged New Jersey handgun permitting requirements have been in effect and accepted by the public with substantially similar substance and procedure for almost a century.

Without undertaking a full historical survey, this Court also notes that New Jersey is not the only state with a longstanding regulation by which permits to carry handguns are issued based on a discretionary determination of need or cause. New York has an even longer history of requiring a judicial or law enforcement official to grant a permit to carry a pistol based on a finding "that proper cause

exists for the issuance thereof . . . ." See People v. Tarantolo, 194 N.Y.S. 672 (N.Y. App. Div. 1922) (quoting N.Y. Penal Law § 1897 (1919)). See also Moore v. Gallup, 45 N.Y.S.2d 63, 64–65, 68 (N.Y. App. Div. 1943) (upholding determination that a resident with good moral character and proper training alone failed to meet the "proper cause" standard for issuing a permit to carry). Notably, these statutes were adopted in the same era that states began adopting the felon in possession statutes that Heller explicitly recognized as being presumptively lawful longstanding regulations. Heller II, 2011 WL 4551558, at *6 (citing Heller, 554 U.S. at 630) ("The Court in Heller considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century.").

This analysis further supports the conclusion that the challenged provisions of the Handgun Permit Law fall outside the scope of the Second Amendment. These provisions do not burden the right to possess handguns in the home for self-defense recognized in Heller. The Supreme Court has not recognized any absolute Second Amendment right to carry firearms in public for self-defense and the historical record does not persuade this Court that the holding of Heller should be extended to establish such. To the extent that the Second Amendment right may narrowly extend outside the home in certain circumstances, New Jersey's permit requirements are longstanding regulations that are presumptively constitutional. While this Court finds unequivocally that the challenged provisions fall outside the scope of Heller's Second Amendment right, because this area of law is unsettled the

Court deems it prudent to address, under <u>Marzzarella</u>'s second prong, whether the challenged provisions would survive the appropriate level of scrutiny.

## II.   The Handgun Permit Law passes constitutional muster.

If the scope of the Second Amendment extended to a right to carry handguns for self-defense outside the home, that right would still be subject to government regulation which does not unconstitutionally burden protected conduct. To repeat, the plaintiffs allege that the challenged provisions of the Handgun Permit Law are facially unconstitutional for two reasons: they vest "uncontrolled discretion" in the hands of state officials, Compl. ¶¶ 101–04, and "impermissibly burden" the alleged right by "requiring private citizens to show 'justifiable need' or 'urgent necessity for self protection,'" Compl. ¶ 108.

These provisions pass constitutional muster even if they burden conduct within the scope of the Second Amendment. The Handgun Permit Law would not be facially unconstitutional as a prior restraint because this doctrine should not be imported into the Second Amendment context and because the challenged provisions do not vest uncontrolled discretion in state officials. The justifiable need requirement would survive the intermediate scrutiny analysis applied to laws burdening protected conduct outside the core Second Amendment right because this requirement is sufficiently tailored to address an important state interest.

### A. The Handgun Permit Law is not invalid as a prior restraint vesting uncontrolled discretion to state officials.

The plaintiffs argue that the Handgun Permit Law is facially unconstitutional under the Second Amendment because it gives the government "uncontrolled discretion" over licenses to state officials. Compl. ¶¶ 101–04. This

argument rests on the plaintiffs' importation of the First Amendment analysis of prior restraints on speech to the Second Amendment context. See Pls.' Br. 21–22 (arguing that First Amendment principles should apply to the Second Amendment). Under the First Amendment, facial challenges to laws that burden "free expression" are permitted when "a licensing statute plac[es] unbridled discretion in the hands of a government official . . . ." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 757 (1988).

The defendants argue that "there is no basis or precedence for taking the prior restraint framework out of the First Amendment jurisprudence, to which it has been specifically limited, and applying it in this context." Defs.' Reply Br. 10. The general rule is that facial challenges are disfavored. It is only in light of particular censorship related concerns that "they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223 (1990) (O'Connor, J., concurring); see also City of Lakewood, 486 U.S. at 759 ("[U]nbridled licensing schemes" are subject to facial challenge when the law has "a close enough nexus to expression . . . to pose a real and substantial threat of the identified censorship risks."). As the Third Circuit has declined to extend overbreadth doctrine from the First Amendment to the Second Amendment, see United States v. Barton, 633 F.3d 168, 172 n.3 (3rd Cir. 2011), the prior restraint doctrine should not be transplanted from the First Amendment free expression context to a facial challenge analysis under the Second Amendment.

Even if the prior restraint framework were to apply, this Court finds that the Handgun Permit Law does not vest state officials with uncontrolled discretion. The prior restraint doctrine requires consideration of "any limiting construction that a state court or enforcement agency has proffered." <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 796 (1989); <u>see also</u> <u>City of Lakewood</u>, 486 U.S. at 770 ("[W]hen a state law has been authoritatively construed so as to render it constitutional . . . the state law is read in light of those limits."). Such limits on discretion may be made explicit by "textual incorporation, binding judicial or administrative construction, or well-established practice." <u>City of Lakewood</u>, 486 U.S. at 770.

The standard controlling official discretion has been clearly laid out and consistently applied by all four of these routes. The statutory text's standard is "justifiable need to carry a handgun." N.J. Stat. Ann. § 2C:58-4(c)–(d) (2011). Though gun laws in New Jersey have changed, the requirement that permits are "issuable only on a showing of 'need'" has persisted since at least 1924. <u>Siccardi</u>, 284 A.2d at 538. This standard is further defined in binding judicial construction as requiring "urgent necessity for self-protection. The requirement is of specific threats or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means. Generalized fears for personal safety are inadequate, and a need to protect property alone does not suffice." <u>In re Preis</u>, 573 A.2d 148, 152 (N.J. 1990) (internal citations omitted); <u>see also</u> <u>Siccardi</u>, 284 A.2d at 540 (Permits to carry are granted to those "who can establish an urgent necessity for self-protection. One whose life is in danger, as evidenced by serious threats or earlier attacks, may perhaps qualify . . . but one whose concern is with the safety of

his property, protectible [sic] by other means, clearly may not so qualify."). This

construction is repeated in the administrative code requiring permit applicants to

provide evidence of this need by submitting certification of

> the urgent necessity for self-protection, as evidenced by specific threats
> or previous attacks which demonstrate a special danger to the
> applicant's life that cannot be avoided by means other than by issuance
> of a permit to carry a handgun. Where possible the applicant shall
> corroborate the existence of any specific threats or previous attacks by
> reference to reports of such incidents to the appropriate law
> enforcement agencies . . . .

N.J. Admin. Code § 13:54-2.4(d)(1). This is a specific and clear standard which

guides officials' discretion and has become part of well-established practice in

reviewing permit applications.

The plaintiffs' real objection appears to be to the results generally reached by

the consistent application of this clearly articulated standard, not to lack of any

standard at all. Although the law is applied narrowly, this does not mean that the

standard amounts in practice to an outright ban on issuing permits to carry: during

the pendency of this very lawsuit, the original lead plaintiff Jeffrey Muller

withdrew from this action because he was granted a permit after the Complaint was

filed. Mots. Hr'g Tr. 3, Oct. 27, 2011.

**B. The Handgun Permit Law's "justifiable need" requirement meets
the appropriate level of judicial scrutiny.**

If New Jersey's Handgun Permit Law implicates conduct within the scope of

the Second Amendment, the burden imposed by the justifiable need requirement

still survives judicial scrutiny under the applicable means-end standard. The

Supreme Court in Heller avoided deciding what level of scrutiny to apply to a

particular limitation on the right. 554 U.S. at 628–29. The Court found only that

the laws at issue in <u>Heller</u> would be unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights . . . ." <u>Id.</u> While this statement does not lead to a particular standard of scrutiny, it does indicate that one of the traditional standards applied to enumerated rights – either intermediate or strict scrutiny – should be applied.

The defendants and their amici suggest that if the Handgun Permit Law burdens a Second Amendment right, the Court should apply the "reasonable regulation test." Defs.' Br. 19–20; Br. of Amici Curiae in Supp. of Defs. 15. The defendants' amici describe the reasonable regulation test as applying a standard in-between rational basis and intermediate scrutiny. Br. of Amici Curiae in Supp. of Defs. 16. Amici further describe this test as focusing on "the balance of the interests at stake . . . ." <u>Id.</u> But the <u>Heller</u> majority rejected a similar "interest-balancing inquiry" proposed by Justice Breyer in dissent. <u>Heller</u>, 554 U.S. at 634. Judge Breyer's formulation would have asked "whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." <u>Id.</u> Justice Scalia answered that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach." <u>Id.</u> Handgun possession outside the home is not the Second Amendment's core protection as defined in <u>Heller</u>. But if possession outside the home for the purpose of self-defense is protected as part of an enumerated right, this Court sees no reason to depart from the common forms of means-end scrutiny in favor of the reasonable regulation test.

Rational basis is also inappropriate to determine the constitutionality of specifically enumerated rights. Id. at 628 n.27. Heller explained that if rational basis were used, "the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws . . . ." Id. "Heller rejects [rational basis] for laws burdening Second Amendment rights." Marzzarella, 614 F.3d at 95–96; see also United States v. Huet, No. 10-4729, 2012 WL 19378, at *8 (3d Cir. Jan. 5, 2012).

### a. The Handgun Permit Law would be subject to intermediate scrutiny.

The question, then, is whether strict or intermediate scrutiny would apply to the justifiable need requirement of the Handgun Permit Law if such laws are within the scope of the Second Amendment. Courts look to First Amendment jurisprudence for guidance regarding which level of scrutiny applies to a law regulating conduct protected by the Second Amendment. See id. at 96. Just as laws burdening protected conduct under the First Amendment are susceptible to different standards of scrutiny, it is probable that "the Second Amendment can trigger more than one particular standard of scrutiny . . . ." Id. at 97; see also United States v. Masciandaro, 638 F.3d 458, 470 (4th Cir. 2011). Because affirmative rights are not susceptible to a one-size-fits-all standard, a court must decide whether intermediate or strict scrutiny applies based on the individual case before it.

In the First Amendment context, strict scrutiny "is triggered by content-based restrictions on speech in a public forum . . . ." Marzzarella, 614 F.3d at 96 (citing Pleasant Grove City v. Summum, 555 U.S. 460, 469 (2009)). In the Second Amendment context, strict scrutiny is triggered by the core of the right, "the right of

law-abiding, responsible citizens to use arms in defense of hearth and home." <u>See</u> <u>Heller</u>, 554 U.S. at 635. <u>See also</u> <u>Masciandaro</u>, 638 F.3d at 470–71 ("[W]e assume that any law that would burden the 'fundamental,' core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny.").

If the Second Amendment protects the right to carry a handgun outside the home for self-defense at all, that right is not part of the core of the Amendment. <u>E.g.</u> <u>Kachalsky</u>, 2011 WL 3962550, at *23 (collecting federal cases supporting the statement that "the core Second Amendment concern articulated in <u>Heller</u> [is] self-defense in the home"). Burdens on any right to carry a gun outside the home should be subject to less exacting scrutiny than burdens on the right to use a gun for self-defense in the home. "Since historical meaning enjoys a privileged interpretative role in the Second Amendment context, [the] longstanding out-of-the-home/in-the-home distinction bears directly on the level of scrutiny applicable." <u>Masciandaro</u>, 638 F.3d at 470 (citations omitted). New Jersey's justifiable need requirement applies only to permits to carry outside the home. No permit is needed to lawfully carry a handgun "about [one's] place of business, residence, premises or other land [one] own[s] or possesse[s]. . . ." N.J. Stat. Ann. § 2C:39-6(e) (2011). Even if the justifiable need requirement burdens some conduct protected by the Second Amendment, such conduct is not the possession and use of a handgun for self-defense in the home. It follows that intermediate scrutiny is the appropriate standard to apply. <u>See</u> <u>Masciandaro</u>, 638 F.3d at 471 ("While we find the application of strict scrutiny important to protect the core right of the self-defense of law-

abiding citizen in his home, . . . we conclude that a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home.").

### b. The "justifiable need" requirement survives intermediate scrutiny.

In the Second Amendment context, the Third Circuit has described how to apply intermediate scrutiny derived from First Amendment speech cases. "In the First Amendment speech context, intermediate scrutiny is articulated in several different forms." <u>Marzzarella</u>, 614 F.3d at 97. But the various terminology leads to essentially the same practical requirements: the cases "all require the asserted governmental end to be more than just legitimate, either 'significant,' 'substantial,' or 'important.'" <u>Id.</u> at 98 (citations omitted). And they "generally require the fit between the challenged regulation and the asserted objective be reasonable, not perfect." <u>Id.</u> Finally, the "regulation need not be the least restrictive means of serving the interest, but may not burden more speech than is reasonably necessary." <u>Id.</u> (citations omitted).

This Court finds that the justifiable need requirement in New Jersey's Handgun Permit Law meets the intermediate scrutiny standard if a right to carry handguns in public for self-defense exists. First, the government has asserted important interests. Second, limiting permits to carry handguns in public to those applicants who demonstrate a justifiable need is a reasonable fit with New Jersey's asserted interests. Finally, the permit requirement does not burden more protected conduct than is reasonably necessary to serve the State's interests.

The governmental interest in regulating permits to carry handguns is established. The Supreme Court has consistently recognized that the governmental

interest in protecting public safety is important or even compelling. <u>United States v.
Salerno</u>, 481 U.S. 739, 745 (1987); <u>Schall v. Martin</u>, 467 U.S. 253, 264 (1984)). New
Jersey has asserted that the interests served by the Handgun Permit Law include
"combating handgun violence and combating the dangers and risks associated with
the accidental and misuse of handguns" and "reducing the use of handguns in
crimes." Defs.' Br. 26–27. All of these interests fall under the substantial
government interest in "ensuring the safety of all of its citizens." Defs.' Reply Br. 14.
This interest is substantial and significant. The protection of citizens from
potentially lethal force is compelling.

 The justifiable need requirement fits reasonably with this asserted interest.
When reviewing the constitutionality of statutes, the courts "accord substantial
deference to the [legislature's] predictive judgments." <u>Turner Broad. Sys., Inc. v.
FCC</u>, 520 U.S. 180, 195 (1997). The judiciary's role is "to assure that, in formulating
its judgments, [the legislature] has drawn reasonable inferences based on
substantial evidence." <u>Id.</u> New Jersey's Handgun Permit Law is no political whim.
The legislature has long recognized "the dangers inherent in the carrying of
handguns" and decided as far back as 1924 to combat this danger by requiring that
"no persons . . . shall carry handguns except pursuant to permits issuable only on a
showing of 'need.'" <u>Siccardi</u>, 284 A.2d at 538. The "need" requirement has been
included in all iterations of New Jersey's handgun regulation since then. <u>Id.</u>; <u>see
also</u> <u>In re Preis</u>, 573 A.2d 148, 151(N.J. 1990) ("At the time of the reenactment of
the gun-licensing provisions as part of the Code of Criminal Justice of 1979, the
most relevant definition of 'justifiable need' was set forth in <u>Siccardi v. State</u>.")

(citations omitted). The legislature has continually made the reasonable inference that given the obviously dangerous and deadly nature of handguns, requiring a showing of particularized need for a permit to carry one publicly serves the State's interests in public safety.

This determination is supported by the reasoning of other district courts finding that comparable handgun permit regulations fit the interest in public safety where those regulations require applicants to demonstrate need based on specific circumstances. See Kachalsky, 2011 WL 3962550, at *28 (upholding New York permit law requiring articulable, non-speculative need for self-defense); Peruta v. City of San Diego, 758 F. Supp. 2d 1106, 1110, 1117 (S.D. Cal. 2010) (upholding concealed carry regulation requiring demonstration of "good cause" based on personal circumstances more specific than a "generalized fear for one's personal safety"). Peruta found that this type of requirement sufficiently fit the government's asserted interests, explaining that "the government has an important interest in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations." Id. at 1117 (citations omitted). In Richards v. County of Yolo, another district court determined that a concealed carry licensing process that required demonstration of a "valid reason to request the permit," including "credible threats of violence against the applicant," did not substantially burden protected conduct and survived a facial challenge under rational basis review. No. 09-CV-01235, 2011 WL 1885641, at *1, *3–5 (E.D. Cal. May 16, 2011).

The plaintiffs attempt to make much of the distinction between New Jersey's Handgun Permit Law and permit laws that apply to concealed carry only. See Pls.' Br. 35. This Court agrees with <u>Kachalsky</u> that when it comes to the application of intermediate scrutiny, "the same rationales apply equally, or almost equally, to the regulation of open carry [as to concealed carry]." 2011 WL 3962550, at *28. The strength of the interests are comparable, and whether a permit is required to carry a handgun either openly or concealed (as in New Jersey) or only to carry one concealed (as in California and New York) makes no difference to whether the law requiring a permit and setting out conditions for such permit is sufficiently tailored to the state's asserted interests.

The plaintiffs' argument also ignores the larger context of the statutory schemes in California and New York. In <u>Peruta</u>, the alternative open carry provision cited as mitigating some of the burden on any potential Second Amendment right is very limited. The California law permits open carry only where the individual "reasonably believes that the person or property of himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property." <u>Peruta</u>, 758 F. Supp. 2d at 1113 (quoting Cal. Penal Code § 12031(j)). This section allowing open carry applies only in the "brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance" and open carry by a person who "reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order . . . ." <u>Id.</u> In circumstances beyond these very narrow situations where open

carry is permitted, those wishing to carry a firearm for self-defense in public must obtain a concealed carry permit. As explained in Kachalsky, concealed carry with a permit is the only option in New York. 2011 WL 3962550, at *2. Open carry of handguns is always illegal and even a concealed carry permit would not permit one to carry a handgun openly. Id. Neither New York's nor California's law is really far removed from New Jersey's Handgun Permit Law, despite New Jersey's permit requirement applying to both open and concealed carry.

Finally, the justifiable need requirement of the Handgun Permit Law survives intermediate scrutiny because it does not burden more of any alleged right to carry a handgun for self-defense than would be reasonably necessary to achieve New Jersey's interest in public safety. "[T]he overriding philosophy of [the New Jersey] legislature is to limit the use of guns as much as possible." State v. Valentine, 307 A.2d 617, 619 (N.J. Super. Ct. App. Div. 1973). As discussed, it is within the discretion of the legislature to make the reasonable determination that limiting the use of guns leads to fewer incidents of gun-related injury and death. The Handgun Permit Law is tailored specifically to leave room for the exercise of any alleged right to carry a handgun in public for the sole purpose of self-defense. The justifiable need standard allows permits to be issued only upon showing of objective rather than subjective need. N.J. Stat. § 2C:58-4(c)–(d) delegates to neutral licensing officers the responsibility for determining whether such need exists. This process allows the legislature "to effectively differentiate between individuals who have a bona fide need to carry a concealed handgun for self-defense and individuals who do not." Peruta, 758 F. Supp. 2d at 1117. The legislature's

decision to allow for individualized consideration of each applicant's need to carry a handgun shows a legislative desire to tailor the consideration to each applicant's individual circumstances. The alternative to requiring "a showing of specific, direct, and serious threats to one's physical safety" is granting a permit to carry a deadly weapon to those who feel the subjective need based on nothing more than "general fears" to go about their daily lives prepared to use deadly force. See In re Piszczatoski, No. PAS-10-040 (N.J. Super. Nov. 3, 2010), Piszczatoski Decl. Ex. 2, at 4. A ruling mandating such a result would illegally interfere with the New Jersey legislature's repeated determinations over nearly a century that this alternative to an individualized need determination would not meet the state interest in preventing gun-related injury, including the ultimate injury, death.

## CONCLUSION

The plaintiffs have failed to state a valid facial constitutional challenge to New Jersey's Handgun Permit Law under the Second Amendment. The challenged provisions requiring those who wish to carry a handgun in public to obtain a permit based on justifiable need do not on their face burden conduct protected by the Second Amendment. Even if the justifiable need requirement does burden conduct protected by the Second Amendment right to keep and bear arms, the Handgun Permit Law is not facially invalid as an unconstitutional burden because there is a reasonable fit between the justifiable need requirement and the government's compelling interest in public safety. The Handgun Permit Law is also not facially unconstitutional as a prior restraint because this framework does not apply in the Second Amendment context and the challenged provisions do not vest uncontrolled

discretion to state officials. The Court denies the plaintiffs' motion for summary judgment and grants the defendants' motion to dismiss this action with prejudice.

January 12, 2012

**/s/ William H. Walls**

United States Senior District Judge